**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VIAMEDIA, INC., | ) | |
| Plaintiff, | ) | No. 16 C 5486 |
| | ) | Honorable Amy J. St. Eve |
| v. | ) | |
| COMCAST CORPORATION, and COMCAST SPOTLIGHT, LP, | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE REFUSAL TO DEAL CLAIMS AS RESTATED IN THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 4

I. The Amended Complaint Fails to Establish that Comcast's Alleged Refusal to Deal "Had No Rational Procompetitive Purpose" ........ 4

A. The Amended Complaint Pleads Disintermediation ........ 5

B. The Alleged Delay in RCN and WOW's Decision to Switch to Comcast Does Not Show that Comcast's Conduct "Had No Rational Procompetitive Purpose" ........ 8

II. Viamedia Fails to Address Significant Administrability Problems ........ 10

III. Viamedia's Allegations Outside of Chicago and Detroit Fail Because There Was No Prior Course of Dealing ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*Appraisers Coal. v. Appraisal Inst.*,
845 F. Supp. 592 (N.D. Ill. 1994) ........ 5

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ........ 9

*Caribe BMW, Inc. v. BMW AG*,
19 F.3d 745 (1st Cir. 1994) ........ 6

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984) ........ 2, 5, 6

*CWCapital Asset Mgmt., LLC v. Chicago Props. LLC*,
610 F.3d 497 (7th Cir. 2010) ........ 11

*Duty Free Ams., Inc. v. Estee Lauder Cos.*,
797 F.3d 1248 (11th Cir. 2015); ........ 12

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) ........ 12

*LiveUniverse, Inc. v. MySpace, Inc.*,
304 F. App'x 554 (9th Cir. 2008) ........ 12

*Magellan Int'l Corp. v. Salzgitter Handel GmbH*,
76 F. Supp. 2d 919 (N.D. Ill. 1999) ........ 7

*Metavante Corp. v. Emigrant Sav. Bank*,
2009 WL 4556121 (E.D. Wis. Nov. 27, 2009) ........ 11

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013) ........ 3, 12

*Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*,
2014 WL 5858261 (N.D. Ill. Nov. 12, 2014) ........ 7

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
555 U.S. 438 (2009) ........ 10

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ........ 13

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
507 F.3d 117 (2d Cir. 2007)........................................................................... 10

*Pudlo v. Adamski*,
789 F. Supp. 247, 252 (N.D. Ill. 1992),
*aff'd*, 2 F.3d 1153 (7th Cir. 1993)..................................................................... 6

*SFG Commercial Aircraft Leasing, Inc. v. N59CC, LLC*,
2010 WL 883764 (N.D. Ind. Mar. 8, 2010)................................................ 11

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*,
841 F.3d 827 (10th Cir. 2016) ........................................................................ 12

*Sw. Paper Co. v. Hansol Paper*,
2013 WL 11238487 (C.D. Cal. Apr. 15, 2013) ......................................................... 11

*United States v. Concentrated Phosphate Exp. Ass'n*,
393 U.S. 199 (1968)........................................................................................ 5

*VBR Tours, LLC v. Nat'l R.R. Passenger Grp.*,
2015 WL 5693735 (N.D. Ill. Sept. 28, 2015) ........................................................... 10

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004).................................................................. 2, 3, 10, 11, 12

*Viamedia, Inc. v. Comcast Corp.*,
__ F. Supp. 3d __, 2016 WL 6568074 (N.D. Ill. Nov. 4, 2016).......................... *passim*

OTHER AUTHORITIES

Erik N. Hovenkamp & Herbert Hovenkamp, *The Viability of Antitrust Price Squeeze Claims*, 51 Ariz. L. Rev. 273, 278 n. 20 (2009)....................... 7

Frank H. Easterbrook, *The Chicago School and Exclusionary Conduct*, 31 Harv. J.L. & Pub. Pol'y 439, 442 (2008).................................................................. 2

Richard A. Posner, *Antitrust Law* 242 (2d ed. 2001)....................................................... 12

Comcast respectfully submits this reply memorandum in further support of its motion to dismiss with prejudice Counts I-V of the Amended Complaint to the extent the monopolization claims asserted in those counts are based on an alleged refusal to deal.[1]

## INTRODUCTION

Nothing in Viamedia's opposition brief should cause the Court to revisit its prior ruling dismissing Viamedia's unilateral refusal to deal claim. As demonstrated in Comcast's opening brief, the supposedly "new" allegations in the Amended Complaint are either meritless legal arguments (which were already advanced or could have been advanced in opposition to the original motion to dismiss) or duplicative factual allegations embellished with legally irrelevant details. Thus, Viamedia's rehashed allegations, like its original allegations, fail to state a refusal to deal claim.

At the most fundamental level, Viamedia fails to rebut Comcast's showing that each of the three key factors cited by the Court in dismissing the original refusal to deal claim also mandates dismissal of the claim as re-pleaded. Mem. at 5.[2] Indeed, Viamedia's opposition brief—like its Amended Complaint—is entirely silent about one of the three key factors favoring dismissal that this Court identified: "the Supreme Court's hesitancy to force firms to share their advantage with competitors." *Id.* Viamedia also fails to cite a *single case* permitting a unilateral refusal to deal claim to proceed since the Supreme Court's decision in *Verizon Communications, Inc. v. Law*

---

[1] Capitalized terms not defined herein have the meanings assigned in Comcast's opening brief.

[2] "Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Refusal to Deal Claims as Restated in the Amended Complaint (Dec. 12, 2016) (Dkt. 46).

*Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *see also, e.g.*, Frank H. Easterbrook, *The Chicago School and Exclusionary Conduct*, 31 Harv. J.L. & Pub. Pol'y 439, 442 (2008) (arguments "demand[ing] that holders of market power cooperate with rivals" are among those that "bit the dust in *Verizon v. Trinko*"). As for the arguments that Viamedia does advance, they provide no basis to establish a unilateral refusal to deal claim.

*First*, contrary to Viamedia's claim, the Amended Complaint does not establish that Comcast's alleged refusal to deal "has no rational procompetitive purpose." *Viamedia, Inc. v. Comcast Corp.*, __ F. Supp. 3d __, 2016 WL 6568074, at *16 (N.D. Ill. Nov. 4, 2016). Viamedia challenges the Court's holding that Comcast engaged in procompetitive disintermediation by arguing that Comcast Corporation and its wholly-owned subsidiary, Comcast Spotlight, are "two separate entities" and the alleged refusal to deal merely replaced Viamedia with Comcast Spotlight in the distribution chain. Opp. at 5.[3] As shown below, Viamedia's argument is contrary to the law, the facts pleaded in the Amended Complaint, and basic common sense. As legal matter, the Supreme Court held in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), that it makes no sense to distinguish between a parent and wholly owned subsidiary—the antitrust laws look to economic substance, not corporate form. As a factual matter, Viamedia's argument is contradicted by its own allegations in the Amended Complaint, including that Comcast "consolidat[ed] management of an Interconnect with Comcast's provision of Spot Cable Advertising Representation services." Am. Compl. ¶ 166.

[3] "Opp." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss the Refusal to Deal Claims (Jan. 16, 2017) (Dkt. 56).

*Second*, Viamedia's attempt to refute the Court's prior ruling regarding administrability problems of "forced dealing" between rivals runs counter to Supreme Court and Seventh Circuit precedent. *See* Mem. at 5-6 & n.2. In an attempt to downplay these administrative problems, Viamedia cites a handful of cases in which a court evaluated retrospectively whether a party that voluntarily entered into a commercial relationship acted "reasonably" in the past. Opp. at 8-9. None of those cases involved a unilateral refusal to deal and none provided the extraordinary relief that Viamedia seeks here: a court order *prospectively* (i) mandating that rivals deal with each other, (2) setting *all* of the terms of such dealing, and (iii) then policing the dealings between these rivals *in perpetuity*. This is the role of a Public Utility Commission, not an Article III Court. Courts are "ill-suited" to "act as central planners, identifying the proper price, quantity, and other terms" on which a firm can be compelled to deal with its rival. *Viamedia*, 2016 WL 6568074, at *15 (quoting *Trinko*, 540 U.S. at 408).

*Third*, Viamedia's attempt to expand its claims geographically beyond Detroit and Chicago is barred by well-established precedent requiring, *at a minimum*, a prior course of dealing to establish a unilateral refusal to deal claim. The Amended Complaint establishes that Comcast has never dealt with Viamedia outside of Detroit and Chicago, so leaving aside the many other flaws in Viamedia's theory, even this threshold element of a claim is not satisfied in other geographies. Indeed, the Amended Complaint establishes that competition, not cooperation, is the norm between Comcast and Viamedia, which further supports dismissal of the unilateral refusal to deal claim.

In sum, Viamedia's refusal to deal allegations once again cannot pass through the "narrow-eyed needle of refusal to deal doctrine." *Novell, Inc. v. Microsoft Corp.*, 731

F.3d 1064, 1074 (10th Cir. 2013) (Gorsuch, J.). Therefore, Viamedia's refusal to deal claim should now be dismissed with prejudice.

## ARGUMENT

### I. The Amended Complaint Fails to Establish that Comcast's Alleged Refusal to Deal "Had No Rational Procompetitive Purpose"

In granting the motion to dismiss, the Court held that alleged refusal to deal resulted in disintermediation, which is a "prototypical valid business purpose":

> Before Comcast's refusal to deal, MVPDs gave Viamedia control of their Spot Cable Avails and then Viamedia gave control over a portion of those Avails to the Interconnect. After Comcast's refusal to deal, for the portion of Avails sold through an Interconnect, MVPDs simply deal with Comcast directly. Consequently, at least with respect to the portion of advertising sales made through Interconnects, Defendants' refusing to deal with Viamedia offers potentially improved efficiency.

*Viamedia*, 2016 WL 6568074, at *16. Comcast represented this reasoning graphically in its opening brief:

| Before: MVPD ↔ Viamedia ↔ Comcast ↔ Regional Advertiser |
|---|
| After: MVPD ↔ Comcast ↔ Regional Advertiser |

Mem. at 6. The Amended Complaint reiterates the allegations of disintermediation underlying the Court's ruling,[4] and then further alleges that Comcast "consolidat[ed] management of an Interconnect with Comcast's provision of Spot Cable Advertising Representation services." Am. Compl. ¶ 166. Viamedia's attempts in its opposition brief to undermine the Court's prior reasoning fail.

[4] Viamedia's Amended Complaint adds paragraphs 154-168, but does not omit or change any of the allegations in its original complaint.

### A. <u>The Amended Complaint Pleads Disintermediation</u>

Viamedia asserts in its opposition brief that, in the chart above, "the 'Comcast' in the 'After' scenario really represents two separate entities: Comcast Corporation as Interconnect operator ***and*** Comcast Spotlight as a third-party representative for the MVPDs." Opp. at 5 (emphasis in original). That argument, which could have been advanced in opposition to the initial motion to dismiss, is both legally baseless and factually wrong.

It is fundamental that antitrust law focuses on economic reality over corporate formalities. *See, e.g., United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 208 (1968) ("In interpreting the antitrust laws, we . . . must look at the economic reality of the relevant transactions."). The reality, as pleaded in the Amended Complaint, is that Comcast Corporation owns 100% of Comcast Spotlight and provides Spot Cable Advertising Services "[t]hrough Comcast Spotlight." Am. Compl. ¶¶ 1, 19. Looking to economic reality, the Supreme Court has held a parent corporation and its wholly owned subsidiary are treated as the *same entity* for antitrust purposes: "the ultimate interests of [a wholly-owned] subsidiary and [a] parent are identical, so the parent and the subsidiary must be viewed as a *single economic unit*." *Copperweld*, 467 U.S. at 772 n.18 (emphasis supplied).[5]

[5] *Copperweld* was a Section 1 case, not a Section 2 case, but its reasoning applies with equal force here. There, the Court noted that "[t]he economic, legal, or other considerations" that [may] lead management to choose one corporate structure over [an]other "are not relevant to whether the enterprise's conduct seriously threatens competition." 467 U.S. at 772. "Especially in view of the increasing complexity of corporate operations, a business enterprise should be free to structure itself in ways that serve efficiency of control, economy of operations, and other factors dictated by business judgment without increasing its exposure to antitrust liability." *Id.* at 773. Accordingly, *Copperweld* has broad application under antitrust laws, including to Section 2 claims, *see*, *e.g.*, *Appraisers Coal. v. Appraisal Inst.*, 845 F. Supp. 592, 603 (N.D. Ill. 1994) ("The *Copperweld* reasoning also applies to section 2 claims.") (citing *Pudlo v. Adamski*, 789 F. Supp.

Viamedia's artificial attempt to wish away disintermediation in this case by counting Comcast twice in the distribution chain fails because it "looks to the form of an enterprise's structure and ignores the reality." *Id.* at 772; *see also*, *e.g.*, *Caribe BMW, Inc. v. BMW AG*, 19 F.3d 745, 749-50 (1st Cir. 1994) (explaining that, in *Copperweld*, the "Court saw an identity of economic interest between parent and wholly owned subsidiary that, considered in terms of the economically oriented antitrust laws, warrants regarding them as one"). This Court's prior ruling correctly treated Comcast as a single link in the distribution chain entity, consistent with both Viamedia's non-conclusory allegations and governing law. *See Viamedia*, 2016 WL 6568074, at *16 ("After Comcast's refusal to deal, for the portion of those Avails sold through an Interconnect, MVPDs simply deal with Comcast directly," which "offers potentially improved efficiency.").

In addition, Viamedia's attempt to differentiate Comcast Corporation ("as Interconnect operator") and Comcast Spotlight (as a provider of representation services), Opp. at 5, is contradicted by the allegation in the Amended Complaint that Comcast has "*consolidat[ed] management* of an Interconnect with Comcast's provision of Spot Cable Advertising Representation services." Am. Compl. ¶ 166 (emphasis added). Comcast Spotlight is responsible for operating the Interconnects and providing representation services. Indeed, the Amended Complaint quotes the definition of an "Interconnect"

---

247, 252 (N.D. Ill. 1992), *aff'd*, 2 F.3d 1153 (7th Cir. 1993)), and to Robinson-Patman claims, *see, e.g. Caribe BMW, Inc. v. BMW AG*, 19 F.3d 745, 750 (1st Cir. 1994) (applying *Copperweld* to a Robinson-Patman claim, and citing cases in which "[a] majority of courts, using a *Copperweld*-type analysis, have held that a firm M's sale of a good to a wholly owned subsidiary D is not a 'sale' for Robinson-Patman purposes").

from *Comcast Spotlight's* website. *See* Am. Compl. ¶ 156 (quoting www.comcast spotlight.com/resources/glossary). That website, which Viamedia has incorporated by reference into the Amended Complaint, makes plain that Comcast Spotlight, not Comcast Corporation, operates the Interconnects.[6]

Treating Comcast as a single link in the distribution chain also comports with the underlying reason that disintermediation (or vertical integration) is procompetitive. The key benefit of disintermediation is the elimination of double marginalization. As Professor Hovenkamp has explained:

> Double marginalization occurs when a firm's variable costs include an above-cost markup set by another firm. The elimination of double marginalization greatly reduces costs and allows lower retail prices to be set. As a result, the foreclosure of one firm need not have an adverse impact on consumers if it allows another firm to avoid double marginalization. In fact, it is possible that consumers would benefit from such an occurrence.[7]

When Viamedia is present in the distribution chain as an intermediary, it adds an unnecessary markup between Comcast and the MVPD, which results in greater costs in

[6] *See* About Us, www.comcastspotlight.com/about/vision ("Comcast Spotlight partners with other cable companies and television providers (like satellite and telephone companies) in many markets to form interconnects that make buying local advertising easier."); Management Bios, www.comcastspotlight.com/about/management ("Comcast Spotlight built interconnects in 60+ markets . . . ."); Spot Cable Advertising, http://comcastspotlight.com/sites/default/files/Marketing_One_Sheet_Spot_Cable_.pdf (referring to "Comcast Spotlight's 72 interconnects"). The Court can consider Comcast Spotlight's website on this motion to dismiss because the Amended Complaint quotes from the website and because Viamedia has made the fact that Comcast Spotlight operates the Interconnects central to this motion to dismiss. *See Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*, 2014 WL 5858261, at *2 (N.D. Ill. Nov. 12, 2014). It is particularly appropriate to consider Comcast Spotlight's website here, because "'it would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when delayed consideration of the remaining documents would lead to dismissal of that claim.'" *Id.* (quoting *Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999)).

[7] Erik N. Hovenkamp & Herbert Hovenkamp, *The Viability of Antitrust Price Squeeze Claims*, 51 Ariz. L. Rev. 273, 278 n. 20 (2009).

the distribution chain. When Viamedia is removed from the distribution chain and MVPDs enter into a direct relationship with Comcast, however, Viamedia's markup and extra cost is eliminated. As the Court properly recognized, what Comcast has achieved here through refusing to deal with Viamedia is akin to the same benefits that result when "manufacturers vertically expand[] to distribute their own product," which "usually is procompetitive" due to the "cutting out of a middleman." *Viamedia*, 2016 WL 6568074 at *11 n. 8. All of this highlights that Comcast's actions were motivated by a "prototypical valid business purpose." *Id.* at *16.

### B. The Alleged Delay in RCN and WOW's Decision to Switch to Comcast Does Not Show that Comcast's Conduct "Had No Rational Procompetitive Purpose"

Viamedia also argues that Comcast's pursuit of disintermediation was not in furtherance of a procompetitive purpose because its initial effect was to reduce the number of cable subscribers covered by the Chicago and Detroit Interconnects, and because Comcast did not get the benefit of direct deals with RCN and WOW until January 1, 2016. Opp. at 4-5. That argument fails to salvage Viamedia's refusal to deal claim, for two principal reasons.

*First*, Viamedia's original complaint had substantively the same allegations,[8] and Viamedia made the same argument in opposition to Comcast's first motion to dismiss the

---

[8] *See* Compl. ¶ 110 ("On June 1, 2012, Comcast unilaterally ended Viamedia's access to the Chicago and Detroit Interconnects and removed WOW and RCN from participating in regional ad sales through the Interconnects."); *id.* ¶ 116 ("Nor is [the alleged exclusion of Viamedia and its MVPD clients from the Chicago and Detroit Interconnects] reconcilable with the economic purpose of the Interconnects or Comcast's own observation that '[t]he value of an interconnect increases as more MVPDs in an area participate.'"); *id.* ¶ 127 ("As of January 1, 2016, Comcast Spotlight now serves as WOW's sole Spot Cable Advertising representative in the Chicago and Detroit DMAs."); *id.* ¶ 131 ("As of January 1, 2016, therefore, Comcast now

refusal to deal claim.[9] With all that, the Court dismissed the refusal to deal claim. Because the Amended Complaint adds no new substance, Viamedia's refusal to deal claim should again be dismissed.

*Second*, Viamedia's own allegations concede that, from the outset, Comcast's goal was to win direct deals with RCN and WOW. In particular, the Amended Complaint alleges that "[i]n 2011, Comcast Spotlight began attempting to take WOW's and RCN's business away from Viamedia," and alleges that Comcast's "exclusion" of Viamedia "was motivated by Comcast Spotlight's desire to replace Viamedia as WOW's and RCN's Spot Cable Advertising Representative." Am. Compl. ¶¶ 104, 112. But direct deals were not immediately possible because the MVPDs were locked into "longstanding contractual relationships with Viamedia." Am. Compl. ¶ 106.[10] That Viamedia's contracts delayed Comcast in winning the customers directly and thus achieving the procompetitive benefits of disintermediation does not detract from the procompetitive purpose of Comcast's efforts.[11]

---

controls all of RCN's Spot Cable Advertising national, regional, and local inventory in [various DMAs]."); *see also* Mem. Ex. A.

[9] *See* Plaintiff's Opposition to Defendant's Motion to Dismiss at 12-13 (Aug. 19, 2016) (Dkt. 28).

[10] *See also* Am. Compl. ¶¶ 233-235. In the allegations in support of a claim for tortious interference with business expectancy, Viamedia alleges "profitable contractual and business relationships with WOW and RCN," but does not allege that Comcast caused RCN and WOW to breach any agreement with Viamedia. Instead, Viamedia alleges that Comcast "interfered with Viamedia's reasonable expectancy," thus implicitly conceding that Viamedia's contracts with RCN and WOW were no longer in effect when Comcast signed deals with them.

[11] For this reason, Viamedia's argument (Opp. at 9) that this case resembles *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), in the absence of any procompetitive benefit is clearly wrong. In *Aspen*, the defendant "fail[ed] to offer any efficiency justification whatever for its pattern of conduct." *Id.* at 484. Here, disintermediation is established by Viamedia's own Amended Complaint allegations. Am. Compl. ¶¶ 112, 113, 124, 127, 128.

Viamedia also argues that Comcast "did not accept the Court's invitation to identify any specific efficiencies." Opp. at 6. But Viamedia has the burden reversed. Because Viamedia has pleaded disintermediation, which "is a 'prototypical valid business purpose,'" *Viamedia*, 2016 WL 6568074, at *16 (quoting *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 124 (2d Cir. 2007)), Viamedia bears the burden of pleading facts showing that Comcast's alleged refusal to deal "has no rational procompetitive purpose." *Id*. As shown above, Viamedia has not met, and cannot meet, this burden.

## II. Viamedia Fails to Address Significant Administrability Problems

Neither the Amended Complaint nor Viamedia's opposition brief explain how it would resolve the administrability problems that the Supreme Court and the Seventh Circuit have observed are inherent in forcing a firm to deal with a competitor. Instead, Viamedia attempts to downplay those problems by arguing that it "simply seeks access to the Interconnect on behalf of its clients on the same terms that Comcast extends to other MVPDs." Opp. at 8. But Viamedia does not—and cannot—allege that all MVPDs participate in Interconnects on uniform terms. Instead, Viamedia seeks the type of "central planning" for which the Supreme Court in *Trinko* warned courts are "ill suited." *Viamedia*, 2016 WL 6568074, at *15 (quoting *Trinko*, 540 U.S. at 408).[12]

Viamedia argues that federal courts "routinely and with no great difficulty evaluate whether particular actions are 'commercially reasonable,'" and cites four cases, all of which are readily distinguishable. Opp. at 8-9. Tellingly, none of the four cases

[12] Indeed, refusing to deal at a plaintiff's "desired price" is not actionable. *VBR Tours, LLC v. Nat'l R.R. Passenger Grp.*, 2015 WL 5693735, at *7 (N.D. Ill. Sept. 28, 2015); *see also Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 450-51 (2009).

involved a unilateral refusal to deal and none involved a court prospectively dictating the terms of a contract or, indeed, mandating that the parties deal at all. Instead, in each case, the parties had voluntarily entered into a course of dealing without court intervention. In two of the cases, the court evaluated whether the defendant acted in a commercially reasonable fashion under a contract.[13] In the third case, the court evaluated whether attorney's fees (to which a party was contractually entitled) were commercially reasonable.[14] In the final case, the court analyzed whether a discount provided to one customer was "commercially reasonable" and thus did not violate the Robinson-Patman Act, which provides a defense for discounts that are "reasonable" and in good faith.[15]

In each of those cases, the Court engaged a *retrospective* evaluation of whether certain conduct was "commercially reasonable" at a set point in the past. But this is not what Viamedia seeks from the Court. Instead, it asks the Court to mandate that Comcast deal with Viamedia, its rival, and decide *prospectively* all of the "terms of dealing" between the parties. *Trinko*, 540 U.S. at 408. And Viamedia presumably seeks that this forced dealing continue *in perpetuity*, which would require the Court to retain jurisdiction to resolve disputes about the "reasonableness" of contractual terms whenever a contract is up for renewal. That is not the proper role of an Article III Court, and that is precisely

---

[13] *See CWCapital Asset Mgmt., LLC v. Chicago Props. LLC*, 610 F.3d 497, 503-04 (7th Cir. 2010) (interpreting a mortgage agreement that prohibited cancellations except for those in which a party was "acting in the ordinary course of business and in a commercially reasonable manner"); *SFG Commercial Aircraft Leasing, Inc. v. N59CC, LLC*, 2010 WL 883764, at *2 (N.D. Ind. Mar. 8, 2010) (considering commercial reasonableness under the Uniform Commercial Code).

[14] *Metavante Corp. v. Emigrant Sav. Bank*, 2009 WL 4556121, at *4-6 (E.D. Wis. Nov. 27, 2009) (applying the "commercial reasonableness" standard in the Seventh Circuit to determine whether attorney fees were required under the contract).

[15] *Sw. Paper Co. v. Hansol Paper*, 2013 WL 11238487, at *5 (C.D. Cal. Apr. 15, 2013).

what the Supreme Court in *Trinko* said courts must avoid. *Id.*; *see also*, *e.g.*, Richard A. Posner, *Antitrust Law* 242 (2d ed. 2001) ("Where the refusal to deal is unilateral, the only effective remedy is an order that the defendant do business with the victim of the refusal to deal. The antitrust court becomes charged with the supervision of an ongoing commercial relationship, a function that courts are not equipped to perform effectively.").

## III. Viamedia's Allegations Outside of Chicago and Detroit Fail Because There Was No Prior Course of Dealing

Viamedia also argues that it does not need to establish a prior and voluntary course of dealing with Comcast in the DMAs in which it never participated in Comcast-managed interconnects in the first place. Opp. at 10 n.5. Viamedia cites *no* authority for that proposition. Following *Trinko*, a prior voluntary course of dealing is *necessary* (although not sufficient) to establish a refusal to deal claim. *See* Mem. at 13 (citing *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1266-67 (11th Cir. 2015); *Novell*, 731 F.3d at 1074-75; *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 556 (9th Cir. 2008); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (per curiam)); *see also SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 843 (10th Cir. 2016) (refusal to deal liability potentially exists "only where the plaintiff can establish the parties had a preexisting voluntary and presumably profitable course of dealing, and the monopolist's discontinuation of the preexisting course of dealing must suggest[] a willingness to forsake short-term profits to achieve an anti-competitive end") (internal quotation marks and citation omitted).

In addition, monopolization claims must establish anticompetitive conduct in the relevant market. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455 (1993) (finding that proving "actual monopolization . . . generally require[s] a definition of the

relevant market and examination of market power"). Here, Paragraph 180 of Viamedia's Amended Complaint defines the relevant markets as "[t]he provision of Spot Cable Advertising Representation services" in "the regional DMAs in which Comcast controls the Interconnect. . . ." Thus, Viamedia has failed to allege a preexisting profitable course of dealing with Comcast in each of Viamedia's self-defined DMA relevant markets.

As noted in Comcast's opening brief, Comcast's consistent decision not to deal with Viamedia outside Chicago and Detroit confirms that it was not "economically irrational" for Comcast to decline to renew its relationship with Viamedia in those markets. Competition, not cooperation, is the norm between Comcast and Viamedia.

## CONCLUSION

For these reasons, Comcast respectfully submits that the Court should dismiss Viamedia's re-pleaded refusal to deal claim with prejudice.

Dated: February 9, 2017

Respectfully submitted,

COMCAST CORPORATION and
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By: /s/ Ross B. Bricker

Ross B. Bricker
Sally K. Sears Coder
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rbricker@jenner.com
ssearscoder@jenner.com

Arthur J. Burke (pro hac vice)
David B. Toscano (pro hac vice)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 701-5800
Arthur.Burke@davispolk.com
David.Toscano@davispolk.com

*Attorneys for Defendants Comcast Corporation and Comcast Cable Communications Management, LLC*

## CERTIFICATE OF SERVICE

I, Thomas E. Quinn, an attorney, certify that on February 9, 2017, I caused the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE REFUSAL TO DEAL CLAIMS AS RESTATED IN THE AMENDED COMPLAINT** to be served on counsel of record listed below via the Court's ECF system:

Britt Marie Miller
Matthew David Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street N.W.
Washington, DC 20006-1101
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Plaintiff Viamedia, Inc.*

/s/ Thomas E. Quinn