# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

VIAMEDIA, INC., )
)
           Plaintiff, )      Case No. 16-cv-5486
)
        v. )      Hon. Amy J. St. Eve
)
COMCAST CORPORATION and )
COMCAST SPOTLIGHT, LP, )
)
           Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Comcast Corporation ("Comcast") and Comcast Spotlight, LP ("Comcast Spotlight")[1] have moved to compel Plaintiff Viamedia, Inc. ("Viamedia") to produce certain documents pursuant to Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 502. (R. 104.) Viamedia asserts that the documents in question are privileged and that it has not waived privilege. (R. 117.) For the following reasons, the Court denies Defendants' motion.

## ANALYSIS

There are two sets of documents at issue, though there is some overlap between the two sets. The first consists of 51 documents that Viamedia disclosed to prospective litigation financing firms. Viamedia claims the work-product doctrine and the attorney client privilege protect these documents. The second set of documents consists of 432 documents Viamedia produced to the United States Department of Justice ("DOJ") in connection with DOJ's investigation of Comcast. The parties do not dispute whether these documents are privileged.

_____

[1] The Court refers to Comcast and Comcast Spotlight collectively as "Defendants."

Instead, they disagree as to whether Viamedia waived the privilege or whether the privilege still

applies to the documents under Federal Rule of Evidence 502(b) in spite of Viamedia's

disclosure.  The Court discusses the relevant law and facts in the sections below.

## I.      The Documents Provided to Litigation Funding Firms

Defendants move the Court to compel Viamedia to turn over 51 documents that

Viamedia had disclosed to prospective litigation financing firms.  (R. 106 at 10–13.)  Viamedia

argues that these documents are protected by the attorney-client privilege and the work-product

doctrine.  (R. 117 at 7–11.)  Additionally, Viamedia contends that Defendants failed to show that

discovery of the 51 documents is relevant and proportional[2] to the needs of the case.  (*Id.* at 7.)

Because the Court concludes that the documents are protected by the work-product doctrine, the

Court denies Viamedia's motion to the extent it relies on Viamedia's disclosure of these 51

documents to litigation funding firms.  The Court therefore need not reach the question of

whether the attorney-client privilege applies to the documents.

### A.      The Work-Product Doctrine

The work-product doctrine generally protects from discovery "documents and tangible

things that are prepared in anticipation of litigation or for trial by or for another party or its

representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

agent)."  Fed. R. Civ. P. 26(b)(3)(a); *see generally Hickman v. Taylor*, 329 U.S. 495 (1947).  It

serves two purposes, to "protect an attorney's thought processes and mental impressions against

disclosure" and "to limit the circumstances in which attorneys may piggyback on the fact-finding

investigation of their more diligent counterparts."  *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600

F.3d 612, 621–22 (7th Cir. 2010).  The doctrine helps ensure that our adversarial system of

---

[2] The Court notes that it is difficult to understand Viamedia's argument regarding proportionality given that the documents in question have been identified and produced.

justice *remains* adversarial. *See Hickman*, 329 U.S. at 516 (Jackson, J., concurring) ("[A]
common law trial is and always should be an adversary proceeding. Discovery was hardly
intended to enable a learned profession to perform its functions either without wits or on wits
borrowed from the adversary.").

The party asserting work-product protection carries the burden of demonstrating its
applicability. *See Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir.
1983) (noting that a party "failed to meet its burden of proof necessary to invoke the work
product privilege"); *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *1 (N.D.
Ill. Apr. 4, 2017); *Baxter Int'l, Inc. v. AXA Vericherung*, No. 11-cv-9131, 2017 WL 1205071, at
*3 (N.D. Ill. Mar. 30, 2017). "[T]he threshold determination in any case involving an assertion
of the work product privilege . . . is whether the materials sought to be protected from disclosure
were in fact prepared in anticipation of litigation." *Binks*, 709 F.2d at 1118; *see First Merit
Bank, N.A. v. Teets*, No. 15 C 01573, 2015 WL 8153878, at *4 (N.D. Ill. Dec. 8, 2015). "[T]he
mere fact that litigation does eventually ensue does not, by itself, cloak materials . . . with the
work product privilege; the privilege is not that broad." *Logan v. Commercial Union Ins. Co.*, 96
F. 3d 971, 976 (7th Cir. 1996) (second alteration in original) (quoting *Binks*, 709 F.2d at 1118);
*Teets*, 2015 WL 8153878, at *4. Courts instead should "look to whether in light of the factual
context 'the document can fairly be said to have been prepared or obtained because of the
prospect of litigation.'" *Logan*, 96 F.3d at 976–77 (quoting *Binks*, 709 F.2d at 1119); *see also
Sandra T.E.*, 600 F.3d at 622.

"There is a distinction between precautionary documents 'developed in the ordinary
course of business' for the 'remote prospect of litigation' and documents prepared because 'some
articulable claim, *likely* to lead to litigation, [has] arisen.'" *Sandra T.E.*, 600 F.3d at 622

(emphasis in original) (quoting *Binks*, 709 F.2d at 1120).  Only in the latter class of documents

receive work-product protection.  *Id.*  Documents prepared solely to lobby a government agency

to take action are not prepared in anticipation of litigation and therefore are not entitled to work-

product protection.  *See, e.g.*, *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 65 (7th

Cir. 1980) (concluding the work-product privilege did not apply where, "[a]lthough litigation

could ultimately have ensued," the materials in question were "[a]t most, . . . prepared with an

eye toward a possible administrative proceeding before the IRS"); *Harper-Wyman Co. v. Conn.*

*Gen. Life Ins. Co.*, No. 86 C 9595, 1991 WL 62510, at *3 (N.D. Ill. Apr. 17, 1991) ("[T]he

court's review of defendant's documents suggests only that these documents were prepared in

connection with the ACLI lobbying effort.  Such an effort is generally not 'litigation.'"); *In re*

*Grand Jury Subpoenas dated March 9, 2001*, 179 F. Supp. 2d 270, 285 (2001); *P. & B. Marina,*

*Ltd. P v. Logrande*, 136 F.R.D. 50, (E.D.N.Y. 1991) ("Seaview's use of a lobbyist appears to

have been intended to avert litigation by applying political pressure to federal agencies which

could affect plaintiffs' marina operation.  As such, the correspondence from Seaview's lobbyist

was not directed towards anticipated litigation but rather toward non-litigation means that could

achieve the same results in lieu of litigation.  Such efforts are not equivalent to litigation nor

subject to the work-product immunity . . . .").

Work-product protection is subject to waiver based on disclosure to a third party, but

only where the disclosure "substantially increase[s] the opportunity for potential adversaries to

obtain the information."  *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025 (7th Cir. 2012);

*see Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736 (N.D. Ill. 2014); 2 Christopher B.

Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 5:38 (4th ed. 2016) ("Work product

protection is lost if the client, attorney, or authorized representative of the client voluntarily

discloses the underlying material under circumstances substantially increasing the possibility that

an opposing party will obtain the information."). Waiver of work-product immunity therefore

differs from waiver in the attorney-client-privilege context. *See* Mueller & Kirkpatrick, *supra*,

§ 5:38. The reason for this difference is the work-product doctrine's roots in the adversarial

process—the point of the protection is not to keep information secret from the world at large but

rather to keep it out of the hands of one's adversary in litigation. *See id.*, *see also Miller UK*, 17

F. Supp. 3d at 736.

### B.    Analysis

Viamedia contends that the 51 documents at issue are protected by both the attorney-

client privilege and the work-product doctrine. (R. 117 at 3.) Defendants argue that Viamedia's

assertion of work-product protection was untimely with respect to nineteen of the documents

because in a May 2016 privilege log submitted to the DOJ, Viamedia claimed only attorney-

client privilege with respect to those documents, but in May 2017, about two months after

Viamedia had supplemented that log, Viamedia reclassified seventeen of those documents as

also protected by the work-product doctrine. (R. 106 at 2, 11–12; R. 118 at 3.) The remaining

two documents of the nineteen are attachments to an email over which Viamedia asserted work-

product protection, which itself is one of the seventeen documents that Viamedia had

reclassified. (R. 117 at 3.) While Viamedia should have taken greater care in preparing its

privilege logs, the Court will not impose the harsh sanction of waiver based on Viamedia's

conduct, particularly because of the large number of documents involved in this case and,

significantly, because the Court cannot conclude that Defendants were unfairly prejudiced. *See*

*In re: Fluidmaster, Inc.*, No. 14-cv-05696, 2016 WL 6599947, at \*5 (N.D. Ill. Nov. 8, 2016)

(declining to find waiver of a privilege based in part on a lack of prejudice); *Mills v. Cmty.*

*Action Program of Evansville & Vanderburgh Cty.*, No. 3:12-cv-64-RLY-WGH, 2013 WL 1703742, at *5 (S.D. Ind. Apr. 19, 2013) (declining to find waiver based on a delayed assertion of privilege and noting that "[w]aiver of work-product privilege is a serious sanction and not appropriate for a non-prejudicial delay with no prior warning by the court to [a party's] counsel"); *One Place Condos. LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2013 WL 788092, at *1 & n.2 (N.D. Ill. Mar. 1, 2013). Viamedia, however, should exercise greater caution in the future.

Defendants' next argument is that Viamedia was correct when it previously failed to claim work-product protection on the nineteen documents in question. (R. 106 at 12; R. 120 at 4.)[3] Specifically, Defendants argue that Viamedia initially indicated in its privilege logs that eleven of the documents related to "legal advice provided by attorney regarding regulatory investigation," but Viamedia now added the phrase "in anticipation of litigation" at the end of the description. (R. 120 at 4.) Defendants argue that these documents relate to a regulatory investigation—which would not trigger the work-product doctrine—rather than litigation in which Viamedia could be a party. (*Id.* at 4; R. 106 at 12–13.) The Court has reviewed *in camera* the disputed documents to which Defendants refer, and it appears the attorneys who prepared Viamedia's privilege logs simply made a mistake in indicating that these documents do not relate possible litigation between Viamedia and Defendants.[4] The Court therefore denies Defendants' motion with respect to the documents provided to litigation funding firms.

---

[3] Defendants present no argument regarding the remaining 32 documents with respect to the work-product doctrine.

[4] Some aspects of the documents—which are primarily emails—deal purely with ministerial matters (as the parties have previously defined the term) such as scheduling phone calls and/or are not relevant to claims or defenses in the present litigation. Defendants have also not argued that their ministerial nature excludes them from work-product protection.

The Court notes that its conclusion is consistent with that of other courts that have

considered whether the work-product doctrine applies in similar circumstances. *See, e.g.*, *In re*

*Int'l Oil Trading Co., LLC*, 548 B.R. 825, 835–39 (Bankr. S.D. Fla. 2016); *Miller UK*, 17 F.

Supp. 3d at 734–39; *Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-CV-2518, 2014 WL

1715376, at *4 (N.D. Ill. May 1, 2014). Additionally, Defendants do not argue that Viamedia

waived the work-product doctrine by disclosing documents to litigation funding firms under an

NDA. Moreover, while Defendants point out that funders could disclose information to certain

individuals and organizations (e.g., their accountants and attorneys), the Court cannot conclude

that Viamedia's disclosure made it substantially more likely that its work-product protected

information would fall in the hands of its adversaries. *See Miller UK*, 17 F. Supp. 3d at 737–39;

*Doe*, 2014 WL 1715376, at *4.

## II.     The Documents Disclosed to the Department of Justice

Defendants argue that Viamedia waived privilege over 432 documents by disclosing

them to the DOJ because "Viamedia cannot satisfy its burden to show that *none* of those

documents was produced intentionally" and "[t]o the extent any of the documents were not

intentionally disclosed, Viamedia cannot show that it took reasonable steps to prevent

disclosure." (R. 106 at 13.) Viamedia argues that it did not waive privilege because its

disclosure of these privileged documents to the DOJ was unintentional, it took reasonable steps

to prevent disclosure, and it took prompt steps to rectify its inadvertent production. (R. 117 at

11–15.) The Court agrees with Viamedia.

### A.     Relevant Facts

In 2014 and 2015, Viamedia lobbied the DOJ, Congress, and other government agencies

to investigate Comcast's spot cable advertising business and to oppose the potential merger of

Comcast and Time Warner Cable. (R. 106-3; R. 106-4; R. 106-5; R. 106-6; R. 106-7; R. 106-8.)

Indeed, Viamedia's CEO said in a July 9, 2015 email that his "goal [was] to get the DOJ to

investigate Comcast's bad acts" and that "[t]he big win is if DOJ sues Comcast for unfair trade

practices – which is a possibility based on what [the law firm] Mayer Brown thinks." (R. 106-9.)

He also said in a July 12, 2015 email that:

> [T]here is real concern in DC about Comcast. I met last week with
> DOJ's litigators . . . . It will be interesting to see if DOJ pursues an
> investigation into Comcast. Given who I met with, this is a strong
> possibility, especially if Senators Blumenthal and Markey who I am
> meeting with on Wednesday in DC apply some heat.

(R. 106-10.) During this lobbying campaign, Viamedia provided the DOJ with certain

documents. (*See* R. 106-7 ("[W]e have filed a paper with the DOJ highlighting Comcast's

control of Interconnects to close third party deals."); R. 106-8; R. 106-12.)

The DOJ initiated an investigation of Comcast in November 2015. (R. 106 at 5; R. 117 at

12; R. 106-15.) At least one National Sales Manager of Viamedia commented that Viamedia

"started [the investigation]" and that it would "be great if [the investigation] went bad for

Comcast." (R. 106-15.) Another National Sales Manager expressed his enthusiasm for the

investigation. (R. 106-15 ("Love to fuck over our friends at Comcast.").) In its complaint in this

case, Viamedia references the DOJ investigation. (*See* R. 40 at ¶ 7.)

The DOJ issued a Civil Investigative Demand ("CID") to Viamedia in November 2015

demanding Viamedia produce documents and information related to twenty topics. (R. 118-7.)

The General Counsel of Viamedia indicated in a declaration that "[t]o respond to the CID,

Viamedia conducted searches of its internal files and identified over nine million potentially

responsive documents." (R. 117-1 at ¶ 11.) Viamedia engaged a third-party vendor to run

electronic searches to narrow the scope of responsive documents. (*Id.* at ¶¶ 12–13.) The

searches yielded 600,000 documents requiring further review.  (*Id.* at ¶ 14.)  Viamedia then hired

a team of contract attorneys to review the documents under the supervision of Viamedia's

litigation counsel.  (*Id.* at 117-1 at ¶ 15.)  Viamedia's counsel trained the contact attorneys and

provided a guidance protocol under which reviewers were to elevate to litigation counsel any

potentially privileged documents about which the reviewers were uncertain.  (*Id.* at ¶¶ 19–20.)

Viamedia created two lists of privilege terms—the first set identifying the names of counsel and

law firms engaged by Viamedia and the second set identifying general terms likely to appear in

privileged documents.  (*Id.* at ¶ 17.)  Viamedia's third-party vendor took steps to ensure the

names and terms were highlighted in the documents.  (*Id.*)  The documents identified as

potentially privileged were collected and reviewed specifically for privilege.  (*Id.*)

   After the first-level review process was complete, senior contract attorneys conducted a

quality control review.  (*Id.* at ¶ 22.)  Litigation counsel for Viamedia then performed a final

quality control review and prepared a privilege log for production to the DOJ.  (*Id.* at ¶ 23.)  On

June 9, 2016, Viamedia completed its production to the DOJ of over 360,000 documents

spanning over 4,000,000 pages along with a privilege log identifying 5,795 privileged documents

withheld from production.  (*Id.* at ¶ 24.)

   Based on the parties' agreement in the current case, Viamedia produced to Defendants on

December 5, 2016 its DOJ production in the same form it had made the production originally to

the DOJ.  (*Id.* at ¶ 25.)  On January 27, 2017, Defendants notified Viamedia that they had

identified potentially privileged documents in Viamedia's DOJ production.  (*Id.* at ¶ 26.)

Viamedia represents that this is "the first indication [it] had that any privileged documents had

been inadvertently produced to DOJ and therefore reproduced to Comcast."  (*Id.* at ¶ 27.)  On

January 30, 2017, Defendants notified Viamedia that they found additional potentially privileged

documents. (*Id.* at ¶ 28.) Upon receiving the letters, Viamedia's counsel "began a

comprehensive review of not only the documents Comcast had identified, but also its entire DOJ

production." (*Id.* at ¶ 29.) In conducting its review, Viamedia identified about 2,000 potentially

privileged documents. (*Id.* at ¶ 30.) Viamedia's litigation counsel then individually reviewed

those documents and notified Defendants on February 7, 2017 that it had inadvertently produced

privileged material. (*Id.* at ¶¶ 31–32.) After the meet-and-confer process, Viamedia narrowed

its claim of privilege to 432 document, though it contends that in doing so, pursuant to an

agreement with Defendants, Viamedia has not waived privilege over any subject matter. (*Id.* at

¶ 34.)[5] According to Defendants, Viamedia has represented that it asked the DOJ to return the

documents and that the DOJ has sequestered them. (R. 106 at 8.)

**B.      Rule 502(b)**

Viamedia relies on Federal Rule of Evidence 502(b) to argue that its disclosure to the

DOJ did not result in waiver of privilege. (*Id.*) The Rule provides that when a party discloses

privileged materials "in a federal proceeding or to a federal office or agency, the disclosure does

not operate as a waiver in a federal or state proceeding if" three conditions are satisfied: "(1) the

---

[5] The parties' Agreed Confidentiality Order guided their conduct during the process of the discovery of the claimed privileged information. (R. 44.) The Court notes that the parties Agreed Confidentiality Order provides that disclosure of information that a party later "claims to be privileged or protected by the attorney-client privilege or attorney work product protection," the disclosure "shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the [disclosed information] and its subject matter in this proceeding or in any other federal or state proceeding." (*Id.* at ¶ 15(a).) It also prevents parties from relying on any of the disclosed information. (*Id.* at ¶ 15(c).)

The Court also notes that Viamedia appears to suggest in its fact section, though it does not actually argue in the "Argument" section of its brief that Defendants failed to comply with certain time limitations set forth in the parties' Agreed Confidentiality Order. (R. 117 at 5–7.) Viamedia does not properly raise an argument that the Court must resolve. Moreover, the Court need not resolve the issue because it is ruling in Viamedia's favor on this motion. Nevertheless, the Court notes that the parties agreed to extend Defendants' deadlines under the protective order to bring a motion under and that Defendants would have 10 days to file a motion following an impasse "as acknowledged by both parties." (R. 107-8.) Viamedia claims the parties reached an impasse by April 28, 2017, (R. 117 at 6), but Viamedia cites a letter from its own counsel that says "it appears the parties are at an impasse," (R. 118-15 at 2.) This document does not show that there is an impasse "as acknowledged by both parties." (R. 107-8.)

disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to

prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error,

including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[6]  Fed. R. Evid.

502(b).  "The producing party bears the burden of showing compliance with Rule 502."  *Excel*

*Golf Prods., Inc. v. MacNeil Eng'g Co.*, No. 11 C 1928, 2012 WL 1570772, at *2 (N.D. Ill. May

3, 2012); *see Baranski v. United States*, No. 4:11-CV-123 CAS, 2015 WL 3505517, at *4 (E.D.

Mo. June 3, 2015); *Sidney I v. Focused Retail Prop. I, LLC*, 274 F.R.D. 212, 215 (N.D. Ill.

2011).

    With respect to the first question of whether Viamedia's disclosure was inadvertent,

while some courts look to a multi-factor balancing test to resolve this issue, the majority of

courts in this district adhere to a "simple intent-based approach" that avoids redundancy because

the multi-factor test overlaps with the inquiries of Rule 502(b)(2) and (3).  *See Excel Golf*, 2012

WL 1570772, at *2 (explaining that the court would follow "the majority of courts in this

District and conclude that . . . the inadvertence inquiry asks merely whether the production was

unintentional"); *Sidney I*, 274 F.R.D. at 216 (noting that the court "agrees with the simpler

method" and discussing the redundancy of the multi-factor test); *Coburn Grp. LLC v. Whitecap*

*Advisors LLC*, 640 F. Supp. 2d 1032, 1038–39 (N.D. Ill. 2009).[7]

    **C.    Analysis**

    On the record before it, the Court concludes that Viamedia's disclosures were

inadvertent.  First, while Defendants argue that Viamedia intentionally disclosed the documents

as a continuation of its DOJ lobbying campaign, Viamedia disclosed these documents in

---

[6] The parties do not dispute that Viamedia satisfied Rule 502(b)(3).  The Court therefore does not consider it.

[7] The Court notes that the parties do not dispute the relevant test under Rule 502 or the allocation of the burden of proof.

response to a compulsory CID. Thus, although Viamedia voluntarily provided certain

documents to the DOJ in lobbying it to investigate Defendants, the documents in question were

produced at a later time after the DOJ had already commenced its investigation. Second, the

production in this case was large and the Court recognizes that mistakes can take place in such

large-scale document productions. *See Coburn Grp.*, 640 F. Supp. 2d at 1039 (noting that a

production of 40,000 pages of documents out of 72,000 potentially responsive pages "exceeded

the number of documents that have been characterized as 'large'"). "Where discovery is

extensive, mistakes are inevitable and claims of inadvertence are properly honored so long as

appropriate precautions are taken." *Judson Atkinson Candies, Inc. v. Latini-Hohberger

Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (interpreting the law before the current Rule 502

became effective); *Coburn Grp.*, 640 F. Supp. 2d at 1039. This production was large by any

standard, involving a review of 600,000 documents and a production of over 300,000 documents

spanning millions of pages. (R. 118-1 at ¶¶ 14, 24.) The 432 documents at issue comprise about

0.1% of the total number of documents Viamedia produced and about 0.07% of the total

documents reviewed. *See Sidney I*, 274 F.R.D. at 216 (finding inadvertent disclosure where a

party disclosed privileged documents comprising 2% of the total production); *Kmart Corp. v.

Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *4 (N.D. Ill. Nov. 2, 2010) (noting that

where the scope of discovery is larger, the more extensive a party's disclosure of confidential

materials may be, and explaining that disclosing privileged documents amounting to 3% of a

production is not "a significant mistake"); *Heriot v. Byrne*, 257 F.R.D. 645, 659-60 (N.D. Ill.

2009) (finding inadvertent disclosure even though Plaintiffs disclosed 196 privileged documents

in a production of about 1499 total documents). Third, Viamedia claimed privilege over

thousands of documents during its production to the DOJ, suggesting that it did not intend to

produce all privileged materials.  This is not a case where a party initially produced all

documents without claiming privilege over any of them only to subsequently claim privilege.

*See Thorncreek Apartments III, LLC v. Vill. of Park Forest*, Nos. 08 C 1225, 08-C-0869, 08-C-

4303, 2011 WL 3489828, at \*6 (N.D. Ill. Aug. 9, 2011) (finding inadvertent disclosure despite

the fact that the defendant initially told the plaintiff that "no privileged documents were

withheld").  Finally, the Court has reviewed the documents in question *in camera* and many of

them are fairly mundane emails that would not scream out as obviously privileged and do not

appear to advance any potential claim against Comcast.  This further suggests that Viamedia's

disclosure was inadvertent.

The Court also finds that Viamedia took reasonable steps to prevent disclosure.  As

described above, Viamedia put in place a comprehensive protocol for reviewing the many

documents involved in this case.  Other cases have found similar protocols—including protocols

relying more heavily on review by non-lawyers—sufficient.  *See, e.g.*, *Coburn Grp.*, 640 F.

Supp. 2d at 1038–40.  Viamedia also hired highly skilled lawyers to work on and oversee the

production.  While Defendants argue that Viamedia's efforts must not have been reasonable in

light of its disclosure of privileged documents, the fact of disclosure alone cannot be enough to

find insufficient steps to prevent disclosure.  Otherwise, Rule 502 would become a nullity.

Accordingly, the Court finds that Viamedia did not waive privilege over the documents produced

to the DOJ.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion.


**DATED: June 30, 2017**                          **ENTERED**


_____
AMY J. ST. EVE
United States District Court Judge