# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) ) ) | |
| Plaintiff, | ) | No. 16 C 5486 |
| v. | ) ) | Honorable Amy St. Eve |
| COMCAST CORPORATION and COMCAST SPOTLIGHT, LP, | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' RULE 56.1 STATEMENT
## OF UNDISPUTED MATERIAL FACTS

Ross B. Bricker
Sally K. Sears Coder
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rbricker@jenner.com
ssearscoder@jenner.com
dfenske@jenner.com

Arthur J. Burke (pro hac vice)
David B. Toscano (pro hac vice)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 701-5800
Arthur.Burke@davispolk.com
David.Toscano@davispolk.com

*Attorneys for Defendants Comcast*
*Corporation and Comcast Cable*
*Communications Management, LLC*

## INTRODUCTION

Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (successor to Comcast Spotlight, LP and together with Comcast Corporation, "Comcast") respectfully submit the following Statement of Undisputed Material Facts pursuant to Northern District of Illinois Local Rule 56.1(a)(3) in support of their Motion for Summary Judgment.

## VENUE AND JURISDICTION

1.      Plaintiff brought this civil action pursuant to Section 2 of the Sherman Act and Sections 4 and 16 of the Clayton Act.  ECF 40 (Am. Complt.) ¶ 20.

2.      The court has personal jurisdiction over the Defendants pursuant to 15 U.S.C. § 22 and Fed. R. Civ. P. 4(k)(1).  ECF 40 (Am. Complt.) ¶¶ 18-19.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  ECF 40 (Am. Complt.) ¶ 22.

## THE PARTIES

4.      Plaintiff Viamedia, Inc. ("Viamedia") is in the business of providing spot cable advertising representation to subscription television providers (known in the television industry as multichannel video programming distributors or "MVPDs").  In connection with this business, Viamedia acquires advertising avails (defined below) from MVPDs and resells them to advertisers.  ECF 40 (Am. Complt.) ¶¶ 17, 74.

5.      Comcast operates MVPD systems in various metropolitan areas (known in the television industry as Designated Market Areas or "DMAs").  Using the Spotlight trade name, Comcast sells spot cable advertising avails on Comcast's own MVPD systems.  Comcast also provides spot cable advertising representation to other MVPDs.  In connection with this business, Comcast acquires advertising avails from these MVPDs and resells the avails to advertisers.

Comcast Cable Communications Management, LLC, successor to Comcast Spotlight, LP, is a Delaware Corporation and a wholly owned subsidiary of Comcast Corporation with an office in New York, New York.  ECF 30 (Def.'s Supp. Notification As to Affiliates ) at 1; ECF 40 (Am. Complt.) ¶¶ 18-19; Ex. 2, Furchtgott-Roth Rep. ¶ 43.[1]

### INDUSTRY BACKGROUND

6.      Cable networks like CNN and ESPN sell most of their advertising time themselves on a nationwide basis.  ECF 40 (Am. Complt.) ¶¶ 3; 27.

7.      Cable networks typically allocate two to three minutes an hour—called advertising "availabilities" or "avails"—to MVPDs that distribute the networks.  ECF 40 (Am. Complt.) ¶¶ 3; 27; Ex. 2, Furchtgott-Roth Rep. ¶¶ 18, 19.

8.      MVPDs include traditional cable operators (e.g., Comcast, Charter), telecom providers (e.g., Verizon, AT&T), overbuilders (e.g., WOW!, RCN), and satellite providers (e.g., DISH, DIRECTV).  Ex. 2, Furchtgott-Roth Rep. ¶ 16.

9.      When sold by MVPDs, advertising avails are sometimes referred to as "spot cable advertising."  Ex. 2, Furchtgott-Roth Rep. ¶ 19.

10.      Some MVPDs sell avails directly to advertisers through their own sales force.  ECF 40 (Am. Complt.) ¶ 71.

11.      Some MVPDs do not sell their own ad avails to advertisers, and instead sell their avails to ad representation firms.  Ex. 2, Furchtgott-Roth Rep. ¶¶ 71-72; Ex. 10, Gdovin Tr. 10:4-12:25 (RCN's designated corporate representative), at 28:6-29:4; Ex. 11, Jensen Tr. 13:6-14:7 (WOW!'s designated corporate representative), at 21:23-22:4.  These agreements are typically called "advertising purchase and sale" agreements (Ex. 13, Lieberman Tr. 56:5-57:19), and

---

[1] "Ex. __" refers to the exhibits to the Declaration of Daniel T. Fenske filed concurrently.

provide that ownership of an MVPD's avails passes from the MVPD to the ad representative. Ex. 33, ███████████ (9/24/2015) § 2.1; Ex. 67, ███████████ (3/20/2012) § 2.1; Ex. 72, ███████████ (12/30/2013) § 1.

12.     Such ad representation firms, in turn, sell the avails to advertisers and share a portion of the resulting revenue with MVPDs.  ECF 40 (Am. Complt.) ¶¶ 19, 72.

13.     Some ad representation firms are affiliated with MVPDs, like Comcast, and some are unaffiliated with MVPDs, like Viamedia.  ECF 40 (Am. Complt.) ¶¶ 19, 72.

14.     Certain advertisers seek to reach television audiences throughout an entire DMA, which historically was possible only through over-the-air broadcast television stations because of a station's ability to reach every home in a DMA.  Ex. 2, Furchtgott-Roth Rep. ¶ 30.

15.     In order to compete more effectively with broadcast stations to meet the demand of these DMA-wide (or "regional") geographic advertisers, MVPDs created "interconnects." ECF 40 (Am. Complt.) ¶ 4; Ex. 2, Furchtgott-Roth Rep. ¶¶ 30, 33.

16.     Interconnects provide advertisers a " ███████ " to purchase DMA-wide ads that run on the same network at the same time across all participating MVPDs in the DMA. Ex. 12, Carter Tr. 193:15-194:9.

17.     Interconnect operators provide numerous services, including pricing ad avails, selling avails, marketing to advertisers and advertising agencies, audience research, preparing schedules of potential ad buys with the desired networks and dayparts, inventory allocation, billing, collections, reporting, and distributing (or "trafficking") avails to MVPDs, and often ad insertion.  Ex. 2, Furchtgott-Roth Rep. ¶ 30; Ex. 4, Furtchgott-Roth Tr. 116:20-123:15, 137:13-146:4; Ex. 27, Pls.' Resp. Defs. 5th Interrogs. ¶ 14.

18.     Today and throughout the relevant period of this case, the largest cable MVPD in a DMA, such as Comcast or Charter, has typically owned and operated the interconnect in that DMA.  Ex. 2, Furchtgott-Roth Rep. ¶ 32; Ex. 14, Solomon Tr. 138:20-139:3.

19.     Comcast owns and operates interconnects in several DMAs, including Chicago, Illinois; Detroit, Michigan; and Hartford, Connecticut.  ECF 40 (Am. Complt.) ¶¶ 13, 86-94; Ex. 15, Oster Tr. 221:23-224:4; Ex. 2, Furchtgott-Roth Rep. ¶ 43.

20.     MVPDs that own and operate interconnects make substantial capital and operational investments in technical infrastructure, systems, and personnel necessary to run the interconnects, as well as sales force and infrastructure to sell avails to advertisers to run DMA-wide through the interconnects.  Ex. 14, Solomon Tr. 143:12-149:17; Ex. 15, Oster Tr. 79:9-91:6.

21.     Some advertisers seek to purchase advertising targeted to only a portion of a DMA, commonly referred to as "local advertising" or "local zone advertising."  ECF 40 (Am. Complt.) ¶¶ 31, 32.

22.     MVPDs that operate interconnects have also invested in sales force and infrastructure to sell local advertising.  Ex. 16, Trombley Tr. 72:7-73:4; Ex. 17, Kline Tr. 105:6-23.

23.     The sale of local zone advertising utilizes much of the same technical and business infrastructure as sales through an interconnect (e.g., the same traffic and billing systems, the same marketing and research, etc.).  Ex. 4, Furtchgott-Roth Tr. 137:13-146:4; Ex. 17, Kline Tr. 143:25-145:4; Ex. 15, Oster Tr. 81:21-82:15, 85:8-86:19, 90:8-91:6; Ex. 16, Trombley Tr. 58:15-59:12, 259:21-25.

24.     This overlap gives interconnect operators economies of scale in providing local zone representation services.  Ex. 18, Black Tr. 93:3-19.

## TYPES OF SPOT CABLE ADVERTISING REPRESENTATIONS

25.     In a "full turnkey" representation agreement, the MVPD sells all of its ad avails in a given DMA to a single ad representative (with the exception of any avails it retains for its own promotional advertising (███████)).  Ex. 19, Hunt Tr. 98:19-100:2.

26.     Full turnkey agreements are the industry standard and most common type of representation agreement.  Ex. 2, Furchtgott-Roth Rep. ¶ 25; Ex. 13, Lieberman Tr. 70:16-71:23, 86:16; 121:3-7.

27.     Exclusive full turnkey agreements incentivize the ad representative to invest in staff and technical infrastructure.  Ex. 13, Lieberman Tr. 65:14-65:19.  Such exclusive arrangements help eliminate confusion among advertisers and sales channel conflict in the sale of spot cable advertising avails, which may arise if more than one firm is selling an MVPD's avails in a given DMA.  Ex. 13, Lieberman Tr. 66:20-66:2; Ex. 12, Carter Tr. 95:15-96:17; Ex. 22, Bordeleau Tr. 182:5-183:2.

28.     Exclusive full turnkey agreements offer "███████████████" for both MVPDs and advertisers.  Ex. 84, M. Lieberman Email (1/18/2015) at -579; Ex. 14, Solomon Tr. 121:19-124:9.

29.     An "interconnect-only" agreement is a rep agreement in which an MVPD sells only a portion of its avails to the interconnect operator for sale on a DMA-wide basis, while retaining another portion for sale on a less than DMA-wide (local zone) basis.  Ex. 17, Kline Tr. 55:5-15; Ex. 15, Oster Tr. 236:17-23, 328:3-22; Ex. 4, Furtchgott-Roth Tr. 80:8-81:1.

30.     Interconnect-only agreements are less common than full turnkey agreements. Ex. 17, Kline Tr. 139:14-141:15; Ex. 4, Furtchgott-Roth Tr. 192:10-194:10.

31.     Often, an MVPD that enters into an interconnect-only rep agreement maintains its own local sales force to sell its avails to local (less than DMA-wide) advertisers.  Ex. 15, Oster Tr. 328:3-329:5; Ex. 23, Lykes Tr. 174:6-12; Ex. 17, Kline Tr. 147:19-148:7.

32.     ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

33.     █████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████  ██████

████████████  ██████████

34.     █████████████████████████████████████████

██████████████████████████████████████

████████

35.     █████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

36.     █████████████████████████████████████████

███████████████████████████████████████████

37.     ██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████ ██████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████ ).

38.　　A principal price term of a representation agreement is a "revenue share," or "split," in which the ad rep firm retains a percentage of the revenue generated by sales of ad avails and shares the remainder with the MVPD from which it acquired the avails.  Ex. 2, Furchtgott-Roth Rep. ¶ 90 n.144.

39.　　A higher revenue share to the MVPD reflects a lower "price" for rep services. ECF 40 (Am. Complt.) ¶ 72; Ex. 4, Furtchgott-Roth Tr. 28:14-31:13, 187:1-12; Ex. 13, Lieberman Tr. 58:16-62:8; Ex. 18, Black Tr. 49:12-54:14, 63:5-14.

40.　　In some cases, the ad rep firm may also provide a minimum revenue guarantee to the MVPD.  Ex. 2, Furchtgott-Roth Rep. ¶ 24; Ex. 18, Black Tr. 49:12-54:14, 63:5-65:4.

41.　　Revenue share and revenue guarantees are frequently critical points of competition between ad rep firms.  Ex. 13, Lieberman Tr. 58:16-59:23, 139:17-140:11, 142:14-25; Ex. 19, Hunt Tr. at 50:5-17, 93:12-15, 150:22-152:8.

## COMCAST'S DEALINGS WITH VIAMEDIA

42.　　█████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

43.　　█████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

44. ██████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████

45. ██████████████████████████████

███████████████████████████████████████

████████████████████



Ex. 34, ██████████████████ (5/30/2003) § 9.10.

46. ██████████████████████████████

*Id.* § 3.1.

47.     Comcast declined to renew the agreement.  ECF 40 (Am. Complt.) ¶ 110; Ex. 85,

R. Trombley Ltr. (12/7/2011).



48.

49.

50.

51.

52.

53.

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

████████████

### COMPETITION TO REPRESENT MVPDS

54.     Viamedia operated as an ad rep firm in more than ████████████████████

████ Ex. 29, Pls.' Resp. & Obj. Defs.' 2d Set of RFAs ¶ 7.

55.     Viamedia seeks to and does █████████████████████████████

████████████ Ex. 21, Tarvin Tr. 108:6-14, 117:8-15, 122:8-18, 141:20-142:6,145:19-146:6,

149:14-150:16; Ex. 14, Solomon Tr. 115:17-116:10, 132:22-133:7, 135:6-7; Ex. 23, Lykes

Tr. 44:1-45:14; Ex 17, Kline Tr. 101:20-23; Ex. 13, Lieberman Tr. 63:8-64:13, 70:16-71:9,

114:16-20.

56.     In the Evansville, Indiana DMA, for example, █████████████████████

███████████████████████████████████████████

████████████████████████████ Ex. 21, Tarvin Tr. 108:8-14, 117:8-15,

122:8-18, 145:19-146:6, 149:14-150:16; Ex. 23, Lykes Tr. 44:1-45:14; Ex. 13, Lieberman

Tr. 63:8-64:13, 70:16-71:9, 114:16-20; Ex. 99, Viamedia CID Supp. Resp. 6 (2/9/2016) at -695

("████████████████████████████████████"); Ex. 2, Furchtgott-

Roth Rep. ¶ 47 n.50.

57.     ████████████████████████████████████████

███████████████████████████████████████████



58. ██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

59. ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

60.

61.

62.



63.

64.

65.

66.

67.



68.

69.

70.

71.

72. 

73.

74.

75.

76.

77.

78.

79.



80. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████

81. ████████████████████████████████████
████████████████████████████████████████████

          ████████████

82. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████

83. ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████

84. ████████████████████████████████████
████████████████████████████████████████
████████

85. ████████████████████████████████████
████████████████████████████████████████

86. █████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████



87. ████████████████████████████████████████████████

███████████████████████ . ███████████████████████████

████████

88. █████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

89. █████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████

90. ██████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████



91.

92.

93.

94.

95.



96.

97.

98.

99.

100.





106.

107.

108.

109.

110.

███████████████████████████████████████████

██████████████████

## VIAMEDIA'S ALLEGED INJURY ARISES
## FROM LAWFUL COMPETITION

111.     Viamedia has stated that it cannot compete in the Spot Cable Advertising

Representation market without interconnect access.  ECF 40 (Am. Complt.) ¶ 73 ("a

representative firm must have access to the Interconnects . . . on behalf of its clients," in "order

to compete in this market and to sell Spot Cable Avails effectively"); *see also id.* ¶¶ 100, 170,

192, 199, 210, 221.

112.     ████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████

113.     ████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████





116.    On average, across all of its MVPD clients in DMAs in which Comcast owns and operates the interconnect, ███████████████████████████████████████ ██████████████████████████████████. Ex. 1.2, Carlton Rebutt. Rep. 5 fig.1.

117.    In 2016, ████████████████████████████████████. Ex. 33, ███████████ (9/24/2015) at Ex. D §1.

118.    In 2016, ██████████████████████████████ Ex. 45, ██████ ██████████ (10/2015) at Ex. C §1.

119.    In 2016, ███████████████████████████████████ Ex. 39, ████████████████ (10/4/2013) ████ at Sched. D §1; Ex. 38, Verizon-Comcast Agmt. (12/2013) ██████ at Sched. D §1; Ex. 47, ████████████████████████ (10/4/2013) § 2(b)(iii).

120.    In 2016, ███████████████████████████████████████ ████████████████████████. (2014) at Ex. D.

121.    The average revenue share received by Comcast's MVPD clients in markets in which Comcast owns and operates the interconnect ██████████████████████████ ████████████████████████ Ex. 1.2, Carlton Rebutt. Rep. 5 fig.1.

122.    Other MVPDs that own and operate interconnects ███████████████████
███████████████████████████████████████████████ Ex. 75, ██████████████
████ (11/4/2015) at -944 (███████████████████████████████████
████████████████████████████████████████████████████████████████
████); Ex. 48, ████████████████ (1/20/2012) at Ex. C ████████████████
████████████████████████████████████████████████████
████); Ex. 49, ████████████████████ (1/30/2012) at Ex. C (████████
████████████████████████████████████████████████████████████
████████████████████████ ).

## COMCAST SPOTLIGHT'S INTERCONNECT-ONLY DEALS

123.    Comcast has been willing to enter into direct "interconnect-only" representation agreements with MVPDs that have requested them.  Ex. 15, Oster Tr. 331:2-22; Ex. 20, Wall Tr. 98:16-100:4, 105:9-106:13; Ex. 23, Lykes Tr. 174:6-12.

124.    ████████████████████████████████████████████████████████
████████████████████████████████████ Ex. 3, Furchtgott-Roth Rebutt. Rep. 8 tbl.1; *id.* at App. A.

125.    Comcast has entered into interconnect-only deals with ████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████████████



126.

## "INTERCONNECT SERVICES" ARE A TYPE OF SPOT CABLE AD REP SERVICES

127.    MVPDs view the services provided by interconnect operators as a form of spot cable ad representation.  Ex. 22, Bordeleau Tr. 181:21-182:4; *see also* Ex. 17, Kline Tr. 147:19-148:7; Ex. 11 Jensen Tr. 155:9-18, 178:9-14, 178:22-179:6.

128.    Viamedia's Chief Revenue Officer David Solomon, who is closely involved in negotiating ad rep agreements and providing ad rep services, testified that



Ex. 14, Solomon Tr. 153:6-21.

129.    Brian Hunt, Viamedia's former Senior Vice President of Business Development (the individual at Viamedia principally responsible for negotiating ad rep agreements), testified that



Ex. 19, Hunt Tr. 109:22-111:21.

130.    Viamedia's CEO, who was the designated corporate witness on the nature of the tying and tied products in this litigation, testified that



Ex. 13, Lieberman Tr. 309:22-311:3.

131.

132. █████████████████████████████████████████████████████

█████████████████████████████

## ADDITIONAL FACTS RELATED TO
## VIAMEDIA'S TORTIOUS INTERFERENCE CLAIM

### *The "Florida calls"*

133. █████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ Ex. 25, Schroeder Tr. 71:4-72:9.

134. Viamedia's corporate representative on the topic of "Comcast's alleged tortious interference with Plaintiff's business expectancy, including the alleged statement, actions, and conduct of Comcast alleged to interfere with Plaintiff's business expectancy" ████████████

███████████████████████████████████████ Ex. 26, Gaylord Tr. 110:21-

114:16; 148:4-149:4.


Dated:    March 16, 2018                    Respectfully submitted,


                                            COMCAST CORPORATION AND
                                            COMCAST CABLE COMMUNICATIONS
                                            MANAGEMENT, LLC


                                             _/s/ Ross B. Bricker_____
                                            Ross B. Bricker
                                            Sally K. Sears Coder
                                            Daniel T. Fenske
                                            JENNER & BLOCK LLP
                                            353 N. Clark Street
                                            Chicago, Illinois 60654
                                            Tel: (312) 222-9350
                                            Fax: (312) 527-0484
                                            rbricker@jenner.com
                                            ssearscoder@jenner.com

                                            Arthur J. Burke (*pro hac vice*)
                                            David B. Toscano (*pro hac vice*)
                                            DAVIS POLK & WARDWELL LLP
                                            450 Lexington Avenue
                                            New York, New York 10017
                                            Tel: (212) 450-4000
                                            Fax: (212) 701-5800
                                            Arthur.Burke@davispolk.com
                                            David.Toscano@davispolk.com

                                            *Attorneys for Defendants Comcast*
                                            *Corporation and Comcast Cable*
                                            *Communications Management, LLC*