IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| VIAMEDIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> COMCAST CORPORATION, AND COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, <br><br> Defendants. | No. 16 C 5486 <br><br> Hon. Charles R. Norgle, Sr. <br><br> Hon. Sheila M. Finnegan |

**PLAINTIFF VIAMEDIA, INC.'S OPPOSITION TO COMCAST'S MOTION (1) TO COMPEL VIAMEDIA TO SERVE A PRIVILEGE LOG AND (2) TO AMEND THE ESI ORDER**

At the outset of discovery, the parties agreed that neither Comcast nor Viamedia would have any "obligation to" put on a privilege "log information generated on or after" the date the complaint was filed. ECF No. 55, ¶ 8(b) ("Agreed ESI Order"). The parties submitted that agreement to the Court, the Court entered the Agreed ESI Order, and that order has since governed four and a half years of litigation. Because Comcast cannot justify its request to renege on its agreement and modify the order, the Court should deny the Motion.[1]

To start, Comcast mischaracterizes Viamedia's position. Viamedia did not, as Comcast claims (at 4), "refuse[] to" produce a privilege log for its remand production. Viamedia instead made clear that it would prepare a privilege log for that production that complies with the Agreed ESI Order, including that order's distinction between pre-and post-complaint documents. Viamedia has substantially completed its privilege review and expects imminently to produce that log. That is not "gamesmanship" (at 2) or "stonewall[ing]" (at 6): it is complying with the

---

[1] "Motion" refers to Comcast's Motion to (1) Compel Viamedia to Serve a Privilege Log and (2) to Amend the ESI Order, ECF No. 444; "Comcast," to Defendants and their affiliates previously named as Defendants; and "Viamedia," to Viamedia, Inc.

agreement the parties made and the Court entered as an order.

Comcast's only argument for disregarding that agreement is that the parties and the Court did not anticipate the course this case would take when they negotiated and entered the Agreed ESI Order. To start, Comcast cites no case holding that a routine privilege-log agreement can be set aside simply because counsel did not perfectly predict the details of a case's path to trial (which counsel never can). Further, nothing supports the assertion that these parties' able counsel were ignorant about the possibility that this complex case could require an appeal, remand, and supplemental discovery when they negotiated the agreement. Nor is there any reason to think that, just because the case has taken longer to get through discovery than originally anticipated, the calculus underlying the decision not to log privileged communications after the date of the complaint would – or should – change.

More to the point, the time to raise this issue was a year and a half ago. If Comcast wanted to undo an agreement it asked the Court to enter as an order at the start of discovery, the time to ask for that relief was when the Seventh Circuit remanded the case for the limited purpose of "further *necessary* discovery and for trial." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 435 (7th Cir. 2020) (emphasis added). That Comcast instead waited until now, with most of party document discovery completed and deposition discovery soon to start, is enough by itself to deny the Motion.

It is no mistake that Comcast instead brings this motion about four and a half months after both parties' document productions were substantially complete, nearly three months after Viamedia pointed out Comcast's misreading of the order, and near the party fact discovery deadline the Court has set. This request for yet another discovery mulligan is yet another effort by a monopolist to weaponize process to bleed out its smaller rival. The Court should therefore

deny the Motion.

## BACKGROUND

1.  Viamedia has explained this case's background in several prior filings. *See* ECF Nos. 395 (Joint Status Report) & 401 (Viamedia's September 14, 2020 motion for protective order). It is an antitrust case in which Viamedia advances two theories of Section 2 liability: refusal to deal and tying. The central factual allegations underlying those claims were set out by Judge St. Eve in addressing Comcast's motion to dismiss nearly five years ago:

> For [its monopolization] claim, Viamedia alleges: (1) "[t]he provision of Spot Cable Advertising Representation services constitutes a relevant product market, (2) "the regional DMAs in which Comcast controls the Interconnect constitute relevant geographic markets," (3) "Comcast has monopoly power in Spot Cable Advertising Representation in each of the DMAs where it controls the Interconnect," (4) Comcast has excluded Viamedia and its clients from accessing Comcast-controlled Interconnects, and (5) "[b]y refusing to deal with Viamedia and [multichannel video programming distributors, or "MVPDs"] represented by Viamedia [and] by conditioning access to Interconnects upon an MVPD's agreement to deal with Comcast Spotlight. . . Comcast has unlawfully acquired and maintained its monopoly power in each of the markets where it controls the Interconnect."

ECF No. 36 at 13; *see also id.* (noting that the attempted-monopolization claim was "based on the same conduct"). The Court proceeded to dismiss the refusal-to-deal theory before discovery. *See* ECF Nos. 36 (dismissing without prejudice), 60 (dismissing repleaded refusal-to-deal claim with prejudice). But it denied dismissal of the tying theory. ECF No. 36 at 26.

2.  After Judge St. Eve's initial dismissal of the refusal-to-deal theory and before document discovery began in earnest, both sides "worked together to jointly draft [an] ESI Order and" moved for its entry on the ground "that it [would] facilitate the efficient production of electronic discovery in this matter." ECF No. 52 at 1. One component of that agreement was a provision stating that "the parties shall have no obligation to log information generated on or after May 23, 2016" – the day the complaint was filed. ECF No. 55, ¶ 8(b). The Court entered

the Agreed ESI Order days later.

3. Fact and expert discovery proceeded to examine at length Comcast's anticompetitive conduct in three DMAs – Chicago, Detroit, and Hartford – and the effects of that conduct on Viamedia and third parties (as of the close of expert discovery). Document discovery was voluminous: Viamedia served 79 document requests, Comcast served 87 document requests, and the parties produced between them on the order of 575,000 records. Notably, documents post-dating May 23, 2016 were plentiful in that production: Comcast produced 77,332 documents from on or after May 23, 2016, and Viamedia produced 283,924 such documents. Both sides also produced privilege logs subject to the Agreed ESI Order.

After the completion of fact and expert discovery, the Court (again, in a decision by Judge St. Eve) granted Comcast summary judgment on the tying claim in 2018. *See* ECF No. 356. But on February 24, 2020, the Seventh Circuit reversed dismissal of the refusal-to-deal claim and summary judgment on the tying claim. Notwithstanding the different procedural posture, the Seventh Circuit emphasized that "[t]hese related claims are both based on the same course of conduct, resulted in the same anticompetitive harms, and would be subject to the same procompetitive justifications or defenses." *Viamedia*, 951 F.3d at 450. It therefore remanded this case "for any further necessary discovery and for trial." *Id.* at 435. And on April 15, the Court of Appeals returned the mandate to this court. ECF Nos. 390-393. Comcast filed a petition for a writ of certiorari, but the Supreme Court denied that petition.

4. Meanwhile, document discovery has continued. Taken together, the parties have now served 246 document requests. The parties' remand productions, which are now substantially complete, include approaching 400,000 records. Pursuant to the Court's August 27, 2021 order, deposition discovery is set to start.

As the parties approached the substantial completion of their document productions, they discussed the potential preparation of privilege logs. As Comcast states (at 4), in letter correspondence regarding the status of Comcast's document review and production as of early March 2021, Viamedia noted that "Comcast ha[d] not yet provided any privilege log relating to remand discovery." ECF No. 444-1. But – contrary to Comcast's assertion (at 4) – Viamedia did not thereafter state "that it would not produce a privilege log for post-remand discovery." Viamedia instead made clear that any privilege log for post-remand discovery would comply with the Agreed ESI Order, and therefore would not "log information generated" after the complaint was filed. ECF No. 55, ¶ 8(b). Viamedia thus did not "change[] its position," as Comcast claims (at 4). It instead brought to Comcast's attention a portion of the Agreed ESI Order that Comcast appeared to have overlooked for the entirety of remand discovery.

Comcast did not raise the issue with the Court for nearly three months. Instead, it waited until near the close of discovery, and until after the Court granted leave to withdraw to the Viamedia attorney primarily responsible for addressing the issue (*see* Mot. at 4 n.2 & ECF No. 442), then filed the Motion.

Viamedia has since substantially completed its privilege review and made a supplemental production. It also expects imminently to serve a privilege log. Consistent with the Agreed ESI Order, it will not "log information generated on or after" the date the complaint was filed.

## ARGUMENT

Comcast's request to undo the agreement it made with Viamedia long ago and to modify the Court's Agreed ESI Order should be denied.

**A.** Although Federal Rule 26(b)(5)(A) presumptively requires parties to describe the basis for a privilege claim, courts and parties routinely limit or eliminate that obligation with

respect to documents that post-date the filing of litigation. *E.g.*, *Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 3919495, at *3 (N.D. Cal. Nov. 18, 2009) (refusing to require privilege log as to materials protected by privilege or the work-product doctrine "that post-date the filing of the instant action"); *United States v. Cinergy Corp.*, 2008 WL 5424007, at *4 (S.D. Ind. Dec. 30, 2008) (rejecting waiver argument because such an agreement foreclosed it); *see also Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 139 n.22 (3d Cir. 2009) ("We underscore that a privilege log may not be required for communications with counsel that take place after the filing of a law suit."). The practice is so common that the model ESI order of another Judge of this District includes a similar provision,[2] and some courts have gone so far as to make one part of their local rules: "despite the relevancy of a given document, in most cases, there is no good reason to require a party to go through the expense and burden of creating a privilege log with respect to documents created after the commencement of a case." *Stern v. O'Quinn*, 253 F.R.D. 663, 689 (S.D. Fla. 2008).

The Motion does not cite not a single case in which any court anywhere has ever permitted a party that agreed to that routine practice to renege after document discovery was substantially complete.[3] To the contrary, courts regularly reject similar efforts to escape party

---

[2] *See* [Model] Stipulated Order for Discovery of Electronically Stored Information for Standard Litigation ¶ 8.c, *available at* https://www.ilnd.uscourts.gov/_assets/_documents /_forms/_judges/Harjani/Standard%20Litigation%20Proposed%20ESI%20Order.pdf ("Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.")

[3] The first set of cases (at 3-4) in the Motion stand for the uncontroversial proposition that the Federal Rules generally require privilege logs sufficient to enable the parties and the Court to assess privilege claims; none addressed an agreement to modify that general rule of the kind the parties here adopted. And *Aon PLC v. Infinite Equity, Inc.*, 2020 WL 1954027, at *1 (N.D. Ill. Apr. 23, 2020) (Mot. at 6) does not concern privilege logs at all; as noted below, the cited portion of it stands for the (again) uncontroversial and irrelevant point that Federal Rule 16(b)(4) grants the Court the power to modify a discovery schedule "for good cause."

agreements that streamline discovery.  *E.g.*, *Pittston Co. v. United States*, 2002 WL 32158052, at *2 (E.D. Va. Oct. 2, 2002) ("A party to the protective order cannot later make a public access claim which it bargained away in order to expeditiously receive the documents in the first place"); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (S.D.N.Y. 1993) ("As a party to the stipulations which became the basis of the Protective Orders, ALPA cannot now object to the Protective Orders"), *aff'd,* 17 F.3d 600 (2d Cir. 1994); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 894 (E.D. Pa. 1981) (in antitrust case, regarding parties' unilateral effort "to abrogate" an agreement about how to resolve confidentiality-designation disputes, "All parties have relied on these provisions in producing documents . . . . . Plaintiffs cannot now attempt to undo what they have willingly wrought; having made their bed, they must sleep in it.").

This Court has applied the same principle in Comcast's favor.  Early in discovery, Viamedia (through new counsel) sought to revisit an agreement it and Comcast had previously made (through Viamedia's prior counsel) about document custodians.  Comcast characterized that effort "to re-trade an agreement" as "gamesmanship" – an attempt to secure "a second bite at the apple."  ECF No. 94 at 5-7.  The Court (appreciating Viamedia's new counsel's candor about the facts) agreed with Comcast, saying:  "I am not revisiting agreements."  ECF No. 125-10 at 23.  Comcast now, having once accused Viamedia of "gamesmanship" for seeking "to re-trade an agreement," seeks itself to re-trade an agreement and accuses Viamedia (at 2) of "gamesmanship" for adhering to it.  Recycling such accusatory clichés cannot overcome the fundamental flaw in Comcast's position:  Comcast agreed to the approach the Court made part of its Agreed ESI Order, and the Court should not "revisit[]" that "agreement[.]"  ECF No. 125-10 at 23.

**B.** Comcast asserts that the Court could set aside the Agreed ESI Order for "good cause" (Mot. at 6), but its only case on the point addresses a discovery schedule whose modification is governed by Rule 16(b)(4), not an agreed order governing the content of privilege logs. *See Aon*, 2020 WL 1954027, at *1. At any rate, even granting that the Court has the power to reconsider its interlocutory orders, Comcast gives the Court no basis to set aside the Agreed ESI Order under any standard. *See id.* (noting that motions to reconsider interlocutory orders present "an opportunity to correct a manifest error of law or fact or consider newly discovered evidence").

Comcast's sole justification for revisiting the Agreed ESI Order is its claim that the parties did not foresee that this case would proceed to a judgment that would be reversed on appeal, requiring additional discovery encompassing "significant productions of documents that post-dated the complaint." Mot. at 5. But Comcast cites nothing suggesting that whether the Court should enforce an agreement Comcast once thought would "facilitate the efficient production of electronic discovery in this matter" (ECF No. 52 at 1) depends on whether the lawyers predicted how long that discovery would take to complete – something that, it goes without saying, lawyers can never predict with certainty. And when the parties negotiated the Agreed ESI Order, their experienced counsel were doubtless aware that antitrust cases often can be complex and lengthy – in no small part because document discovery can be voluminous – and that privileged communications naturally multiply after the filing of a complaint. Further, they likewise surely knew that in this specific antitrust case, Judge St. Eve's dismissal of the refusal-to-deal claim could be reconsidered or reversed, and that additional discovery might follow. Each side nevertheless decided to forgo the benefits of receiving a privilege log reflecting post-complaint communications in exchange for avoiding the burdens of preparing one. That neither

side foresaw the precise course the litigation would take is a truism that does nothing to justify abandoning the agreement: that uncertainty was part of the risk-benefit calculus the parties' counsel were well-positioned to make *ex ante*, and that Comcast regrets its decision is not a reason for the Court to erase it *ex post*.

**C.** Comcast's strategic delay in raising the issue is an independent reason to deny the Motion. *See LG Elecs. v. Whirlpool Corp.*, 2009 WL 3294802, at *2 (N.D. Ill. June 22, 2009) ("[d]istrict courts may deny motions [to compel] as untimely due to unexplained or undue delay or when the late motion will require an extension of the discovery period."; overruling objections to privilege log entries based on unwarranted delay).

If Comcast believed the Agreed ESI Order should be modified for remand discovery, the proper time to raise the issue was a year and a half ago – before remand discovery started. Further, as soon as it realized it had (apparently) overlooked this element of the Agreed ESI Order throughout remand discovery, Comcast could have admitted as much and asked the Court to modify that order. Even if Viamedia opposed that motion, the Court could have quickly resolved the dispute long ago.

Comcast instead waited until well after the parties' productions were substantially complete, well after the dispute was clearly ripe, and right after the lawyer who primarily discussed the issue on Viamedia's behalf was granted leave to withdraw. Comcast then misrepresented Viamedia's position as a refusal to produce a privilege log, rather than as insisting the Agreed ESI Order continues to govern the *content* of that log. And Comcast then moved to vacate the discovery schedule, suggesting that Viamedia's position amounts to strategic "delay" (ECF No. 541 at 1) when Viamedia simply insists that the parties abide by their agreement and the Court's order.

9

The Motion is therefore hardly a response to the "changed circumstances" of additional discovery (*cf.* Mot. at 2); after all, those circumstances materialized more than a year ago. It is instead prompted by the fact that a discovery deadline once again looms, and Comcast once again wants to gin up reasons for delay. The Court should not indulge this pattern any further. It should instead deny the Motion.

## **CONCLUSION**

The Motion should be denied.


Dated: August 31, 2021

Respectfully submitted,

/s/ *Richard J. Prendergast*
James M. Webster, III (*pro hac vice*)
Aaron M. Panner (*pro hac vice*)
Kenneth M. Fetterman (*pro hac vice*)
Derek T. Ho (*pro hac vice*)
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jwebster@kellogghansen.com
apanner@kellogghansen.com
kfetterman@kellogghansen.com
dho@kellogghansen.com

Richard J. Prendergast
Michael T. Layden
Collin M. Bruck
**RICHARD J. PRENDERGAST, LTD.**
111 W. Washington Street,
Suite 1100
Chicago, Illinois 60602
(312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
cbruck@rjpltd.com

*Counsel for Plaintiff Viamedia, Inc.*