IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIAMEDIA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 C 5486 |
| | ) |
| COMCAST CORPORATION and | ) Judge Charles R. Norgle, Sr. |
| COMCAST CABLE COMMUNICATIONS | ) Magistrate Judge Finnegan |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

Plaintiff Viamedia, Inc. filed suit alleging that Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast") used its monopoly power in one service market to exclude competition and gain monopoly power in another service market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Currently before the Court is Viamedia's motion for protective order [401] and Comcast's motion to compel [410, 412]. For the reasons set forth here, Viamedia's motion is denied, and Comcast's motion is granted in part and denied in part.

**BACKGROUND**[1]

This lawsuit concerns two related services in the market for retail cable television advertising: (1) Interconnect services, and (2) advertising representation services. *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 434 (7th Cir. 2020). "Interconnect services are cooperative selling arrangements for advertising through an 'Interconnect'

---

[1] This opinion assumes the reader's familiarity with the Seventh Circuit's decision in *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020).

that enables providers of retail cable television services to sell advertising targeted efficiently at regional audiences. Advertising representation services for retail cable television providers assist those providers with the sale and delivery of national, regional, and local advertising slots." *Id*.

Viamedia sells ad rep services to its customer multichannel video programming distributors ("MVPDs") in certain Designated Market Areas ("DMAs"). *Id*. at 442. For example, Viamedia provides ad rep services to cable overbuilders RCN (in Chicago), WOW! (in Chicago and Detroit), and Frontier (in Hartford). *Id*. at 444. Comcast is an MVPD but it does not need an independent ad representative such as Viamedia because it is "vertically integrated and has its own wholly-owned subsidiary that provides ad rep services both in-house and to other competing MVPDs." *Id*. at 443. Moreover, in the Chicago, Detroit, and Hartford markets, Comcast is the sole "operator" or "manager" of the Interconnects. *Id*. at 444. "If an MVPD did not participate in an Interconnect, an advertiser could not reach its subscribers, making an ad buy within the DMA less valuable for any remaining MVPD Interconnect participants." *Id*. at 443.

In 2003, Viamedia entered into agreements with Comcast for Interconnect access in the Chicago and Detroit DMAs. Specifically, Viamedia agreed to "sell a portion of RCN's and WOW!'s spot avail inventory on a DMA-wide basis through the Comcast-controlled Interconnects."[2] *Id*. at 444. That arrangement expired on May 31, 2012 and Comcast decided not to renew but instead to seek RCN's and WOW!'s business directly. *Id*. at 444, 486. As a result, Viamedia no longer had access to the Interconnects, causing

---

[2] A "spot avail" or "spot cable availability" is an increment of network time (e.g., 15, 30, or 60 seconds) allotted to MVPDs to sell to advertisers during each hour of programming. *Viamedia, Inc.*, 951 F.3d at 437.

2

significant losses to RCN, WOW!, and Comcast as well. *Id.* When Viamedia's contracts with RCN and WOW! expired in 2015, Comcast invited them to sign up for ad rep services with Comcast, which would once again give them access to the Interconnects and "stop [the] bleeding." *Id*. at 447. Comcast engaged in a similar tactic in Hartford, excluding Frontier's spot avails from the Hartford Interconnect when it switched from Comcast to Viamedia for ad rep services. *Id*. at 444.

### A. Procedural History

Viamedia filed this lawsuit on May 23, 2016 alleging that Comcast violated Section 2 of the Sherman Act in two ways: (1) "refus[ing] to deal with Viamedia by denying it Interconnect access"; and (2) "engag[ing] in tying by denying MVPDs Interconnect access unless they purchased Comcast's ad rep services." *Id*. at 453. The district court dismissed the refusal-to-deal claim on November 4, 2016. (Doc. 36). Following fact and expert discovery, the district court granted summary judgment on the tying claim on August 16, 2018. (Doc. 356). Viamedia appealed and on February 24, 2020, the Seventh Circuit reversed the district court's ruling on both claims and remanded the case for "any further necessary discovery and for trial." *Viamedia, Inc.*, 951 F.3d at 435.[3]

### B. New Discovery Requests and Related Motions

On August 24, 2020, Comcast served a Sixth Set of Interrogatories on Viamedia. (Doc. 410-1). Shortly thereafter, on September 1, 2020, Comcast served its First Set of Remand Document Requests on Viamedia. (Doc. 410-2). Comcast has also asked that

---

[3] Comcast filed a petition for a writ of certiorari on September 4, 2020. In December 2020, the Supreme Court invited the Acting Solicitor General to file a brief expressing the views of the United States. The United States filed its brief on May 25, 2021, and the Supreme Court subsequently denied Comcast's petition for cert on June 28, 2021. *Comcast Corp. v. Viamedia, Inc.*, 141 S. Ct. 2877 (2021).

Viamedia supplement its answers to 17 prior interrogatories. (Doc. 401, at 6). Before answering these discovery requests, Viamedia filed a motion for protective order on September 14, 2020, arguing that it should only be required to produce discovery relating to Comcast's refusal-to-deal in DMAs other than Chicago, Detroit, and Hartford, since discovery had already taken place as to those markets. Notwithstanding the pending motion, on October 1, 2020, Viamedia served its answers and objections to the First Set of Remand Document Requests. (Doc. 410-4). A month later, on October 30, 2020, Viamedia served its answers and objections to the Sixth Set of Interrogatories. (Doc. 410-3).[4] On November 5, 2020, Comcast filed a motion to compel responses to the Sixth Set of Interrogatories and Remand Document Requests. (Doc. 410).

## DISCUSSION

### I. Viamedia's Motion for Protective Order

Viamedia seeks a protective order limiting the scope of post-remand discovery. Rule 26 allows that a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). *See also Breuder v. Bd. of Trustees of Community College Dist. No. 502*, No. 15 C 9323, 2021 WL 1209296, at *10 (N.D. Ill. Mar. 31, 2021). "The party seeking the protective order bears the burden of demonstrating why the order should be entered." *Breuder*, 2021 WL 1209296, at *10 (citing *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015)).

Viamedia argues that the only post-remand discovery that is "necessary" to address before trial concerns the following two topics: (1) Viamedia's refusal-to-deal

---

[4] On January 29, 2021, Viamedia served its Third Supplemental Responses to the Sixth Set of Interrogatories. (Doc. 461-1).

4

claim with respect to DMAs other than Chicago, Detroit, and Hartford; and (2) any damages that Viamedia may seek beyond those Viamedia previously disclosed. (Doc. 401, at 7).[5] Viamedia says the discovery taken on the tying theory concerning the Chicago, Detroit and Hartford DMAs suffices to cover any discovery related to the refusal-to-deal theory in those markets, even though the latter claim was dismissed before discovery began. In other words, Viamedia's position is that the only discovery Comcast is entitled to concerning Chicago, Detroit, and Hartford relates to damages incurred since the prior round of discovery ended. (Doc. 401, at 9) ("[B]ecause Comcast's conduct in Chicago, Detroit, and Hartford has continued to cause additional harm to Viamedia since discovery closed, narrowly tailored discovery of those new damages would . . . be appropriate.").

In support of this argument, Viamedia stresses the Seventh Circuit's observation that both the refusal-to-deal and tying theories are "based on the same course of conduct, resulted in the same anticompetitive harms, and would be subject to the same procompetitive justifications or defenses." *Viamedia, Inc.*, 951 F.3d at 450. Viamedia notes that during the initial round of discovery, Comcast served 87 document requests, 25 interrogatories, and 167 requests for admission, as well as 29 non-party subpoenas. (Doc. 401, at 3). In addition, the parties produced 1.1 million documents and took 36 fact depositions of witnesses from Viamedia and Comcast, and from MVPDs such as RCN, WOW!, and Frontier. (*Id*.). Comcast also took a Rule 30(b)(6) deposition, and both parties "enlisted liability and damages experts" to "examine the nature and effects of

---

[5] As discussed below, in response to Comcast's motion to compel, Viamedia argues that even for DMAs other than Chicago, Detroit, and Hartford, Comcast only needs discovery from mid-2016 forward. (Doc. 413, at 11-15).

Comcast's conduct in Chicago, Detroit, and Hartford." (*Id*. at 4-5). In Viamedia's view, these discovery efforts were so broad as to cover any allegations concerning the refusal-to-deal claim in the Chicago, Detroit, and Hartford markets. (*Id*. at 8) ("Because that very same 'course of conduct' was *already* the subject of extensive discovery, the fact that the Seventh Circuit revived an additional theory of why that conduct is anticompetitive provides Comcast no basis for a fact-discovery do-over.") (emphasis in original).

Comcast disagrees, arguing that prior to the Seventh Circuit's remand, it "did not serve a *single discovery request* concerning the alleged refusal to deal." (Doc. 406, at 5) (emphasis in original). Though Comcast concedes that "some facts are relevant to both claims," it insists that "the claims are fundamentally distinct." (*Id*. at 8). According to Comcast, the tying claim focuses on "a condition that Comcast supposedly placed on its sales to third parties (RCN and WOW!) starting in the year 2016," whereas the refusal-to-deal claim "involves the earlier non-renewal of a contract between Comcast and Viamedia that expired in 2012." (*Id*.). As Comcast sees it, the fact that there is a relationship between the two claims does not mean there is total overlap. As a result, Comcast argues that it is "entitled to put Viamedia to its proof on the refusal-to-deal claim by exploring all relevant facts, including Viamedia's response to the claimed refusals, including any countermeasures, effects on the marketplace, and facts surrounding Viamedia's rejection of Comcast's offer to deal with it in Chicago, Detroit, and Hartford in 2014." (*Id*. at 9).

The Court declines Viamedia's invitation to broadly declare that all discovery concerning the refusal-to-deal claim in the Chicago, Detroit, and Hartford DMAs is unnecessary (given the pre-remand discovery on the tying claim) and so is foreclosed except as to supplemental damages incurred in those markets. First, it is undisputed that

Comcast was not permitted to issue discovery requests on the refusal-to-deal claim before the remand, and did not do so. And as Comcast notes, the relationship between the tying and refusal-to-deal claims does not mean there is total overlap between the legal elements or factual bases of those claims. Viamedia contends that at oral argument before the Seventh Circuit, in addressing the prior dismissal of the refusal-to-deal claim, Comcast's counsel admitted that additional discovery in Chicago, Detroit, and Hartford is unnecessary, stating that "we think it's clear on the face of the complaint what Comcast did, and there's really no disagreement about it, we're not sure what factual development is necessary." (Doc. 401, at 2) (citing Oral Argument, at 44:20, *Viamedia, Inc. v. Comcast Corp.*, No. 18-2852 (Feb. 7, 2019), http://media.ca7.uscourts.gov/sound/2019/dl.18-2852.18-2852_02_07_2019.mp3). But this in no way demonstrates that Comcast believed all the facts pertinent to a refusal-to-deal claim had been covered fully in discovery for Chicago, Detroit, and Hartford.

Second, the Court is unable to conclude, as a general matter, that the pre-remand discovery provided on the tying claim is necessarily duplicative of all discovery that Comcast now is seeking to defend the refusal-to-deal claim in the three DMAs. Third, to the extent a specific discovery request *is* duplicative, Viamedia is able to minimize the burden of responding by referring to the prior response or production. Indeed, it appears Viamedia has already done so in some instances. (*See, e.g.*, Doc. 410-4, at 10-13; P's Answers to Request Nos. 93, 95, 96, 97). And as always, Viamedia is able to object with specificity to particular discovery requests if there is a good faith basis to do so. In light of the denial of the motion for a protective order, a blanket objection to answering refusal-to-deal discovery requests would not be permissible.

Finally, the Court declines to grant the motion because the proposed protective order fails to provide sufficient specificity as to what discovery is and is not allowed. Indeed, Viamedia's own position on this question appears to have shifted at times. For example, after filing the motion, Viamedia served answers to Comcast's new discovery requests that appear to encompass the Chicago, Detroit and Hartford DMAs.[6] In addition, Viamedia has sometimes taken the position that discovery of the refusal-to-deal claim in markets other than Chicago, Detroit, and Hartford is necessary, while at other times asserting that such discovery has already been provided. In the motion for protective order, Viamedia argued that "supplemental discovery of Comcast's illegal refusal to deal with Viamedia in markets other than Chicago, Detroit, and Hartford is needed," suggesting it would respond to any refusal-to-deal discovery concerning those other DMAs. (Doc. 401, at 9). Consistent with that view, Viamedia quoted the following language from the Seventh Circuit's opinion: "Viamedia has offered sufficient evidence to demonstrate *prima facie* claims for monopolization of the ad rep service markets *in three DMAs* through refusal to deal and tying." *Viamedia, Inc.*, 951 F.3d at 474 (second emphasis added). And Viamedia claimed that its own appellate brief seeking "discovery on its refusal-to-deal claims" was referring to "Comcast's conduct in *other* 'major DMAs across the country, such as Seattle, Minneapolis-St. Paul, Portland, and Baltimore.'" (Doc. 406, at 7; Doc. 407, at 7). But in response to Comcast's pending motion to compel discussed below, Viamedia now claims that it *already* provided necessary responses not only as to

---

[6] In response to Interrogatory 26, seeking the identity of each instance where Comcast refused to deal with Viamedia, Viamedia included information about Chicago, Detroit, and Hartford. (Doc. 410-3, at 3). The same is true for Viamedia's response to Interrogatory 27, seeking the identity of each MVPD and DMA as to which Viamedia contends that it has been injured by Comcast's refusal to deal. (*Id*. at 6, 10-12; Doc. 461-1, at 6-8).

Chicago, Detroit, and Hartford, but also as to all other DMAs up through mid-2016. (Doc. 413).

For all of these reasons, Viamedia's motion for a blanket protective order disallowing any refusal-to-deal discovery as to the Chicago, Detroit, and Hartford DMAs aside from new damages information is denied. In light of this ruling, Viamedia may not instruct witnesses not to answer deposition questions that relate to the Chicago, Detroit, and Hartford markets merely based on the motion for protective order. Such wholesale objections are overruled.[7]

## II. Comcast's Motion to Compel

The Court next turns to Comcast's motion, which seeks to compel answers to certain interrogatories ("ROGs") and document requests. "A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at *2 (N.D. Ill. Apr. 17, 2019) (citing FED. R. CIV. P. 37(a)). "Courts have broad discretion in resolving such disputes." *Id*.

Comcast has identified three categories of discovery it wants Viamedia to produce: (1) the identity of individuals with knowledge of Comcast's refusal to deal and related damages; (2) the identity of all cable companies and/or geographic areas at issue in the

---

[7] Comcast also directs the Court's attention to discovery issued by Viamedia that it believes seeks "evidence of tying in additional regions beyond those that were the focus of prior discovery." (Doc. 406, at 10). Comcast argues that Viamedia "should not be entitled to expand its tying claim beyond Chicago, Detroit, and Hartford," but if it is intending to do so, then Comcast should be permitted to seek "reciprocal discovery on tying." (*Id.*). Viamedia denies that the requests at issue "reopen tying discovery." (Doc. 407, at 8). The Court declines the premature invitation to address this separate dispute.

9

refusal-to-deal claim; and (3) responsive documents for the period before 2016, or certification that prior production is complete. (Doc. 410, at 2-3).

### A. ROG 28

Comcast first seeks a more thorough response to ROG 28, which states:

> Identify all persons with knowledge of the allegedly unlawful refusals to deal and claimed injuries identified in Viamedia's responses to Interrogatory Nos. 26 and 27, stating for each individual the basis for and scope of their knowledge. Include current and former employees of Viamedia as well as any persons associated with third parties, such as MVPDs, who have knowledge about any MVPD's decision to continue or discontinue its relationship with Viamedia.

(Doc. 410-1, at 5-6). Viamedia identified five current employees who have "substantial knowledge relating to the information provided in response to Interrogatory Nos. 26 and/or 27" (Doc. 410-3, at 7), but declined to identify any former employees or third parties with knowledge. Viamedia explains that it conducted reasonable inquiries of its current employees to determine their actual knowledge, but "cannot responsibly make a representation about what anyone [else] *actually* knows without asking them," something it is not required to do under the Federal Rules. (Doc. 413, at 6, 7) (emphasis in original). *See Gevas v. Baldwin*, No. 18 C 3165, 2021 WL 633357, at *3 (N.D. Ill. Feb. 18, 2021) (quoting *American Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 413 (N.D. Ill. 2007)) ("Federal Rule of Civil Procedure 33 requires a responding party 'to provide full answers to interrogatories, which includes all information within that party's knowledge and control.'").

Comcast accuses Viamedia of "sophistry." (Doc. 410, at 6). In Comcast's view, Viamedia already knows from prior investigations and otherwise which of its now former employees and which other individuals "with whom it directly interacted" have knowledge

10

of the claimed refusal-to-deal and resulting injuries. (*Id*.; Doc. 416, at 3). Comcast submits that Viamedia admitted to having such knowledge in a declaration prepared in opposition to Comcast's motion for summary judgment on the tying claim. Specifically, Mark S. Lieberman, Viamedia's former CEO and a current director, attested on April 19, 2018 that he and his management team conducted "interviews with past and current Viamedia personnel who had direct contact with our MVPD partners" to assess how Viamedia's "relationships with its MVPD partners would have been different in a 'but-for' world, absent Comcast's anticompetitive conduct." (Doc. 334 ¶ 42; Doc. 416, at 4-5). According to Comcast, Viamedia now "just has to disclose what it already knows." (Doc. 416, at 5). Comcast also finds it significant that Viamedia identified some former employees and non-parties with knowledge in its Rule 26(a) disclosures. (Doc. 410, at 7; Doc. 416, at 4). Comcast sees no reason Viamedia cannot do the same here, though as Viamedia points out, Rule 26 is worded differently than ROG 28, asking for the identity of witnesses a party may use to support its claims or defenses. (Doc. 413, at 7).

The parties' dispute about ROG 28 appears to turn on what Comcast means when it asks Viamedia to identify all persons *with knowledge*. The Court agrees that Viamedia is not required to make inquiries of third parties to determine their actual knowledge. But the Court construes ROG 28 more narrowly as asking Viamedia, based on information already in its knowledge or control, to identify persons believed to have knowledge of the claimed refusal-to-deal and resulting injuries.[8] *See Mendez v. City of Chicago*, No. 18 C 6313, 2020 WL 4736399, at *4 (N.D. Ill. Aug. 14, 2020) (requiring the plaintiff to answer an interrogatory asking for the identity of anyone the plaintiff "believes . . . may possess"

---

[8] Comcast states that Viamedia only needs to answer "on the basis of its present beliefs" and with information "it already knows." (Doc. 416, at 4-6 & n.3).

11

knowledge of the lawsuit's allegations). Based on this construction of ROG 28, the motion to compel is granted and Viamedia's objection to identifying any former employees or third parties is overruled.

Viamedia has also objected to ROG 28's request that it state the "basis and scope" of any person's knowledge. This objection is sustained in part and overruled in part. To the extent the information is within its knowledge or control, Viamedia must provide the following information for each person who is identified: (1) the person's employer and job title/responsibilities during the time period at issue; (2) the person's current employer; and (3) a brief description of the subjects on which the person is believed to have knowledge relating to the alleged unlawful refusals-to-deal and/or claimed injuries identified in Viamedia's responses to ROGs 26 and 27. *See, e.g., Mendez*, 2020 WL 4736399, at *4 (courts "commonly allow" interrogatories asking a party to "briefly describe the nature of the facts or knowledge you believe that individual may possess."). If Comcast wants to explore the actual existence, basis, and scope of a witness's knowledge, it may pursue that line of inquiry during depositions.

## B. ROG 26

ROG 26 asks Viamedia the following:

Identify each instance in which Viamedia contends that Comcast unlawfully refused to deal with Viamedia, including for each such refusal: (a) the date of the refusal, (b) the DMA(s) at issue in the refusal, (c) the MVPD(s) with which Viamedia had or sought a relevant relationship in each such DMA; (d) any prior course of dealing between Comcast and Viamedia that Viamedia contends is relevant to the refusal; and (e) any harm to competition caused by the refusal.

(Doc. 410-1, at 5; Doc. 410-3, at 2). Viamedia identified several such instances occurring between 2008 and 2016 in 11 DMAs that were specifically named. (Doc. 410-3, at 3-4).

The portion of Viamedia's answer that Comcast disputes is the assertion that Viamedia "reserves the right to supplement or amend its response to this Interrogatory as appropriate." (*Id*. at 5; Doc. 410, at 8). Comcast argues it is time for Viamedia to specify any other geographic regions and time periods at issue so it has a proper "opportunity to gather information necessary for its defense" before discovery closes. (Doc. 410, at 8-9) (citing *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-CV-1296-JPS, 2017 WL 3130414, at *4 (E.D. Wis. July 24, 2017)) ("[T]he paradigm of the Federal Rules generally . . . is to avoid trial by ambush by facilitating early and ongoing factual disclosure to the fullest extent practicable.").

Viamedia responds that it has answered ROG 26 "based on what it presently knows and contends," but also characterizes the request as a contention interrogatory that is more appropriately answered closer to the end of discovery. (Doc. 413, at 8-9) (citing *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 n.3 (N.D. Ill. Dec. 7, 1995)) ("[B]ecause one of the chief purposes of contention interrogatories is to narrow the issues for trial, fairness dictates that parties not be forced to prematurely take a position, which would produce an artificial narrowing of the issues, instead of an informed paring down."). Viamedia claims that before it can identify all instances of Comcast's refusal-to-deal that were unlawful, it needs discovery from Comcast that "should illuminate why Comcast decided not to allow Viamedia to contribute its MVPD clients' avails to various interconnects controlled by Comcast, which will bear upon whether the refusals were unlawful." (*Id*. at 9). As Viamedia explains, "only Comcast's own documents and testimony can reveal whether Comcast was 'decid[ing] to forgo profitable

13

transactions . . . for the sake of harming' Viamedia, or whether Comcast was instead 'motivated by efficiency concerns.'" (*Id*.) (quoting *Viamedia, Inc.*, 951 F.3d at 457).

Comcast's motion to compel as to ROG 26 is denied. Viamedia has represented to the Court that it has identified all instances of Comcast's unlawful refusals-to-deal that are known to it. On the record before it, the Court is unable to conclude that Viamedia is withholding known information and so should be ordered either to supplement now or be barred from asserting any additional refusals-to-deal not presently identified in response to ROG 26. Of course Viamedia would face sanctions were it to wait until the eve of the discovery deadline to identify new instances of alleged refusals rather than supplementing in a timely manner.

At this juncture, there is no danger that Comcast will be prevented from discovery of the full scope of Viamedia's refusal-to-deal allegations due to an impending deadline. Since this Court vacated the October 22, 2021 deadline for fact discovery concerning issues raised in the parties' current motions (Doc. 452), and will be setting new deadlines within a week of this ruling, Comcast will have sufficient time and opportunity to take discovery with respect to any new DMAs and MVPDs that Viamedia discloses in supplemental answers. (Doc. 410, at 8) (accusing Viamedia of trying to "'run out the clock' on fact discovery and deny Comcast the opportunity to gather information necessary for its defense."). To minimize the risk that the parties do not timely supplement their discovery responses and disclosures as required, the revised discovery schedule will include periodic dates for the parties to supplement as necessary.

14

## C. Documents Prior to Mid-2016

Comcast finally objects to Viamedia's assertion in response to Comcast's First Set of Remand Document Requests that it will only search for documents "created after May 23, 2016."[9] (*See, e.g.*, Doc. 410-4, at 7, Pl. Resp. to Doc. Request No. 88). Viamedia defends its position, asserting that "[a]ll of Comcast's remand document requests that relate to the 2011 to 2016 period duplicate and are subsumed within the scores of broad document requests that Comcast served during the prior round of discovery." (Doc. 413, at 11-12). Viamedia insists that since it already conducted reasonable searches for those prior requests, it should not have to perform additional searches of "the same files from the same time period for the same types of documents." (Doc. 413, at 12-13) (citing *Scandaglia v. TransUnion Interactive, Inc.*, No. 09 C 2121, 2010 WL 317518, at *3 (N.D. Ill. Jan. 21, 2010) (denying motion to compel production of documents where further response "would be cumulative.") and *Young v. Verizon's Bell Atlantic Cash Balance Plan*, No. 05 C 7314, 2007 WL 4277438, at *6 (N.D. Ill. Dec. 3, 2007) (denying motion to compel where the defendants "made a reasonable search for the requested documents," "produced those documents they have discovered," and there was "no reasonable basis" for requiring additional searches)).

As Comcast notes, however, at the point when those prior searches were done, Comcast had not yet issued any discovery requests related to Viamedia's refusal-to-deal claim, which had been dismissed early in the litigation. Since prior discovery proceeded only on Viamedia's tying claim, it is only now in this post-remand period that Comcast has

---

[9] Viamedia says it has also "agreed to search certain centralized document repositories, which contain documents from prior to 2016," and "will produce (subject to any objections) responsive, non-privileged documents located during that search, including from 2011 to 2016." (Doc. 413, at 5).

15

issued discovery requests focused on the refusal-to-deal claim. In addition, Comcast stresses that Viamedia has expanded its post-remand refusal-to-deal claim to include new DMAs and new MVPDs that were never before at issue in the litigation. (Doc. 410, at 9).

Finally, Comcast has produced evidence that, based on its own review of Viamedia's prior production for references to the newly-identified MVPDs at issue, there are some gaps. For example, though Viamedia indicated in response to ROG 27 that the refusal-to-deal claim includes three specific MVPDs, Comcast "has not identified emails or other correspondence in Viamedia's production evaluating these purported requests for interconnect access in the relevant DMAs." (Doc. 410, at 10). Viamedia disagrees, saying it has "produced correspondence reflecting Viamedia's requests for interconnect access in the DMAs where Viamedia represents these three MVPDs." (Doc. 413, at 15) (citing Doc. 415-1). The cited documents, however, do not make any reference to the three MVPDs in question. (*See* Doc. 415-1, at 3-4, 6-8, 11-12). Nothing in these documents suggests that the pre-remand searches were done in such a way that they uncovered responsive materials for all of the newly identified MVPDs in each DMA.

Nor is the Court persuaded that Viamedia's production to the Department of Justice in response to a Civil Investigative Demand ("CID") several months before this lawsuit (and later provided to Comcast) necessarily contains the responsive documents that Comcast seeks. (Doc. 413, at 3-4). Viamedia reasons that the CID did not distinguish between the theories of liability now asserted (i.e., tying and refusal-to-deal) and encompassed every geographic market where Viamedia provided services from 2011 to the end of 2015. Hence it believes any responsive documents would have been

16

in the DOJ production. During the oral argument on November 8, 2021, Comcast's counsel questioned this assertion, expressing the belief that no documents had been produced for some of the new MVPDs because they are in geographic locations that were not the focus of the first (pre-remand) search or the DOJ investigation. While Viamedia disagrees, the Court cannot broadly conclude from the record before it, and given the gaps that Comcast has identified, that Viamedia's pre-remand searches were necessarily sufficient to identify documents responsive to post-remand discovery requests for the period 2011 to mid-2016.[10]

As for the appropriate relief, Comcast states that it "does not ask Viamedia to re-produce responsive documents that it previously produced," but only wants Viamedia to certify that the prior productions "provide a *complete* response to the new requests." (Doc. 410, at 10) (emphasis in original) (citing *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL-MJD, 2015 WL 2371597, at *22 (S.D. Ind. May 18, 2015)) ("A party has a duty to reasonably investigate whether responses to an opposing party's discovery requests are complete."). The Court denies this aspect of the motion. It agrees with Viamedia that given the high volume of documents and number of years at issue in the case, it would not be appropriate to require Viamedia to certify its document production is complete, and no such certification is required by the Federal Rules. (Doc. 413, at 13) (citing *Moore v. Publicis Groupe*, 287 F.R.D. 182, 188 (S.D.N.Y. 2012) ("In large-data

---

[10] Viamedia provided a chart identifying each remand document request and the corresponding numbers of the pre-remand requests that purportedly overlap. (Doc. 413-6). For reasons identified by Comcast, the chart fails to demonstrate that Viamedia already has searched for responsive documents as to the refusal-to-deal claim for the period at issue. (Doc. 416, at 9-10).

cases like this, involving over three million emails, no lawyer using any search method could honestly certify that its production is 'complete.'").

Instead, the Court will require the parties to follow the usual process of meeting and conferring about any issues related to specific discovery requests made in the post-remand period. To the extent Viamedia believes it conducted an adequate search during the pre-remand period, it may identify the specific pre-remand request and response/production. If Comcast identifies apparent gaps such as those identified in the motion, the parties should discuss whether there may be new custodians for whom documents should be collected and searched. If the parties are unable to reach agreement, they may seek the Court's assistance in resolving their disputes. This portion of the motion to compel is granted in part and denied in part without prejudice.

Finally, the Court notes that Comcast seeks a response to three specific document requests (89, 90, and 91) that "relate to the contract between Viamedia and Comcast in the Chicago and Detroit areas from 2003 to 2012." (Doc. 410, at 11). As with the other requests, Viamedia declined to conduct any additional searches for these documents on the grounds that the requests are duplicative of previous requests that Viamedia already answered during the prior round of discovery. (Doc. 410-4, at 7-9). That said, Viamedia did identify the request numbers where Comcast could find responsive documents. (*Id*.). To the extent Comcast believes this response is insufficient, the parties are to meet and confer as stated.

## **CONCLUSION**

For the reasons stated above, Viamedia's Motion for Protective Order [401] is denied, and Comcast's Motion to Compel [410, 412] is granted in part and denied in part.

Dated: November 22, 2021

ENTER:

_____
SHEILA FINNEGAN
United States Magistrate Judge