UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIAMEDIA, INC., | ) |
| | ) |
| | ) Case No. 1:16-cv-05486 |
| *Plaintiff*, | ) |
| | ) Hon. Charles R. Norgle |
| v. | ) |
| | ) |
| COMCAST CORPORATION, and | ) |
| COMCAST CABLE | ) |
| COMMUNICATIONS | ) |
| MANAGEMENT, LLC | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## PLAINTIFF VIAMEDIA, INC.'S MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26, Plaintiff Viamedia, Inc. ("Viamedia") moves for a protective order limiting all further discovery to non-party fact discovery and expert discovery that both (i) post-dates the conclusion of the prior round of discovery, and (ii) concerns damages other than those sought in the prior round of discovery.

As Comcast itself has acknowledged, the Seventh Circuit has already held that the tying case must proceed to "trial." *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 435 (7th Cir. 2020). On remand, the only issue that conceivably merited additional discovery on the tying case was Viamedia's additional damages. And the Court's scheduling order required the parties to complete the party discovery they agreed was appropriate – including party discovery about Viamedia's additional damages – before October 22. Accordingly, additional discovery should be limited to non-party and expert discovery that (i) post-dates the conclusion of the prior round of discovery, and (ii) concerns Viamedia's additional damages.

1

Yet Comcast has made clear that it will abide by no such limitations. To list just a few examples, it has continued to press for new searches and productions of documents from 2011-2016 – even though that time period was indisputably within the scope of the round of discovery that concluded years ago. Comcast has sought to depose certain Viamedia witnesses for a third time, and to depose third-party witnesses on any subject – including about facts that Comcast had every opportunity to explore during the prior round of discovery. And it has made clear that it wants the parties to re-do their expert reports with no subject-matter limitation – notwithstanding that the Seventh Circuit has already addressed the tying case, and never contemplated amendments to the parties' experts' reports about the liability facets of that case.

By dropping its refusal-to-deal theories of liability, Viamedia dramatically simplified the case the Court must shepherd to trial. Exactly for that reason, Comcast seeks to re-complicate that case, proceeding as if the Seventh Circuit's remand wasn't a remand "for trial" at all, but a remand for another shot at preventing that trial by doing discovery over again. That is irreconcilable with Rule 26 and the Seventh Circuit's opinion.[1]

## BACKGROUND

1.  The Court is familiar with this case's history from several prior filings. *See* ECF No. 486. It is an antitrust case based on the following core factual allegations set forth by Judge St. Eve in addressing Comcast's motion to dismiss:

> For [its monopolization] claim, Viamedia alleges: (1) "[t]he provision of Spot Cable Advertising Representation services constitutes a relevant product market, (2) "the regional DMAs in which Comcast controls the Interconnect constitute relevant geographic markets," (3) "Comcast has monopoly power in Spot Cable

---

[1] The parties have exhaustively met and conferred on the matters addressed in this motion since Viamedia disclosed its intention to narrow its theories, most recently in preparation of the status report submitted on January 4, 2022. The principal participants for these conferences have included, for Comcast, Arthur Burke, Ross Bricker, and John Briggs; and for Viamedia, Collin R. White.

> Advertising Representation in each of the DMAs where it controls the
> Interconnect," (4) Comcast has excluded Viamedia and its clients from accessing
> Comcast-controlled Interconnects, and (5) "[b]y refusing to deal with Viamedia
> and [multichannel video programming distributors, or "MVPDs"] represented by
> Viamedia [and] by conditioning access to Interconnects upon an MVPD's
> agreement to deal with Comcast Spotlight. . . . Comcast has unlawfully acquired
> and maintained its monopoly power in each of the markets where it controls the
> Interconnect."

ECF No. 36 at 13; *see also id.* (noting that the attempted-monopolization claim was "based on the same conduct").

Fact and expert discovery proceeded to exhaustively examine Comcast's tying conduct in Chicago, Detroit, and Hartford and the effects of that conduct on Viamedia and third parties (as of the close of expert discovery). Party and non-party discovery was extraordinarily broad. Over the course of 12 months, 1.1 million documents were produced. Comcast alone served 87 document requests, 25 interrogatories, 167 requests for admission, and 29 non-party subpoenas. And the parties took 36 fact depositions – deposing not only witnesses from Viamedia and Comcast, but also (among others) from MVPDs affected by Comcast's conduct in those DMAs: RCN and WOW! (Chicago and Detroit) and Frontier (Hartford). Further, each side enlisted liability and damages experts, all of whom had ample opportunity to examine the nature and effects of Comcast's conduct in Chicago, Detroit, and Hartford. *See* ECF No. 220-01 Exs. 1, 2, 3 (reports and errata of Viamedia's liability expert, Harold Furchtgott-Roth), 10, 11, 12 (reports of Comcast's liability expert, Dennis Carlton), 6 (amended report of Viamedia's damages expert, Thomas Lys), 13 (report of Comcast's damages expert, Mark Israel).

In 2018, after the completion of fact and expert discovery regarding the tying theory, the Court granted Comcast summary judgment. *See* ECF No. 356. But on February 24, 2020, the Seventh Circuit reversed dismissal of the refusal-to-deal theories and summary judgment on the tying theories. The Seventh Circuit emphasized that "[t]hese related claims are both based on the

3

same course of conduct, resulted in the same anticompetitive harms, and would be subject to the same procompetitive justifications or defenses." *Viamedia*, 951 F.3d at 450. And it remanded this case "for any further necessary discovery and for trial." *Id.* at 435. The court elaborated on its view of the triable issues throughout its opinion – mentioning that trial no fewer than five times.[2]

    Comcast then sought Supreme Court review of the Seventh Circuit's decision. There, Comcast emphasized repeatedly the fact that the Seventh Circuit had "sen[t] the case to trial." Pet. for Writ of Cert. at 15, *Comcast Corp. v. Viamedia, Inc.*, No. 20-319 (U.S. Sept. 4, 2020). Its certiorari petition characterized the decision that way over and over (and over). *See id.* at 8 (noting that on the majority's view, "a *jury* would have to balance [Comcast's business justification] against any anticompetitive effects of not dealing with Viamedia) (cleaned up); *id.* at 10 (saying that "[t]he Seventh Circuit's decision" was one "to send a refusal-to-deal claim to trial"); *id.* at 13 ("the majority held that the claim would 'need to be tried' so that a jury could 'balanc[e] [any] anticompetitive effects' against Comcast's 'procompetitive justification'"); *id.* at 20 (noting the Seventh Circuit's "remand 'for trial'"); *id.* at 21 (the Seventh Circuit "suggest[ed] that Viamedia's claim must proceed to trial"). Its reply brief said the same thing – that the decision had, in Comcast's words (and emphasis), "order[ed] a *trial*." Reply Br. for

---

[2] 951 F.3d at 435 ("We remand this case for any further necessary discovery and for trial."); *id.* at 467 ("In the following analysis, we ask whether Viamedia has presented evidence of forcing sufficient to create a genuine dispute for trial" (and answering in the affirmative); *id.* at 470 (regarding evidence of forced purchase, noting that "[t]he opposing arguments are suitable for a trial but are not grounds for affirmance"); *id.* at 474 ("Comcast is free to offer [its] misunderstanding theory at trial, but the theory cannot support summary judgment"); *id.* at 485 (after holding that Viamedia had "offered sufficient evidence[ ] that Comcast violated Section 2 of the Sherman Act," noting that although "Comcast is free to contest these issues at trial, as well as to try to prove and quantify any procompetitive justifications[, t]he factual disputes in this case are numerous, genuine, and material").

4

Pet'rs at 5, *Comcast*, *supra* (Nov. 16, 2020). And Comcast's response to the Solicitor General's invitation brief (in which the Solicitor General recommended denial) repeated the point. *See* Suppl. Br. for Pet'rs at 7, *Comcast*, *supra* (June 7, 2020) ("[T]he panel dedicated an entire . . . section of its opinion to the 'considerations that will be relevant on remand' necessary to balance 'the harm to competition alleged by Viamedia and the procompetitive justifications offered by Comcast' when the case is sent to the jury 'for trial.'").

The Supreme Court denied certiorari.

2. Discovery on remand has been extensive. At the outset, the parties disagreed about (i) whether the Seventh Circuit's revival of Viamedia's refusal-to-deal theory of liability merited reopening discovery about Comcast's conduct within the Comcast, Detroit, and Hartford DMAs (which had been subject to discovery regarding Viamedia's tying theories), and (ii) certain discovery disputes related to the revival of the refusal-to-deal theory. The parties elaborated on their positions in motions briefed in late 2020.

But at least two points of significance were (it seemed) common ground between the parties. To start, Comcast then appeared to agree that the point of remand discovery was "to prepare this case for trial." ECF No. 419 at 5; *see id.* at 7 ("Comcast believes that additional time will be necessary after resolution of the pending motions so that the parties may adhere to the Court's rulings and complete the discovery necessary to prepare this case for trial."); *id.* at 10 ("In addition, Comcast suggests that the Court set a remote status conference approximately three months from now for the parties to report on discovery progress and any issues that arise in completing discovery and *in preparing this case for trial*." (emphasis added)).

Viamedia, for its part, has always recognized that it was appropriate to conduct discovery regarding "any damages that Viamedia may seek beyond those Viamedia disclosed before the

5

now-reversed summary-judgment decision" (as well as its refusal-to-deal theory to the extent that that theory challenged alleged refusals to deal outside Chicago, Detroit, and Hartford). ECF No. 401 at 1. Of particular relevance here, Viamedia long ago explained its contentions about what damages flowed from Comcast's tying conduct. In interrogatory responses it served (as amended) on January 29, 2021, Viamedia explained its contention that Comcast's tying conduct (not just its refusals to deal) contributed to damages associated with certain MVPDs and not to damages associated with others. *See* Exhibit 1 to Viamedia's Motion to File Under Seal Certain Exhibits To Its Motion For A Protective Order ("Sealing Motion"). In another response to a different request (served on April 28, 2021), Viamedia also made clear its contention that Comcast's conduct (both tying and refusal to deal) also harmed the overall value of its business. *See* Exhibit 2 to Sealing Motion.

At a hearing on August 27, 2021, the Court ordered the parties to complete any party fact discovery that did not depend on the outcome of the then-pending discovery motions by October 22, and subsequently summarized its directions (in relevant part) in a minute order. ECF No. 452. Over the next few weeks, Comcast took nine depositions – including a Rule 30(b)(6) deposition of Viamedia, in which Comcast sought – and Viamedia's designee was prepared to address – the facts that bear on Viamedia's additional damages theories – and Viamedia took a Rule 30(b)(6) deposition of Comcast. *See* Exhibit 3 to Sealing Motion at 10. Party fact discovery regarding the matters the parties agreed were fairly at issue – including Viamedia's additional damages – concluded on October 22.

The Court then resolved the pending discovery disputes in a November 22, 2021 Order. ECF No. 478. As relevant here, the Order indicated the Court found it important that, in light of the Seventh Circuit's reversal, Comcast was now defending a challenge to its conduct in

6

Chicago, Detroit, and Hartford under a new legal theory than that at issue during the prior round of discovery. That fact, the Court held, supported two consequences of particular significance here. *First*, the Court declined to preclude additional discovery regarding Comcast's conduct in Chicago, Detroit, and Hartford. *See id.* at 6-7. *Second*, the Court decided to permit additional document discovery regarding the 2011-2016 time period notwithstanding that period had been at issue during the prior round of discovery. *See id.* at 15-18.

The parties then, with the Court's guidance, discussed the schedule for completing the discovery contemplated by the Court's Order. That process made clear that litigating the refusal-to-deal theory through the completion of summary-judgment briefing was likely to entail substantial burdens and delays. Viamedia concluded that the most likely way to promptly secure a path to trial would be to narrow its theories. It therefore explained in a status conference held December 20, 2021 that it had determined that it would drop its refusal-to-deal theory of liability in the interest of securing a path to trial. It has since formalized that in both a Notice, *see* ECF No. 490, and in updated responses to Comcast's contention interrogatories, *see* Exhibit 4 to Sealing Motion.

**3.**     Undeterred, Comcast has persisted based on the apparent belief that none of the foregoing limits discovery in any way. That position is reflected in at least five concrete disputes.

***2011-2016 Documents.*** Comcast has insisted that Viamedia search for and produce documents from 2011-2016. It has not substantiated any basis for claiming that these searches are warranted notwithstanding Viamedia's withdrawal of its refusal-to-deal theory of liability. Nor has it explained why, if it believed those documents were relevant to Viamedia's tying claim, it did not request them during the prior round of discovery. Nor has it explained how it

7

can properly seek to reopen discovery on the period of time that was the subject of the first round of discovery notwithstanding the Seventh Circuit's decision that (again), in Comcast's own words, "order[ed] a *trial*." Reply Br. for Pet'rs at 5.

*Belated Discovery Requests.* Despite that all party discovery that did not depend on the outcome of the then-pending discovery motions closed on October 22, Comcast served additional discovery requests (serving interrogatories, requests for admission, and document requests) at nearly midnight that very day. Viamedia alerted Comcast to the fact that that under this District's precedent, discovery requests must be served in time to *complete* discovery on the Court's deadlines, *see Finwall v. City of Chicago*, 239 F.R.D. 494, 499 (N.D. Ill.), and that Viamedia therefore would not respond. Although the parties subsequently negotiated a compromise, that compromise was predicated on the assumption that Viamedia would continue to pursue its refusal-to-deal theories. After Viamedia committed to withdraw those theories, it also served objections making clear that it would no longer respond to this facially untimely discovery. *See* Exhibits 5-7 to Sealing Motion.

*Depositions.* Comcast seeks party deposition discovery even though party discovery on Viamedia's additional damages closed on October 22. In fact, Comcast has noticed depositions of two Viamedia witnesses, each of whom has already sat for multiple individual depositions in this case. In particular, it has sought to depose Viamedia's one-time CEO, Mark Lieberman, regarding a declaration he executed in response to Comcast's summary-judgment order – a declaration that addressed facts all of which were fairly at issue during the prior round of discovery.

***Expert Reports.*** As more fully detailed in the Parties' joint status report, *see* ECF No. 486, Comcast contends that the parties should "revis[e their] expert reports" with no subject-matter limitation – including, it seems, all matters related to the tying theory. *Id.* at 16.

***Third-Party Discovery.*** Comcast's third-party deposition subpoenas also make clear that it wants to relitigate facets of the case that reversal and remand did not fairly put at issue. For example, Comcast previously chose not to dispute Viamedia's market-definition and power showings, *see* 951 F.3d at 474 (noting that "geographic markets, service markets, and market power" were "[u]ndisputed"), but it has now served subpoenas on firms that supply certain advertising services (Google LLC and Meta Platforms, Inc.) (Exs .8-9), a broadcast group (Sinclair Broadcast Group, Inc.) (Ex. 10), and another cable provider and Interconnect operator (Charter Communications, Inc.) (Ex. 11). Comcast has made clear it will not limit these depositions to facts that post-date the prior close of fact discovery and are relevant to Viamedia's additional damages; these depositions' most obvious purpose is to help Comcast backfill the record on an issue it regrets not pursuing the first time around.

Comcast also has noticed the depositions of third-party MVPD witnesses (John Bordeleau of Frontier (Ex. 12), Misty Jensen of WOW (Ex. 13), Jason Malamud of Verizon, and Atlantic Broadband Finance, LLC (as an entity) (Ex. 14)) despite that *all* of those third parties were on Comcast's radar during the case's prior iteration: Mr. Bordeleau and Ms. Jensen were previously deposed, and party witnesses discussed both Mr. Malamud and Atlantic Broadband during party depositions conducted in 2017. *See* Exhibits 15-16 to Sealing Motion.

## ARGUMENT

Comcast's attempt to re-do discovery cannot be squared with Rule 26 and the Seventh Circuit's remand for only discovery that is "necessary." Nor can it be squared with Comcast's

9

statements to the Supreme Court and this Court that the case has been remanded for trial. The Court should therefore issue a protective order limiting all remaining discovery to the narrow issues that the parties have not had a fair opportunity to address non-party and expert discovery that (i) post-dates the conclusion of the prior round of discovery, and (ii) concerns damages other than those sought in the prior round of discovery.

    **A.**    Rule 26 grants the Court authority to issue a protective order "limit[ing] the frequency or extent of discovery" for several reasons, including if it is irrelevant or not proportional to the needs of the case; if the Court "determines that . . . the discovery sought is unreasonably cumulative or duplicative"; or if the Court determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Accordingly, this Court indisputably has the discretion to restrict the scope of discovery to prevent time-consuming and costly discovery on irrelevant matters.

    Similarly (and as Viamedia has previously explained), district courts preparing for further proceedings after a remand indisputably have the power to limit the scope of discovery.[3] That is not only a sound exercise of district courts' "broad discretion in matters relating to discovery," *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); it reflects the limits placed on that discretion by the mandate rule and the-law-of-the-case doctrine. *Cf. Grant v. Metro. Gov't of Nashville & Davidson Cty.*, 646 F. App'x 465, 467 (6th Cir. 2016) (affirming

---

[3] *Cf. Bakalar v. Vavra*, 851 F. Supp. 2d 489, 494 (S.D.N.Y. 2011) (denying motion to reopen expert discovery where, before fact discovery closed, the evidence to be addressed had been available and the need to do so obvious; "Defendants had ample opportunity to support their claims with expert testimony," yet "failed to exercise diligence in obtaining discovery within the parameters established by this Court"); *Ty, Inc. v. Publ'n Int'l, Ltd.*, 2003 WL 21294667, at *7 (N.D. Ill. June 4, 2003) ("The fact of the matter is that PIL chose not to explore these issues when discovery was open. It is inexplicable why PIL did not take whatever discovery it needed in this regard when it had the chance."; denying motion for additional discovery).

denial of motion to reopen discovery on remand, because prior reversal "foreclosed any opportunity for [losing parties] to retry their . . . claims or supplement them with additional discovery"); *Charles E. Hill & Assocs., Inc. v. CompuServe Inc.*, 2003 WL 23101794, at *5 (S.D. Ind. June 20, 2003) (denying motion to compel and explaining: "there is no reason to think that Hill did not vigorously pursue discovery prior to the first round of summary judgment motions. Allowing additional discovery now would allow Hill to reopen issues of non-infringement that have been affirmatively decided against him by the Federal Circuit. This is improper.").

       **B.**     Those principles make clear that because Viamedia has narrowed its theories, the Court should issue a protective order narrowing the scope of remaining discovery to those few issues necessary to address before the tying case is tried. It should do so in three respects. *First*, it should restrict discovery to non-party discovery and expert discovery. *Second*, it should limit discovery to the period since the close of the first round of discovery. *Third,* it should limit the subject of remaining discovery to additional damages. Those limitations are justified by the discovery the parties have already taken, the Court's scheduling orders, and the Seventh Circuit's decision.

       **1.**     The parties have had a full and fair opportunity to conduct exhaustive discovery about (i) all facts that occurred before the prior discovery cutoff, including the conduct Viamedia challenges as unlawful tying and all resulting damages , and (ii) all facts within the scope of *party* discovery that are relevant to Viamedia's additional damages. As to the first, the parties were of course obligated to complete all discovery on those topics under the schedule then in place. Having reviewed the resulting record, the Seventh Circuit made exceedingly clear that it wanted this case to go to trial. Comcast cannot seriously contend otherwise: Comcast relied on

precisely that characterization of the Seventh Circuit's decision in its failed effort to persuade the highest court in the land to reverse it, and conceded that point before the Court more than a year ago.

In that light, the Seventh Circuit cannot sensibly be understood as having permitted the parties to re-do discovery regarding the matters at issue in that appeal. There is therefore no serious argument that reversal and remand for trial as to the tying case alone would have entitled Comcast to reopen discovery into that period. That is precisely the position Viamedia has put the parties in by dropping its refusal-to-deal theories. That an appeal was necessary to reverse the Court's erroneous grant of summary judgment does not justify giving Comcast greater discovery rights than it otherwise would have had with regard to matters already then ripe for decision.

As for additional damages, Viamedia has always agreed that the scope of remand discovery included facts that (i) occurred after the prior discovery cutoff and (ii) concerned additional damages that flowed from the conduct Viamedia had previously challenged as unlawful tying in Chicago, Detroit, and Hartford. Viamedia therefore served interrogatory responses making clear its contentions that that conduct had caused additional damages to which the refusals to deal had not contributed, and Comcast responded by noticing and taking a Rule 30(b)(6) deposition of Viamedia on those damages. The Court's orders therefore required Comcast to complete all party discovery on that topic by October 22, and Viamedia put Comcast in a position to do so.

**2.** The Court should therefore make clear that party discovery is concluded and (save any supplementation obligations imposed by Rule 26(e)) that the parties have no further

obligation to produce further documents or respond to further requests. This holding will resolve the first three disputes set forth above.

With regard to the 2011-2016 period, the Court granted Comcast's motion to compel on the ground that by pursuing the refusal-to-deal theories revived on appeal, Viamedia had put new facts at issue that changed the character of the case Comcast was defending. By dropping its refusal-to-deal theories, Viamedia has therefore mooted the basis for those requests; Comcast would have had no basis to revisit that era absent the revival of the refusal-to-deal theory. And as for the belated requests, again, Comcast was obligated to serve whatever party discovery requests that interested it in time to *complete* discovery by October 22, yet did not do so. The Court should therefore hold that Viamedia has no obligation to respond.

That result is only clearer still with respect to depositions, as Comcast has revealed it wants a do-over on issues that were fully at issue in the prior iteration of discovery. For example, it has noticed a deposition of Viamedia's former CEO, Mark Lieberman even though he has already been deposed three times for more than 20 hours – twice in his individual capacity and once as Viamedia's corporate representative. Comcast has stated that it wants to depose him about a declaration he submitted at the prior round of summary judgment.[4] But all of the facts he addressed in that declaration were fairly at issue in the prior round of discovery. To be sure, Comcast did not have the opportunity to examine Mr. Lieberman about *the declaration* as such, but that is routinely the case where parties disclose declarations at that time. Moreover, while Rule 56(c)(4) permits the submission of declarations in support of summary judgment briefing,

---

[4] Comcast has also suggested it also is interested in questioning Mr. Lieberman regarding certain other documents that were subject to a now-resolved clawback dispute, but that triviality does not warrant the Court's attention at this time.

13

the Federal Rules do not provide a corresponding right to reopen discovery to address such declarations.

The Court should therefore hold that party discovery is, at last, complete.

**3.** The Court also should limit the subject matters and the time periods that may properly be explored during both third-party discovery and supplemental expert reports. Specifically, the only permissible topics should be facts that (i) post-date the prior close of fact discovery, and (ii) bear on Viamedia's additional damages. This holding will resolve the remaining disputes set forth above.

Starting with third-party discovery, Comcast's subpoenas are calculated to create a new record on matters it neglected to explore when it had the opportunity. That includes issues of both liability (as illustrated by its targeting of firms that sell advertising) and damages (its targeting of MVPDs whose ad rep business Viamedia lost as a result of Comcast's anticompetitive conduct). Indeed, that appears true even with third parties it now wants to force to sit through a second deposition, with no apparent limitations. Although Viamedia has never disputed that discovery targeting its additional damages is appropriate, for the reasons already explained, boundless third-party discovery is inconsistent with the Seventh Circuit's decision.

Further, that decision obviates any need for further expert reports regarding the subjects already at issue before summary judgment. True, that court noted that this Court should "take a fresh look" at the parties' expert reports. 951 F.3d at 451. But the clear exhortations to proceed to trial in the balance of the opinion make obvious that the purpose of that "fresh look" was to address whether amendments were warranted in light of the revival of the refusal-to-deal theory – not to allow a second bite at the merits of the tying case remanded for trial. As it always has, Viamedia agrees that supplementation is warranted to address additional damages. But the

boundless expert do-over Comcast suggests (with all the expense and delay it would entail) is an improper attempt to evade the Seventh Circuit's judgment – and is, at any rate, certainly is not proportional to the needs of the case.

*&#42;&#42;

The real risk of death by discovery has constrained Viamedia to narrow the theories it will take to trial. Under Rule 26, that substantial concession requires a corresponding narrowing of the scope of discovery. The Court should therefore enter a protective order firmly disabusing Comcast of the notion that the trial that, in its words, the Seventh Circuit "order[ed]" is a mirage.

## CONCLUSION

The Court should issue a protective order limiting discovery to non-party and expert discovery after the close of the first round of discovery regarding any damages that Viamedia may seek beyond those Viamedia previously disclosed.

Dated: January 20, 2022

Respectfully submitted,

/s/ *Richard J. Prendergast*
James M. Webster (*pro hac vice*)
Aaron M. Panner (*pro hac vice*)
Kenneth M. Fetterman (*pro hac vice*)
Derek T. Ho (*pro hac vice*)
**KELLOGG, HANSEN, TODD, FIGEL
 & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jwebster@kellogghansen.com
apanner@kellogghansen.com
kfetterman@kellogghansen.com
dho@kellogghansen.com

Richard J. Prendergast
Michael T. Layden
Collin M. Bruck
**PRENDERGAST LAYDEN, LTD.**
191 North Wacker Drive, 31st Floor
Chicago, Illinois 60606
(312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
cbruck@rjpltd.com

*Counsel for Plaintiff Viamedia, Inc.*

# CERTIFICATE OF SERVICE

      I, Richard J. Prendergast, an attorney of record in the above-captioned case, hereby certify that on January 20, 2022, I caused to be served a true and correct copy of Viamedia, Inc.'s Motion For Protective Order upon the following counsel via electronic means:

**Ross Benjamin Bricker**
**Thomas Edward Quinn**
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
rbricker@jenner.com
ssearscoder@jenner.com
tquinn@jenner.com

**Arthur Burke**
**David B. Toscano**
Davis, Polk & Wardwell
450 Lexington Street
New York, NY 10017
(212) 450-4000
arthur.burke@dpw.com
david.toscano@davispolk.com

                                                /s/ *Richard J. Prendergast*