**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VIAMEDIA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 16 C 5486** |
| | ) | |
| **COMCAST CORPORATION and** | ) | **Judge Charles R. Norgle, Sr.** |
| **COMCAST CABLE COMMUNICATIONS** | ) | **Magistrate Judge Finnegan** |
| **MANAGEMENT, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Plaintiff Viamedia, Inc. filed suit alleging that Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast") used its monopoly power in one service market to exclude competition and gain monopoly power in another service market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Currently before the Court is Viamedia's motion for protective order [492] and Comcast's motion to compel [498, 499]. For the reasons set forth here, Viamedia's motion is denied and Comcast's motion is granted in part and denied in part.

## BACKGROUND[1]

Viamedia filed this lawsuit on May 23, 2016 alleging that Comcast violated Section 2 of the Sherman Act in two ways: (1) "refus[ing] to deal with Viamedia by denying it Interconnect access"; and (2) "engag[ing] in tying by denying MVPDs [multichannel video programming distributors] Interconnect access unless they purchased Comcast's ad rep

---

[1] This opinion assumes the reader's familiarity with the facts and history of this case as set forth in *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020), and in Doc. 478, Order of 11/22/2021.

services."[2] *Viamedia, Inc. v. Comcast Corp*., 951 F.3d 429, 453 (7th Cir. 2020). The district court dismissed the refusal-to-deal claim on November 4, 2016. (Doc. 36). Following fact and expert discovery, the district court granted summary judgment on the tying claim on August 16, 2018. (Doc. 356). Viamedia appealed and on February 24, 2020, the Seventh Circuit reversed the district court's ruling on both claims and remanded the case for "any further necessary discovery and for trial." *Viamedia, Inc.*, 951 F.3d at 435.[3]

The parties have never been able to agree on what constitutes "necessary" discovery as contemplated by the Seventh Circuit. When remand discovery commenced in August 2020, the dispute focused on the extent to which Comcast should be allowed to pursue discovery on Viamedia's newly reinstated refusal-to-deal theory. Viamedia filed a motion for protective order insisting that the discovery taken on the tying theory between 2011 and 2016 was so broad as to cover any discovery related to the refusal-to-deal theory as well. (Doc. 478, Order, at 5, 15). Viamedia thus sought to limit discovery to the following topics: (1) Viamedia's refusal-to-deal claim from 2016 forward; and (2) any damages that Viamedia may seek beyond those it previously disclosed. (*Id*. at 4-5). Comcast objected to Viamedia's proposal and filed a motion to compel, arguing that since the refusal-to-deal claim had been dismissed early in the case, Comcast needed an opportunity to serve discovery requests addressing that theory of liability from 2011

---

[2]     "Interconnect services are cooperative selling arrangements for advertising through an 'Interconnect' that enables providers of retail cable television services to sell advertising targeted efficiently at regional audiences. Advertising representation services for retail cable television providers assist those providers with the sale and delivery of national, regional, and local advertising slots." *Viamedia*, 951 F.3d at 434.
[3]     The Supreme Court denied Comcast's petition for certiorari on June 28, 2021. *Comcast Corp. v. Viamedia, Inc.*, 141 S. Ct. 2877 (2021).

forward. (*Id*. at 6, 15-16). On November 22, 2021, this Court rejected Viamedia's request for a blanket protective order disallowing any refusal-to-deal discovery prior to 2016, but held that Viamedia could object with specificity to particular discovery requests if there was a good faith basis to do so and the Court would then decide whether to allow that discovery. (*Id*. at 7-9, 15-17).

About a month later, Viamedia reported during a December 20, 2021 status hearing that it was no longer pursuing its refusal-to-deal theory of liability. (Doc. 485). Viamedia filed a formal statement to that effect on January 13, 2022.[4] (Doc. 490). The parties now dispute how Viamedia's decision to withdraw the refusal-to-deal theory impacts the need for additional discovery in the case. The parties also disagree as to whether Viamedia must answer certain discovery requests that Comcast served on October 22, 2021 and January 7, 2022.

## DISCUSSION

### I.    Viamedia's Motion for Protective Order

Viamedia believes that its decision to withdraw the refusal-to-deal theory of liability has largely mooted the need for additional discovery. It thus seeks a protective order limiting the scope of post-remand discovery to "non-party and expert discovery that (i) post-dates the conclusion of the prior round of discovery, and (ii) concerns damages other than those sought in the prior round of discovery." (Doc. 492, at 10). In Viamedia's view,

---

[4]    Viamedia's Notice Regarding Refusal-to-Deal Theory stated: "Consistent with the Court's direction during its January 11, 2022 status conference, Plaintiff Viamedia, Inc. hereby confirms that it is no longer pursuing its refusal-to-deal theory of liability for the claims in the First Amended Complaint." (Doc. 490). At the January 11 hearing, however, Viamedia acknowledged that it was reserving the right to attempt to persuade the district judge to allow the theory back in the case in the future, but said it was "highly, highly unlikely that we would do that" since this would "open up discovery" on the refusal to deal theory and so "create a significant delay." (Doc. 491, at 12).

3

the parties had "a full and fair opportunity" to conduct discovery on all other matters and this case should quickly proceed to trial. (*Id*. at 11-12) (stating that "the Seventh Circuit made exceedingly clear that it wanted this case to go to trial.").

Under Rule 26, a court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." FED. R. CIV. P. 26(b)(2)(C)(i), (ii). *See also Breuder v. Bd. of Trustees of Community College Dist. No. 502*, No. 15 C 9323, 2021 WL 1209296, at *10 (N.D. Ill. Mar. 31, 2021). Rule 26(c) further allows that a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). As the party seeking the protective order, Viamedia bears the burden of demonstrating why the order should be entered. *Breuder*, 2021 WL 1209296, at *10 (citing *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015)).

Viamedia seeks to restrict Comcast's discovery in the following areas: (1) party depositions; (2) third-party discovery; and (3) expert reports.[5] The Court considers each in turn.

### A. Party Depositions

Viamedia first seeks to preclude Comcast from deposing its former CEO Mark S. Lieberman and its current CEO David Solomon regarding Lieberman's April 19, 2018

---

[5] Viamedia also objected to searching for and producing documents from the 2011-2016 time period, and to answering discovery requests served on October 22, 2021 that it believes are untimely. (Doc. 492, at 7-8). Comcast "is no longer seeking the '2011-2016 Documents' described in Viamedia's motion" (Doc. 498, at 10 n.3), so this aspect of the motion is denied as moot. Since Comcast has cross-moved to compel answers to the October 22, 2021 discovery requests, the Court addresses the parties' arguments in Section II below.

declaration submitted in opposition to summary judgment.  Comcast has filed a cross-motion to compel this testimony.  Some background is necessary.

### 1.    Background

After the close of fact discovery on the tying claim, Viamedia submitted an initial report dated October 16, 2017, and then an amended report dated January 2, 2018, from its damages expert Thomas Z. Lys, Ph.D.  (Doc. 221-6, at 2).  According to Comcast, the amended report "assumed that, but for Comcast's conduct, Viamedia's customers [i.e., MVPDs] would have renewed contracts with Viamedia, often for *decades*."  (Doc. 498, at 8) (emphasis in original) (citing Doc. 221-6, Lys Amended Report).  During a *Daubert* hearing, Lys testified that this assumption was based solely on representations from Viamedia's management.  (Doc. 352, Tr. of 4/4/2018, at 44) ("I simply relied hundred percent on management representation" as to third-party renewals).  Lys also made clear that he was not offering any opinion on causation, and understood this would be established by fact witnesses.  (*Id*. at 67).[6]

On March 16, 2018, Comcast moved for summary judgment, arguing in part that Viamedia's alleged damages were premised upon inadmissible speculation that without Comcast's interference, Viamedia would have retained existing MVPD business and won new contracts as well.  (Doc. 266, at 51-52; Doc. 271, at 51-52; Doc. 498, at 8).  As part of its response, Viamedia submitted the 19-page declaration from Lieberman (dated April 19, 2018) providing management's "best assessment of the likelihood that certain MVPD contracts would have been renewed or obtained, and the expected duration of those

---

[6]      In his amended report, Lys referred to being informed by Viamedia's management of its "best estimate that, absent Comcast's anticompetitive conduct" Viamedia would have been able (for example) to renew specific contracts.  Lys was deposed on January 3, 2018.

contracts." (Doc. 498-1 ¶¶ 42, 43) (discussing "management's best assessment of the number of renewals that Viamedia would have been able to obtain in a world without Comcast's anticompetitive conduct."). According to Comcast, this declaration constituted Viamedia's sole evidence of damages causation or of what MVPDs purportedly would have done "but for" Comcast's alleged misconduct. (Doc. 498, at 8). Comcast did not seek leave to depose Lieberman about this declaration during the course of summary judgment briefing. As part of remand discovery, however, Comcast tried to ask Lieberman, Solomon, and other Viamedia witnesses about the declaration during depositions. Viamedia instructed all of the witnesses not to answer. It also objected to this topic in a Rule 30(b)(6) notice, refusing to designate a witness on it. (*Id.* at 11).

### 2. Analysis

Viamedia stands by its refusal to answer, claiming that Comcast knew or should have known all of the pertinent facts set forth in Lieberman's declaration before the close of original fact discovery. (Doc. 492, at 13; Doc. 502, at 3-4). In support, Viamedia cites its answer to Comcast's Fifth Set of Interrogatories No. 23, which asked: "Describe how Viamedia contends that Comcast's allegedly anti-competitive conduct caused Viamedia antitrust injury, and describe with specificity all facts upon which Viamedia will rely to demonstrate that antitrust injury." (Doc. 502-1, at 3). After objecting to the extent the Interrogatory called for expert opinion, economic analysis, or a legal conclusion, Viamedia answered in relevant part: "Comcast's tying conduct, which has resulted in Viamedia's exclusion from Interconnects has caused Viamedia to lose revenue on existing contracts, lose renewals of agreements, lose opportunities to secure contracts with new MVPD clients, or suffer other economic harm as will be detailed in Viamedia's expert reports."

6

(*Id*.).  Viamedia argues that Comcast has only itself to blame for failing to obtain more specific information by developing the record and asking fact witnesses like Lieberman about management's assessment of which MVPD contracts would have been renewed, and which new ones would have been formed, absent Comcast's conduct.  (*Id*. at 4).

This Court disagrees that Comcast could reasonably have been expected to anticipate and take discovery on undisclosed contentions of Viamedia's management concerning assessments of damages causation.  Nothing in Viamedia's answer to Interrogatory No. 23 suggests that management had made specific determinations as to whether, but for Comcast's actions, particular MVPDs would have renewed their contracts with Viamedia and others would have signed new ones.  Nor does Viamedia point to any other fact discovery that would have alerted Comcast of these significant management assessments that were to serve as the basis for damages causation in lieu of expert opinions.

Viamedia objects that Comcast still should have sought to re-depose Lieberman, Solomon, and other managers when it finally received the declaration in response to the summary judgment motion and so should not be able to do so now.  The Court disagrees. Not only was the granular, 19-page declaration provided to Comcast well after the close of fact discovery, but the information in it appears to be central to Viamedia's claim for hundreds of millions of dollars in damages.  In addition, almost four years have passed since Lieberman and Solomon made the assessments about what they expected to happen in the future due to Comcast's anti-competitive conduct.  Since they were forecasting future behavior, these assessments may have changed with the passage of time based on intervening events.  Furthermore, Comcast claims that the pre-remand

discovery focused on the Chicago, Detroit, and Hartford markets, but in the Lieberman declaration, Viamedia for the first time made arguments about damages incurred in connection with new cities (e.g., Dallas, Los Angeles, and New York) and new MVPDs that do not operate in Chicago, Detroit, or Hartford.  (Doc. 505, at 5).

Under all of these circumstances, the Court is persuaded that Comcast should not have to wait until trial to question Viamedia's management for the first time about belatedly disclosed (and now dated) assessments that appear to serve as the only support for Viamedia's damages causation and that also address new cities and MVPDs. *See Llewellyn v. Ocwen Loan Servicing, LLC*, No. 08-CV-00179-WJM-KLM, 2013 WL 3199980, at *4 (D. Colo. June 24, 2013) (on remand following reversal of summary judgment, allowing further deposition of the plaintiff to explore issues addressed in his summary judgment declaration where it "was filed significantly after the close of discovery" and "Defendants could not have anticipated the need for this additional discovery within the time allowed by the Court.").  *Compare Jugobanka d.d. New York Agency v. Unis Int'l Corp.*, No. 93 C 1865, 1995 WL 3987, at *2 (N.D. Ill. Jan. 5, 1995) (denying request to supplement summary judgment response and to depose three individuals who provided affidavits in support of summary judgment where the party "provided no justification for why it has not attempted to discover and depose these individuals previously – if not, at the very least, *before* responding to the motion for summary judgment.") (emphasis in original).

Also supporting Comcast's request for further deposition testimony from Lieberman and Solomon is Viamedia's production of certain documents after their prior (post-remand) depositions.  For example, Comcast was unable to ask Lieberman and

Solomon about the dozens of documents Viamedia produced in January 2022 regarding disputes it had with certain MVPDs, including Verizon and Frontier, two of the customers with whom Viamedia anticipated having lengthy relationships.  (Doc. 498, at 12; Doc. 505, at 8).  According to Comcast, most of these late-produced documents "involved Lieberman" and concerned "multimillion-dollar disputes between Viamedia and its former MVPD clients."  (Doc. 48, at 12; Doc. 505, at 8).  These disputes are significant, Comcast argues, because they may cast doubt on the "management assessment" described in Lieberman's declaration that Comcast's conduct was the "but for" cause of Viamedia losing certain MVPD business.  Comcast also could not question Lieberman and Solomon about the more than 1,000 pages of documents that Viamedia produced on January 26, 2022 that preliminarily appear to be relevant to Viamedia's additional damages claim. Finally, Comcast did not have an opportunity to ask Lieberman about 70 pages of his handwritten notes that Viamedia newly produced in unredacted form after Lieberman's October 2021 deposition.  (Doc. 498, at 12; Doc. 505, at 7).

Viamedia responds by blaming the late document production on Comcast's decision to "wait[] until the last minute to depose Viamedia's witnesses."  (Doc. 502, at 5). In Viamedia's view, since the documents are responsive to inquiries Comcast sent "following up on the depositions conducted this past fall," and such "post-deposition follow-up is routine," the production does not justify additional depositions.  (*Id*. at 4-5). To begin, the Court does not agree that Comcast was dilatory in pursuing deposition testimony.  The parties had a significant dispute regarding the scope of proper discovery, and Comcast expressed reasonable concern about proceeding with depositions that may require supplementation depending on the Court's ruling on the then-pending motion for

protective order (Doc. 401) and motion to compel (Doc. 410). Indeed, the Court ultimately rejected Viamedia's request for a blanket protective order disallowing any refusal-to-deal discovery between 2011 and 2016, instead finding that Viamedia could object with specificity to particular discovery requests if there was a good faith basis to do so. Moreover, to the extent the newly produced documents bear on the damages assessments of Viamedia management, Comcast should be given an opportunity to explore the documents through deposition testimony.

The only remaining question concerns the format and scope of the depositions. Viamedia argues that at most Comcast should be allowed to conduct one two-hour Rule 30(b)(6) deposition "limited to the mistakenly redacted notebook entries produced since October 22." (Doc. 502, at 5). Viamedia notes that Comcast has already deposed Lieberman three times for more than 20 hours – twice in his individual capacity (once during pre-remand discovery, and again in October 2021), and once after Viamedia designated him as its corporate representative on certain issues – and suggests that a Rule 30(b)(6) deposition would be less burdensome for Viamedia employees. (Doc. 492, at 13; Doc. 502, at 5). That may be, but for reasons stated, the Court finds that Comcast is entitled to depose Lieberman and Solomon about management's assessments described in the Lieberman declaration, and the newly produced documents concerning disputes with MVPDs and additional damages. It is also most efficient to have Lieberman decipher his own, newly unredacted handwritten notes rather than expecting a Rule 30(b)(6) witness to guess at his intention and meaning. This is especially true where Lieberman has described his own handwriting as "cryptic" and like reading "hieroglyphics." (Doc. 505-1, at 5, Lieberman Dep. 10/22/2021, at 430).

Though requiring Lieberman and Solomon to sit for depositions may impose greater burden than Viamedia would like, Comcast expects the depositions to "take considerably less than a full day." (Doc. 498, at 13); (Doc. 509, Tr. of 3/3/2022, at 39) (representation from defense counsel that the depositions will take "a few hours."). It was also Viamedia's own choice to proceed with Lieberman's and Solomon's depositions and to instruct the witnesses not to answer questions about the declaration based on Viamedia's then-pending motion 401. Viamedia understood the risk that Lieberman and Solomon could be subject to further depositions. (*Id*.; Doc. 505, at 6). On this record, Viamedia's claim of undue burden is not well-founded.

For all the reasons stated here, Viamedia's motion for a protective order as to the depositions of Lieberman and Solomon is denied. Lieberman may be deposed for a total of no more than 4 hours, and Solomon for a total of 3 hours, regarding the Lieberman declaration and documents produced since these two witnesses were last deposed.[7]

### B. Third-Party Discovery

Comcast has issued deposition subpoenas to eight third-parties from whom it seeks testimony "on issues that arose after the close of pre-remand fact discovery." (Doc. 498, at 13). Viamedia's motion for a protective order does not seek to bar these depositions, but rather to limit the questions that may be asked of the witnesses. Specifically, Viamedia seeks an order limiting the depositions to "facts that post-date the

---

[7]     Comcast indicates in a footnote that it has also subpoenaed Viamedia's former CFO who "participated in the management assessment." (Doc. 498, at 12 n.4). Viamedia's motion does not mention this deponent but Comcast states that "to the extent Viamedia's proposed order would limit her testimony, Comcast opposes it for the reasons herein." (*Id*.). This undeveloped argument has not been briefed and will not be considered here.

prior close of fact discovery and are relevant to Viamedia's additional damages." (Doc. 492, at 9).

As a preliminary matter, the Court agrees with Comcast that an order adopting the "additional damages" limitation is both unwarranted and unworkable. It is unworkable because the "additional damages" limitation is vague. Viamedia has not yet described with specificity what these "additional damages" are and will not do so until expert discovery. Indeed, in recent discovery responses on this topic dated January 12, 2022, Viamedia answered subject to objections, including that the interrogatories called for expert opinion and so were premature. And the answer that followed was a general one: Comcast's conduct caused "financial and reputational harms" that "contributed to Viamedia suffering additional injuries attributable to Comcast's tying conduct," and Viamedia "would have been a stronger company that was better positioned to compete to renew existing MVPD relationships and win new MVPD relationships." (Doc. 494-4, at 4-6). Viamedia's attached Appendix A to the response said the tying conduct "caused [it] damages as to specific [MVPDs] in specific DMAs," listing 9 MVPDs where Viamedia's "injuries" were "caused by Comcast's tying conduct in some or all of the following DMAs: Chicago, Detroit, and Hartford." (*Id*. at 9-10).[8]

Viamedia's proposed "additional damages" limitation is also unwarranted. As Comcast has argued, there is no reason it should be foreclosed from asking the witnesses

---

[8]     Viamedia also noted that it's response was based on "reasonable investigation to date and *current litigation position,* including the understanding that Viamedia's decision no longer to pursue a refusal-to-deal theory of liability will obviate the need for additional discovery beyond third-party discovery regarding additional damages resulting from Comcast's unlawful tying conduct since the close of pre-remand fact discovery. *Viamedia reserves the right to reassert its refusal-to-deal contentions and to supplement or amend its response to this Interrogatory as appropriate should this understanding prove correct*. (Doc. 494-4, at 6) (emphasis added).

questions about facts occurring after the prior close of fact discovery that bear on damages Viamedia claimed pre-remand and still is seeking. Given the long passage of time since Viamedia identified these damages, and the forecasting that was involved in projecting them, the Court is persuaded that Comcast should be allowed to question the witnesses about facts that post-date the prior close of fact discovery and are relevant to Viamedia's damages – not just the "additional damages." For example, Comcast seeks to depose the MVPDs about their "real-world experience with Viamedia and Comcast since the close of prior fact discovery," including whether Viamedia's customers fired Viamedia for non-performance and late payments, and whether Comcast has misused those MVPDs' business information. (Doc. 498, at 6, at 15). According to Comcast, this information may disprove Viamedia's claims about the purported anti-competitive effect of Comcast's alleged conduct and resulting damages. Viamedia may disagree but the Court declines to foreclose Comcast from asking questions like these about facts post-dating the prior close of fact discovery. As always, the parties may seek to exclude specific testimony at trial.[9]

Finally, this Court sees no justification for barring Comcast from deposing the third-party witnesses about Viamedia's newly produced documents simply because they do not pertain to "additional damages" as Viamedia understands that term. As noted, in January 2022 Viamedia produced dozens of documents about a dispute that Viamedia had with Verizon in 2017 and Frontier (timeframe unspecified). (Doc. 498, at 12, 14). Since these disputes could have affected Viamedia's relationship with Verizon and

---

[9]    To the extent objections are made during the depositions of the third-parties, they should be concise, non-speaking objections that do not interfere with or prolong the completion of the depositions.

Frontier, they may be relevant to the damages question and are a proper source of deposition questioning.

This Court now turns to Viamedia's other arguments relating to the third-party witnesses, namely, that Comcast should be barred from posing questions about (1) MVPD contracts identified in Lieberman's declaration that Viamedia allegedly would have retained and/or won but for Comcast's conduct; (2) the Malamud declaration; and (3) the advertising side of the Interconnect services platform.

### 1.    MVPD Contracts in Lieberman Declaration

Comcast has issued deposition subpoenas to four MVPD witnesses who are former clients of Viamedia. (Docs. 492-12, 492-13, 492-14). Viamedia objects that "*all* of those third parties were on Comcast's radar during the case's prior iteration," and argues that Comcast should not be permitted to "create a new record on matters it neglected to explore when it had the opportunity." (Doc. 492, at 9, 14) (emphasis in original). In Viamedia's view, "if Comcast thought that anything about the damages theories Viamedia disclosed in 2017 merited more discovery (whether party or third-party), the time to raise that contention was more than four years ago – before the case was litigated through summary judgment, and a time when third party testimony was less likely to be infected by the hindsight bias on which Comcast now seeks to capitalize." (Doc. 502, at 5-6).

Comcast does not dispute that it was aware of the MVPDs in question (among many others) back in 2017, but rejects the implication that it should have "deposed dozens, if not more, third parties mentioned in the copious discovery record based on nothing but speculation that Viamedia might later make assertions about a handful of

them."  (Doc. 498, at 15).  According to Comcast, it should have an opportunity to "ask the MVPDs themselves about what Viamedia now says they did and would do" with respect to contracting with Viamedia so that the jury will have more than Viamedia's "own speculation" in that regard.  (*Id*. 13-14).  Comcast stresses that "[m]any of the relevant witnesses are located far from Chicago and thus cannot be compelled to attend trial," and accuses Viamedia of trying to keep the jury "in the dark about the MVPDs' actual positions."  (Doc. 498, at 14) (citing FED. R. CIV. P. 45(c)(1)).

For reasons stated with respect to depositions of Lieberman and Solomon regarding the Lieberman declaration, Comcast will likewise be given an opportunity to depose third-party MVPDs about the contracts described in that declaration.  As explained, the detailed declaration was provided to Comcast only after the close of original fact discovery, the information in it appears to be central to Viamedia's damages claim, and almost four years have passed since the assessments described in the declaration were made.  Since the assessments involved (in part) predicting the future actions and decisions of the MVPDs, Comcast should be allowed to question the MVPDs about the reasonableness of those assessments based on new information since the close of original fact discovery.

## 2.    The Malamud Declaration

One of the MVPD witnesses, Jason Malamud, the Director of Media Sales at Verizon Corporate Services Group, Inc., prepared a declaration dated April 2, 2018 that was filed in this action in connection with Verizon's opposition to Viamedia's motion to remove the "Highly Confidential" designation on a contract between Verizon and another advertising representative.  (Doc. 281; Doc. 509, Tr. of 3/3/20222, at 43-44).   In the

declaration, Malamud disclosed information regarding the reasons Viamedia lost Verizon's business in Los Angeles, Dallas, and New York – reasons other than Comcast's conduct as claimed by Viamedia. (Doc. 498-10, Malamud Decl., ¶¶ 7, 9; Doc. 498, at 14). Comcast learned of this information when the Malamud declaration was filed which was after the close of original fact discovery, and he cannot be compelled to testify at trial. Viamedia concedes that the "loss of a particular MVPD partner [Verizon] is . . . hotly disputed." (Doc. 502, at 6 n.5). Under these circumstances, the Court will allow Jason Malamud to be deposed about the content of his declaration even though the information in it occurred before the close of prior fact discovery.

### 3. Advertisers

Viamedia agrees that Comcast may depose advertising witnesses on matters that post-date the prior close of fact discovery and concern Viamedia's additional damages. (Doc. 492, at 9). (*See also* Doc. 509, Tr. of 3/3/2022, at 50) ("[I]f [Comcast has] questions from advertisers that concern additional damages, we think that's fair discovery."). But Comcast has also issued third-party deposition subpoenas intended to explore the advertising side of the Interconnect services platform. Specifically, Comcast has subpoenaed Google LLC and Meta Platforms, Inc., which both supply certain advertising services; Sinclair Broadcast Group, Inc.; and Charter Communications, Inc., which is a cable provider and Interconnect operator. (Doc. 492, at 9; Docs. 492-8, 492-9, 492-10, 492-11). Viamedia opposes this discovery.

Comcast concedes that "[p]rior fact discovery focused on the MVPD side of the alleged markets." (Doc. 498, at 16). And in arguing for summary judgment, Comcast chose not to dispute Viamedia's market definition and power showings. (Doc. 492, at 9)

(citing *Viamedia*, 951 F.3d at 474) (noting that "[u]ndisputed geographic markets, service markets, and market power make this case unusual."). On remand, however, Comcast now wants to reconsider this position and pursue discovery into the advertising side of the markets. Comcast claims this is based on a change in the law. On June 25, 2018, after summary judgment briefing in this case was completed but before Judge St. Eve issued her decision in August 2018, the Supreme Court decided the case of *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018). The Court held that credit-card networks are two-sided platforms, and that "[d]ue to indirect network effects, two-sided platforms cannot raise prices on one side without risking a feedback loop of declining demand." *Id*. at 2285. As a result, the Court held that "courts must include both sides of the platform – merchants and cardholders – when defining the credit-card market." *Id*. at 2286. The Court clarified, however, that "[a] market should be treated as one sided when the impacts of indirect network effects and relative pricing in that market are minor." *Id*.

Comcast believes *American Express* is significant because the Seventh Circuit cited it for the proposition that Interconnects are also two-sided platforms that connect advertisers to MVPDs and their retail customers. *Viamedia*, 951 F.3d at 439 (citing *American Express*, 138 S. Ct. at 2280). Based on this new law, Comcast seeks to depose a "small number of third parties with which Comcast and Viamedia compete for advertisers." (Doc. 498, at 16). Viamedia opposes this, arguing that it is too late for Comcast to challenge the market definition to which it previously stipulated. (Doc. 502, at 6). While Viamedia may be right, this issue must be decided by the district judge. Rather than deny Comcast the limited discovery it seeks – and hence the ability to present

17

this issue to the district judge for consideration – the Court will allow these limited depositions to proceed.  Viamedia's motion for protective order on this issue is denied.

### C.    Expert Reports

Viamedia finally seeks to limit Comcast's ability to modify and update its expert reports except to address additional damages Viamedia claims it has suffered since the close of original discovery.  (Doc. 492, at 14).  Viamedia concedes that the Seventh Circuit instructed the court to "take a fresh look" at the parties' expert reports on remand, *Viamedia*, 951 F.3d at 451, but says that was only to "address whether amendments were warranted in light of the revival of the refusal-to-deal theory – not to allow a second bite at the merits of the tying case remanded for trial."  (Doc. 492, at 14).  Comcast responds that its expert witnesses "will take into account new developments, including facts that have been the subject of remand discovery and legal developments such as the Supreme Court's decision in *Amex*  [*American Express]* and the Seventh Circuit's decision" and insists "[s]uch modifications are routine."  (Doc. 498, at 15) (citing *NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6074, 2020 WL 5642946, at *2 (N.D. Ill. Sept. 22, 2020)).

Viamedia's motion for a protective order restricting the "subject matters and the time periods" covered in future supplemental expert reports (Doc. 492, at 14) is denied.  As the Court noted during the January 11, 2022 hearing when it rejected a similar request by Viamedia, this Court's authority is limited to supervising discovery.  It has no authority to enter an order imposing limits on what the parties may include in Rule 26(a)(2) disclosures that have yet to be exchanged.  Instead, the parties must follow the usual practice.  After the disclosures are served and examined, the parties may move the district judge to strike or bar all or portions of any expert's opinions.  Armed with the actual

opinions at issue and briefing from the parties, the district judge will be in a position to decide whether a particular opinion is permissible.

## II.     Comcast's Motion to Compel

The Court next considers the parties' dispute about discovery requests that Comcast served on Viamedia on October 22, 2021 and January 7, 2022.  Viamedia objects that the requests are untimely because the deadline to complete this written discovery was October 22, 2021, and so the requests do not warrant a response. Comcast has moved to compel Viamedia to answer the requests arguing that the October 22 deadline did not apply to this written discovery, and so it was timely, any objections have been waived and the requests for admission should be deemed admitted due to the failure to respond.

### A.     Background

In April 2021, this Court entered a discovery schedule setting October 22, 2021 as the date for the close of fact discovery.  (Doc. 436).  As noted, the parties could not agree on the scope of such discovery, which led Viamedia to seek a protective order (Doc. 401) and Comcast to move to compel (Doc. 410).  In August 2021, Comcast moved the Court to vacate the discovery schedule, explaining that "[r]esolution of the two pending discovery motions is necessary to allow for the efficient conclusion of discovery in this case, including such additional depositions as will be needed to prepare the case for trial." (Doc. 447, at 3). Viamedia opposed the motion, arguing that "the parties' able counsel could timely complete at least the deposition discovery that both parties agree is necessary notwithstanding the pending motions[,]" and complaining that "Comcast

19

instead unilaterally decided not to even attempt to schedule any deposition of anyone during the last four months…."  (Doc. 449, at 2).

Following a hearing on August 27, 2021, the Court entered an order granting the motion in part and denying it in part.  The order further stated:

> The existing discovery schedule is vacated except that the fact discovery deadline of 10/22/2021 remains in place for completion of the party discovery described during today's hearing that is necessary regardless of the Court's future rulings on discovery motions 401 and 410.

(Doc. 452).  Viamedia argues that this order covered the written discovery at issue, while Comcast argues that the order applied only to the party depositions discussed during the hearing.  Given the nature of the disagreement, a detailed summary of the hearing is helpful.

### 1.    The August 27, 2022 Hearing

In the August 27 hearing, the Court questioned the parties about their respective positions on Comcast's motion to vacate the discovery schedule and to set a new one following a ruling on the pending discovery motions.  Based on what it heard, the Court remarked:

> So right now you [Comcast] would be, it sounds like, willing to go forward with the depositions of Viamedia people on the agreed, you know, subject matter and documents with the understanding that you would be able to redepose them later based on my ruling.

(Doc. 456, Tr. of 8/27/2021, at 12).  After Comcast expressed concern about the absence of a "clean, clear line between the geographies" and the prospect of contentious depositions where witnesses would be instructed not to answer, the Court said it wanted the parties to go forward at least with one of the depositions as a test case to see whether these concerns were valid.  (*Id.* at 13) ("[L]et's at least try it, at least so discovery can

20

move ahead. Then, you know, if your fears are correct, you can revisit whether to go forward."). Comcast agreed to proceed with the party depositions in this manner with the proviso that in the event of a favorable ruling from the Court on the pending motions, Comcast would be able to re-depose the witnesses on the new topics without Viamedia arguing burden. (*Id.* at 14).

At this juncture, the Court addressed Viamedia, asking whether there was a need for clarification "[b]ecause it sounds like you're going to be moving ahead, we can talk about, you know, a schedule, but moving ahead now on the depositions and 30(b)(6) testimony." (*Id.*). Viamedia then sought to confirm that "[i]f I understand correctly, we're both going to go ahead with 30(b)(6) depositions and we both have the right to revisit 30(b)(6)s depending on how you rule." (*Id.*). Viamedia expressed concern, however, about possible delay from the "back-and-forth" for an "individual fact witness" test case such that "we only get one or two fact witnesses done by October 22nd." (*Id.* at 14-15). Viamedia observed that Comcast had "ample resources to conduct all of the depositions that they want to take by October 22nd." (*Id.* at 15). Viamedia then proposed:

> So I think that what we should plan on doing is scheduling all of the depositions that Comcast thinks it needs to take before October 22nd. We take the test case and then quickly address with each other and then, if necessary, with you whether they can go ahead and take the additional depositions.

(*Id.*). While Comcast agreed, it expressed concern about proceeding with the third-party depositions, and the Court agreed that "third parties shouldn't be deposed now" to avoid the risk that they would be subjected to a second deposition in light of rulings on the pending motions. (*Id.* at 16).

21

After discussion about the number of party depositions that would be taken, and issues related to the Rule 30(b)(6) depositions, the Court invited each side to identify any further issues that should be discussed. (*Id.* at 18-19). Viamedia responded: "One, I just want to confirm that for the depositions that are going forward, October 22nd is the deadline to complete them, the deadline in place…." (*Id.* at 19). The Court then inquired of Comcast: "So what is Comcast's view on why I shouldn't keep the current deadline at least for these now limited depositions?" Comcast responded that it was "fine" with "staging it in the way that has been suggested by focusing on the Viamedia witnesses." (*Id.*).

After Comcast observed that the discovery schedule still needed to be vacated, Viamedia suggested that given the "uncertainties," the parties should confer as soon as the Court issued rulings on the pending discovery motions and "if we need a schedule conference, which we probably will, we would ask for [it]." (*Id.* at 20). As the hearing then drew to a close, the following exchange occurred:

> COURT: So what I'm going to do is I will indicate in today's order that that deadline is to be complied with for the discovery that we've described here today and that otherwise the discovery schedule is vacated. You know, no matter what happens, it's going to have to be reset, but I think what matters today is that you have a deadline to move ahead. You have a lot to do in the next eight or nine weeks or whatever it is to get these 30(b)(6) topics and the Viamedia depositions and, you know, I'm sure I'll be ruling between now and then. So maybe that will be help, too. Is there anything further from Viamedia?
>
> VIAMEDIA: Yes, Your Honor, just a language point. We would prefer if you said that the deadlines are still in force except for non-party deposition discovery, which is I think the only thing that is being pushed back here.

(*Id.* at 20-21).

After explaining why it was unwilling to do this, the Court said it would be "clear that you have a deadline to do the discovery that, you know, we just said is not impacted by the motion, and then we'll set whatever dates and you can argue for whatever dates you want when we come back." (*Id.* at 22). In closing, the Court remarked that it would draft and enter an order reflecting the parties' agreement that day and if they disagreed with the wording, "I'm sure I'll hear from you." (*Id.*). The Court again asked each side if it had anything further to raise. Viamedia did not. Comcast raised issues about specific depositions but as to the "general point that we're going to proceed with party discovery in the manner that's been described, we're fine with that." (*Id.*). At no time during or after that hearing did either party inquire as to whether the October 22, 2021 deadline applied to the parties' written discovery.

### 2. New Written Discovery and Parties' Compromise

At close to midnight on October 22, 2021, Comcast served Viamedia with a Third Set of Remand Interrogatories (Doc. 498-11), a Second Set of Remand Requests for Admission (Doc. 498-12), and a Ninth Set of Remand Document Requests (Doc. 498-13). On November 16, 2021, Viamedia sent Comcast an email stating that the requests were untimely and declining to respond. (Doc. 499-14, Letter from Comcast to Viamedia dated 12/10/2021, at 5). Comcast countered during a November 20, 2021 teleconference and in a December 2, 2021 letter to Viamedia that the requests were timely and that Viamedia's failure to respond within 30 days meant all objections had been waived and the requests for admission were deemed admitted. (*Id.*). Nevertheless, in a letter dated December 10, 2021, Comcast offered the following compromise:

> Comcast would be willing to forgo its position that the requests for admission are deemed admitted and that Viamedia has waived its right to

object to the other discovery requests if Viamedia will agree to (1) forgo its objection that Comcast's requests were untimely when served, (2) provide written answers (not merely objections) to the RFAs and substantive responses to the other discovery requests by December 23, 2021, and (3) discuss in good faith the parameters of Viamedia's search for responsive documents as part of the parties' overall discussions of Viamedia's supplemental production.

(*Id*.).

Viamedia responded to Comcast's letter on December 14, 2021 stating "[w]e agree to those conditions except for one: in light of competing demands on the parties' time, we do not think December 23, 2021 is an appropriate deadline. We therefore ask that Comcast agree we may serve responses and objections on December 30, 2021." (Doc. 499-15, Letter from Viamedia to Comcast dated 12/14/2021, at 4). Just six days later on December 20, 2021, Viamedia reported during a status hearing that it was no longer pursuing its refusal-to-deal theory of liability. (Doc. 485). Viamedia subsequently refused to answer Comcast's discovery in the agreed manner. Instead, on December 30, 2021, Viamedia sent answers that asserted only multiple objections, including the untimeliness objection it had agreed to forgo. (Doc. 494-5; Doc. 494-6; Doc. 494-7).

On January 7, 2022, Comcast served its Fourth Set of Remand Interrogatories specifically related to Viamedia's claim for additional damages. (Doc. 502-2, at 4-5). Viamedia declined to answer these requests arguing once again that agreed party discovery had closed back on October 22, 2021. (Doc. 502, at 10, 13). Comcast in turn claimed that Viamedia had waived any objections to those interrogatories by failing to answer them by February 8, 2022.[10] (Doc. 505, at 11-12).

---

[10] As indicated during the March 6, 2022 hearing, the parties may not issue any additional written discovery except by agreement or with leave of court.

## B.     Analysis

"A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at *2 (N.D. Ill. Apr. 17, 2019) (citing FED. R. CIV. P. 37(a)). "Courts have broad discretion in resolving such disputes." *Id*.

Viamedia argues that the October 22, 2021 and January 7, 2022 discovery requests are "facially untimely" since the responses were due after the October 22, 2021 deadline to complete discovery. (Doc. 492, at 8) (citing Local Rule 16.1). Comcast disagrees with Viamedia's premise that the deadline for this written discovery was October 22, 2021.[11] Comcast notes that when this Court vacated the discovery schedule on August 27, 2021, it carved out only one exception:  the October 22, 2021 fact cut-off deadline stood for "party discovery described at today's hearing that is necessary regardless of the Court's future rulings on discovery motions." (Doc. 452). According to Comcast, the only "discovery described at" the August 27, 2021 hearing was "party *depositions* on topics to which neither party objected." (Doc. 498, at 17 (emphasis in original); Doc. 505, at 9).  In other words, Comcast takes the position that it was free to

---

[11]     Comcast also argues that discovery deadlines do not apply to requests for admission that seek to eliminate issues for trial.  (Doc. 498, at 18 n.9) (citing *Kelly v. McGraw-Hill Cos., Inc.*, 279 F.R.D. 470 (N.D. Ill. 2012)).  However, "[n]umerous courts have . . . disallowed requests to admit that would require responses beyond the close of discovery."  *U.S.E.E.O.C. v. Bloomin' Apple Rockford I, LLC*, No. 04 C 50375, 2006 WL 8462140, at *1 (N.D. Ill. Feb. 10, 2006) (collecting cases).  *See also Finnerman v. Daimler Chrysler Corp.*, No. 16 C 451, 2017 WL 4772736, at *4 (N.D. Ill. Oct. 23, 2017) (though requests for admission serve the different purpose of obtaining "admissions for the record of facts already known," they are "still subject to Northern District of Illinois Local Rule 16.1 and the discovery scheduling order in this case.") (collecting cases).  This Court need not resolve this issue given the rationale for its ruling.

serve new written discovery requests at any time since the Court "did not set any other relevant deadline." (*Id*.).

The Court agrees that its written order said the October 22, 2021 deadline was for completion of the discovery described during the August 27, 2021 hearing, and that the discovery described during that hearing were party depositions on topics that all agreed could proceed regardless of the outcome of pending motions 401 and 410. As noted in the preceding background section of this Order, the Court's intent was to draft an order that reflected the agreement reached by the parties during that hearing. Neither side raised the issue during or after the hearing of whether the October 22, 2021 deadline did or should apply to written discovery. Had either party done so, the Court would have heard argument as to whether there was such discovery, whether the parties were in agreement that the pending motions had no bearing on that discovery, and whether it would be reasonable to impose the same October 22, 2021 deadline.[12]

There is some evidence that both Comcast and Viamedia were uncertain as to whether the October 22, 2021 deadline applied to the written discovery at issue. If Comcast believed it could issue this discovery at any time, then one has to wonder why Comcast issued the first batch close to midnight on October 22, 2021. Likewise, if Viamedia believed the order was clear that the deadline was October 22, 2021, then it had no reason to agree to answer the discovery and withdraw its timeliness objection. Nevertheless, since the entire focus of the August 2021 hearing was on depositions and

---

[12] The first time the Court became aware of the outstanding October 22, 2021 discovery requests and the related disputes was through a January 4, 2022 Joint Status Report. (Doc. 486, at 11). During the March 3, 2022 hearing, the Court stated that the parties were not to issue further written discovery except by agreement or with leave of Court. (Doc. 509, Tr. of 3/3/2022, at 3-4).

neither side asked the Court to correct the order or add in language about written discovery, the Court will not now construe that order as setting an October 22, 2021 cutoff date for written discovery. The Court thus denies Viamedia's motion for a protective order and grants Comcast's motion to compel responses to both the October 2021 and January 2022 requests.

With respect to the October 2021 discovery, the motion to compel is also granted for the additional reason that Viamedia agreed to answer the requests. (Doc. 499-14, Letter from Comcast to Viamedia dated 12/10/2021, at 5; Doc. 499-15, Letter from Viamedia to Comcast dated 12/14/2021, at 4). Viamedia claims this compromise agreement "was predicated on the assumption that Viamedia would continue to pursue its refusal-to-deal theories." (Doc. 492, at 8; Doc. 502, at 9) (claiming the compromise "presupposed that Viamedia would continue to pursue its refusal-to-deal theories."). According to Viamedia, this explains why it served objections on the agreed-upon date of December 30, 2021 refusing to answer the requests. (Doc. 492, at 8; Doc. 502, at 9-10). By way of support, Viamedia notes that the third component of Comcast's proposed compromise was that the parties "discuss in good faith the parameters of Viamedia's search for responsive documents as part of the parties' overall discussions of Viamedia's supplemental production." (Doc. 499-14, Letter from Comcast to Viamedia dated 12/10/2021, at 5). Viamedia says that when it abandoned the refusal-to-deal theory, "it mooted those 'overall discussions.'" (Doc. 502, at 9).

As Comcast fairly notes, nothing in Viamedia's December 14, 2021 letter accepting the agreement indicated it hinged on whether Viamedia decided to continue pursuing the refusal-to-deal theory. The fact that the discussion component of the compromise

agreement was arguably mooted by Viamedia's decision to withdraw the refusal-to-deal theory does not mean the other two components (that Viamedia waive its untimeliness objections and answer the new discovery) were mooted as well. This interpretation is supported by the fact that Viamedia responded to Comcast's October 2021 discovery on December 30, 2021, the date agreed to by the parties, with multiple objections in addition to untimeliness. Notably, Viamedia does not claim that the discovery relates solely to its withdrawn refusal-to-deal theory.

The remainder of Comcast's motion to compel is denied. Given the lack of clarity in the August 27, 2021 order, the Court is unwilling to penalize Viamedia for construing the order as it did. So it declines to find that Viamedia has waived its objections to the discovery, and that the requests for admission are deemed admitted. Viamedia's answers to the discovery are due by April 1, 2022.

## CONCLUSION

For the reasons stated above, Viamedia's Motion for Protective Order [492] is denied and Comcast's Motion to Compel [498, 499] is granted in part and denied in part.

ENTER:

Dated: March 11, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge