IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| VIAMEDIA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION and<br>COMCAST CABLE COMMUNICATIONS<br>MANAGEMENT, LLC,<br><br>Defendants. | No. 16 C 5486<br><br>Honorable Sharon Johnson Coleman |

### VIAMEDIA, INC.'S PRE-HEARING BRIEF

By minute order entered on December 3, 2024, ECF No. 739, the Court directed the parties to file a brief answering five questions. Plaintiff Viamedia, Inc. ("Viamedia") answers these questions below.

**Question 1: What post-remand evidence and/or development(s) justifies reopening discovery after remand?**

*One*, Comcast's anticompetitive conduct has continued to harm Viamedia in numerous ways since expert reports were first submitted on October 16, 2017. Courts have routinely recognized that plaintiffs are entitled to update damages reports due to the passage of time in a case, whether it is on remand from delay due to the successful appeal of a grant of summary judgment or otherwise. *E.g.*, *SSI Technologies, LLC v. Dongguan Zhengyang Elec. Mech. LTD*, 2024 WL 4198629, at *6 (W.D. Wis. Sept. 26, 2024) ("[T]he court routinely allows parties to update their damages analyses to bring them up to date, particularly after a remand."); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 2013 WL 12221444, at *1 (W.D. Wis. Nov. 5, 2013)

(holding that, on remand after reversal of summary judgment, "both parties' [damages] experts should update their expert reports to incorporate" additional sales). Consistent with that caselaw, Viamedia and Comcast submitted post-remand damages reports from their respective experts – Professors Cragg and Israel, respectively – and deposed each of those experts. Viamedia stated its intent to update its damages in a status report filed May 18, 2020 (the month after the mandate was returned to this Court). Comcast never objected to Viamedia's right to submit a new damages report until Viamedia disclosed Dr. Cragg's report on June 21, 2022.

*Two*, the Seventh Circuit's reversal of the District Court's dismissal of Viamedia's refusal-to-deal theory of liability entitled both parties to take discovery on that theory of liability. After remand, on a motion about the proper scope of discovery on that refusal-to-deal theory of liability, Magistrate Finnegan ruled in favor of Comcast's argument for a broader scope of that discovery. ECF No. 478. Subsequent discussions with Comcast made clear that the Magistrate's ruling would require untenable expense and delay for a struggling company desperate to make its case to a jury. On January 20, 2022, Viamedia formally dropped its refusal-to-deal theory of liability. ECF No. 490. That decision should render untimely and inadmissible all post-remand fact and expert discovery, other than discovery on additional damages to Viamedia that were not included in the first round of expert reports served on October 16, 2017.

**Question 2: To what extent does post-remand discovery relate to tying, the only remaining theory of liability?**

*One*, Post-remand discovery regarding Viamedia's additional damages since the filing of the first round of expert reports on October 16, 2017 as a result of Comcast's anticompetitive conduct in Chicago, Detroit, and Hartford is related to tying.

2

*Two*, Post-remand discovery on Viamedia's October 16, 2017 expert report on damages is related to tying, but it is untimely.

*Three*, Post-remand discovery on Comcast's anticompetitive conduct in Chicago, Detroit, and Hartford is related to tying, but all of that discovery is untimely and inadmissible.

**Question 3: Does a party waive its ability to raise issues in expert reports on remand that it could have raised in expert reports during the initial pre-remand round of discovery, and what case law, if any, supports this position?**

Yes. Viamedia's opposition to Comcast's pending summary-judgment motion cites cases regarding the general principle that the arguments available after remand are limited by the scope of the mandate. ECF No. 701 at 17-18; *see also*, *e.g.*, *Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1139 (7th Cir. 2023) (issue that previously had been waived is "outside of the scope of remand"); *ABS Glob., Inc. v. Inguran, LLC*, 2022 WL 2390186, at *8 (W.D. Wis. July 1, 2022) (finding party waived argument on remand that it had not raised prior to appeal). That general principle also extends to untimely expert disclosures. *E.g.*, *Matter of C.F. Bean, L.L.C.*, 2018 WL 4685472, at *7 (S.D. Miss. Sept. 28, 2018) (striking party's post-remand supplemental expert report in part because it introduced opinions that should have been raised pre-remand); *Toshiba Corp. v. Imation Corp.*, 2013 WL 1248633, at *13 (W.D. Wis. Mar. 26, 2013) (precluding expert from offering an opinion disclosed in a post-remand supplemental report because "[c]learly, [the expert] had the means long before he filed his original expert report to" develop opinion, and "there is nothing 'manifestly unjust' in requiring [sponsoring party] to stick to its original contentions, even though it now may question whether those contentions were well-founded"), *supplemented*, 2013 WL 7157854 (W.D. Wis. Apr. 5, 2013); *see id.* at *17 ("[P]arties cannot use

the accident of remand as an opportunity to reopen waived issues.") (quoting *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001)).

**Question 4: Have the parties conducted and/or had the opportunity to conduct sufficient discovery into the contours of the relevant product market?**

Yes. In its first set of discovery requests (served on November 21, 2016), Comcast sought discovery from Viamedia regarding market definition. *See* Ex. 1 (Comcast's First Set of Interrogs., Nov. 21, 2016) at 6 ("With respect to Your tying claim, identify the 'tying' product and the 'tied' product, the relevant product market and geographic markets for these products, and estimated market share(s) for the tying product market(s) and the tied product market(s)."); Ex. 2 (Comcast's First Set of Doc. Reqs., Nov. 21, 2016) at 6-7, Nos. 2-3, 10-11 (seeking documents bearing on market definition related to "the alleged market for Cable Spot Advertising Representation" and "any analysis of competition or alleged foreclosure of competition in any market for advertising"). Comcast continued to seek related information throughout fact discovery. *E.g.*, Ex. 3, (Comcast's First Set of Reqs. for Admiss., Apr. 4, 2017) at 7, No. 22 (seeking admission regarding definition of "[t]he Spot Cable Advertising Representative Services market"); Ex. 4 (Comcast's Fifth Set of Interrogs., Aug. 25, 2017) at 6-7, Nos. 14-15 & 21-22. These requests were never a subject of a motion to compel.

The parties also conducted expert discovery on the topic. The very first opinions disclosed in the opening report of Viamedia's liability expert, Harold Furchtgott-Roth, were that "Spot Cable Ad Rep Services and Interconnect Services are distinct product markets," and that "[t]he relevant geographic market for the provision of Interconnect Services and Spot Cable Ad Rep Services is the DMA." ECF No. 631-01 at ¶ 3.a-b. Comcast's liability expert, Dennis

Carlton, acknowledged and critiqued Dr. Furchtgott-Roth's market definition opinions, but did not sponsor his own alternative market definition.[1]

The record regarding market definition thus was fully developed when the Seventh Circuit explained that "[t]*he parties agree on the definitions of the relevant geographic and service markets*." *Viamedia*, 951 F.3d at 434 (emphasis added); *see also id.* (detailing the "three geographic markets" and "two separate service markets" Viamedia had defined); *see also id.* at 436 ("The parties agree on the definition of the relevant geographic markets, and the relevant service-product markets are not disputed on appeal.").

**Question 5: What are the differences, if any, between Comcast's alleged conduct underlying Viamedia's refusal-to-deal and tying claims?**

The principal differences between Viamedia's now-abandoned refusal-to-deal theory and its tying theory concerned the geographic markets Comcast's conduct affected. Viamedia alleged tying in the Chicago, Detroit, and Hartford DMAs; and Viamedia alleged an unlawful refusal to deal in those DMAs *and* others around the country as well. That is why Viamedia conceded at the outset of post-remand discovery that "supplemental discovery of Comcast's illegal refusal to deal with Viamedia in markets other than Chicago, Detroit, and Hartford [was] needed." ECF No. 401 at 9.

With regard to the Chicago, Detroit, and Hartford markets, however, the facts material to both the tying theory of liability and the refusal-to-deal theory of liability are the same. As the Seventh Circuit explained, "[t]hese related claims are both based on the same course of conduct,

---

[1] *See* Dennis W. Carlton, *Market Definition: Use and Abuse* at 3, Competition Pol'y Int'l, Vol. 3, No. 1 (Spring 2007) ("My view is that the definition of a market and the use of market shares and changes in market shares are at best crude first steps to begin an analysis. . . . Their usefulness in Section 2 cases is especially weak.").

resulted in the same anticompetitive harms, and would be subject to the same procompetitive justifications or defenses." *Viamedia*, 951 F.3d at 450; *see also* ECF No. 701 at 22-25 ("The Seventh Circuit held that Viamedia's tying theory must go to trial, and that holding necessarily rejects Comcast's objection to Viamedia's tying theory."); ECF No. 652 at 10-13 (similar with regard to Comcast's motion to exclude Dr. Furchtgott-Roth's testimony).

Dated:  December 9, 2024

Respectfully submitted,

/s/ *Richard J. Prendergast*
James M. Webster, III (*pro hac vice*)
Aaron M. Panner (*pro hac vice*)
Kenneth M. Fetterman (*pro hac vice*)
Derek T. Ho (*pro hac vice*)
Leslie V. Pope (*pro hac vice*)
**KELLOGG, HANSEN, TODD,**
   **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jwebster@kellogghansen.com
apanner@kellogghansen.com
kfetterman@kellogghansen.com
dho@kellogghansen.com
lpope@kellogghansen.com

Richard J. Prendergast
Michael T. Layden
Collin M. Bruck
**CROKE FAIRCHILD DUARTE**
**& BERES LLC**
191 N. Wacker Dr., 31st Floor
Chicago, Illinois 60602
(312) 641-0881
rprendergast@crokefairchild.com.
mlayden@crokefairchild.com

*Counsel for Plaintiff Viamedia, Inc.*

7

## CERTIFICATE OF SERVICE

I, Richard J. Prendergast, an attorney of record in the above-captioned case, hereby certify that on December 9, 2024, I caused to be served a true and correct copy of Viamedia, Inc.'s Pre-Hearing Brief upon the following counsel via electronic means:

**Ross Benjamin Bricker**
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
rbricker@jenner.com

**Arthur Burke**
**David B. Toscano**
Davis, Polk & Wardwell
450 Lexington Street
New York, NY 10017
(212) 450-4000
arthur.burke@dpw.com
david.toscano@davispolk.com

/s/ *Richard J. Prendergast*

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | No. 16 C 5486 |
| v. | ) ) ) | Honorable Amy J. St. Eve |
| COMCAST CORPORATION and COMCAST SPOTLIGHT, LP, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (successor to Comcast Spotlight, LP), through their counsel, serve on Plaintiff their First Set of Interrogatories. Defendants request that Plaintiff respond to this First Set of Interrogatories within thirty (30) days after service hereof, at the offices of Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, or at such other mutually agreeable location.

**DEFINITIONS**

A.     "Action" means Viamedia, Inc. v. Comcast Corp. and Comcast Spotlight, LP, No. 16 C 5486 (N.D. Ill.) (St. Eve, J.).

B.     "Analysis" means any analysis, assessment, evaluation, examination, investigation, review or study, whether or not in written form.

C.     "Comcast" means Defendants and their affiliated entities, and the directors, officers and employees of any of the foregoing entities.

D.      "Communication" means any oral, written, or other exchange or transmission of information, regardless of whether the communication was internal or external and regardless of the form of the communication (*e.g.*, in person, via telephone, audio recording, e-mail, voice mail, text message or other electronic form).

E.      "Document" and "Documents" shall mean and be equal in scope to the usage of the term in Rule 34 of the Federal Rules of Civil Procedure, and includes but is not limited to the original and all copies and prior drafts of any paper, electronic, or graphic records or data compilations, such as email, text messages, electronic chats, financial statements or records, trade tickets, business records, personal records, calendars, day planners, notes, memoranda, letters, publications, circulars, articles, reports, books, diaries, agreements, receipts, graphs, charts, videotape, cassette tape, or film.

F.      "DMA" means a designated market area.

G.       "MVPD" means multichannel video programming distributor.

H.      "NCC" means National Cable Communications, LLC.

I.      "Plaintiff," "You," or "Your" means Plaintiff Viamedia, Inc., its affiliates, and any of Viamedia's or its affiliates' directors, officers and employees.

J.      "Spot Cable Advertising" means local advertising spots inserted in cable network programming distributed by one or more MVPDs.

## **INSTRUCTIONS**

A.      These interrogatories relate to Your allegations and claims as set forth in the complaint in this Action, subject to the Court's November 4, 2016 decision on Defendants' motion to dismiss.

2

B.      The use of the singular shall be deemed to include the plural, and the use of the plural shall be deemed to include the singular; the use of the conjunctive shall be deemed to include the disjunctive, and the use of the disjunctive shall be deemed to include the conjunctive.

C.      A request to identify a document is a request to state: (i) the type of document; (ii) the date, if any, on the document; (iii) the author(s) or sender(s) of the document; (iv) the addressees or recipient(s) of the document; (v) the subject matter of the document; and (vi) the person(s) having custody or control over the document. It will be sufficient to attach copies of documents to your answer in lieu of a detailed description, so long as each such document is tied via index or other method to the interrogatory to which it is responsive.

D.      A request to identify a person is a request to state the person's (i) full name, (ii) home and business address (or last known address), (iii) home, cellular and business telephone number (or last known numbers), and (iv) present employer and position (or last known employer and position).

E.      In responding to these interrogatories, furnish all information, known or available to you at the time of your responses, whether the information is known by you, your representatives, agents, attorneys or their agents or representatives.

F.      If any of these interrogatories cannot be answered in full, answer to the extent possible, specifying the reasons for your inability to answer the remainder and stating whatever knowledge or information you may have concerning the unanswered portion.

G.      If in responding to these interrogatories you claim an ambiguity in interpreting either a particular interrogatory, or a definition or instruction, that claim shall not be used as a basis for refusing to respond. Instead, you shall set forth as part of your written response the

3

language deemed to be ambiguous and the interpretation you used in responding to the interrogatory.

H.     Each document requested in conjunction with these interrogatories shall be produced in its entirety and without deletion or excisions, whether or not you consider the entire document to be relevant or responsive to these interrogatories.

I.     For documents or information withheld on the basis of the attorney-client privilege, work product doctrine, or any other claim of privilege or confidentiality, please identify each document or piece of information withheld in writing and with sufficient specificity to permit the Court to reach a determination in the event of a motion to compel as to the applicability of the asserted privilege or claim of confidentiality. In the case of documents, such information called for by this instruction shall include (a) the nature of the document (e.g., e-mail, interoffice memoranda, correspondence, report, etc.); (b) the sender or author; (c) the recipient(s) or addresses (including all person receiving the original of the document, as well as all persons receiving copies or blind copies); (d) the date; (e) the title and subject matter of the document; and (f) a summary statement of the subject matter of the document in sufficient detail to permit the Court to reach a determination in the event of a motion to compel, but not so complete as to vitiate the effectiveness of the assertion of the claimed privilege.

J.     If called for in response to one of these interrogatories, you are required to produce all of the requested documents that are in your possession, custody or control, including documents held by your attorneys, consultants, advisors, agents, or employees. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody or control, identify its current or last known custodian and describe in full the circumstances surrounding its removal or loss from your possession or control. A document shall be deemed to

4

be in your control if you are able to secure the document or a copy thereof from another person or entity (public or private) having possession or custody thereof.

K.      If any document requested in conjunction with these interrogatories has been lost, discarded or destroyed, it shall be identified as completely as possible, including, without limitation, the following information: (a) the date of disposal; (b) the manner of disposal; (c) the reason for disposal; (d) the person authorizing disposal.

L.      These interrogatories are continuing and you must supplement your responses and/or production of documents upon discovering or learning of additional information or responsive documents in your custody, possession, or control that were not produced or included in an earlier response.

M.      The Relevant Time Period for these Interrogatories is January 1, 2012 through May 23, 2016.  Comcast reserves the right to seek discovery covering a broader time period based upon the time period of Your discovery requests.  Comcast reserves the right to seek discovery covering a broader time period, including based upon the time period of Your discovery requests and in future discovery requests.

## INTERROGATORIES

1.      Identify each MVPDs that Viamedia represents or has represented, the DMAs in which each such representation occurs or occurred, and the dates of representation.

2.      For each MVPD that You represent or have represented in Your capacity as a Spot Cable Advertising Representative (as that term is used in the complaint in this Action), describe all services that You provided to the MVPD in the course of such representation.

5

3. Identify all MVPDs with which You contend that Comcast has engaged in unlawful tying or exclusive dealing and identify the DMAs in which that allegedly unlawful tying or exclusive dealing occurred.

4. With respect to Your tying claim, identify the "tying" product and the "tied" product, the relevant product market and geographic markets for these products, and estimated market share(s) for the tying product market(s) and the tied product market(s).

5. With respect to Your exclusive deal claim, identify the relevant product market and geographic market in which You allege Comcast has engaged in exclusive dealing, and estimated market share(s) for the relevant market(s).

6. With respect to Your claims of "tortious interference with a business expectancy," identify all acts and statements that You allege constitute tortious interference, and all "business expectanc[ies]" with which you allege Comcast has interfered.

Dated: November 21, 2016

Respectfully Submitted,

COMCAST CORPORATION AND
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By: /s/ Ross B. Bricker
Ross B. Bricker
Sally K. Sears Coder
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rbricker@jenner.com
ssearscoder@jenner.com

Arthur J. Burke (*pro hac vice*)
David B. Toscano (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017

6

Tel: (212) 450-4000
Fax: (212) 701-5800
Arthur.Burke@davispolk.com
David.Toscano@davispolk.com

*Attorneys for Defendants Comcast Corporation and
Comcast Cable Communications Management, LLC*

7

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | No. 16 C 5486 |
| v. | ) ) ) | Honorable Amy J. St. Eve |
| COMCAST CORPORATION and COMCAST SPOTLIGHT, LP, | ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' FIRST SET OF DOCUMENT REQUESTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (successor to Comcast Spotlight, LP) hereby request that Plaintiff Viamedia, Inc. respond to this First Set of Document Requests within thirty (30) days after service hereof and produce to Defendants documents responsive to the Requests at the offices of Jenner & Block LLC, 353 N. Clark Street, Chicago, IL 60654, or at such other mutually agreeable location.

### DEFINITIONS

A. "Action" means *Viamedia, Inc. v. Comcast Corp. and Comcast Spotlight, LP*, No. 16 C 5486 (N.D. Ill.) (St. Eve, J.).

B. "Analysis" means any analysis, assessment, evaluation, examination, investigation, review or study, whether or not in written form.

C. "Comcast" means Defendants and their affiliated entities, and the directors, officers and employees of any of the foregoing entities.

D. "Communication" means any oral, written, or other exchange or transmission of information, regardless of whether the communication was internal or external and regardless of the form of the communication (*e.g.*, in person, via telephone, audio recording, e-mail, voice mail, text message or other electronic form).

E. "Document" and "Documents" shall mean and be equal in scope to the usage of the term in Rule 34 of the Federal Rules of Civil Procedure, and includes but is not limited to the original and all copies and prior drafts of any paper, electronic, or graphic records or data compilations, such as email, text messages, electronic chats, financial statements or records, trade tickets, business records, personal records, calendars, day planners, notes, memoranda, letters, publications, circulars, articles, reports, books, diaries, agreements, receipts, graphs, charts, videotape, cassette tape, or film.

F. "DMA" means Designated Market Area.

G. "Including" means "including without limitation" or "including, but not limited to" or "such as."

H. "Interrogatories" means Defendants' First Set of Interrogatories dated November 21, 2016.

I. "MVPD" means multichannel video programming distributor.

J. "NCC" means National Cable Communications, LLC.

K. "Plaintiff," "You," or "Your" refers to Plaintiff Viamedia, Inc., its affiliates, and any of Viamedia's or its affiliates' directors, officers, and employees.

L. "Spot Cable Advertising" means local advertising spots inserted in cable network programming distributed by one or more MVPDs.

## **INSTRUCTIONS**

A.      These Document Requests relate to Your allegations and claims as set forth in the complaint in this Action, subject to the Court's November 4, 2016 decision on Defendants' motion to dismiss.

B.      All definitions, instructions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure are incorporated herein by reference.

C.      These Document Requests are continuing in nature so as to require supplemental responses and productions if additional information becomes available or is discovered after You respond to them.

D.      Documents shall be produced regardless of whether they are in your possession, custody, or control, or within the possession, custody, or control of one or more of your attorneys, agents, employees, representatives, or investigators.

E.      If a portion of any document is responsive to one or more of these Document Requests, then the entire document must be produced. If any responsive document cannot be produced in full, please produce the document to the extent possible and specify each reason for your inability to produce the remainder of the document.

F.      Documents shall be produced in the order in which they appear in your files and shall not be shuffled or otherwise rearranged.

G.      If any responsive document was, but is no longer, in existence or in your possession, custody or control, please state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of. Please also state the date or approximate date of such disposition, explain the circumstances surrounding such

3

disposition, and identify (if known) the person(s) or entity now, or last known by you, to be in possession, custody, or control of the document.

H.      If in responding to these Document Requests you claim an ambiguity in interpreting either a particular request, or a definition or instruction, that claim shall not be used as a basis for refusing to respond. Instead, you shall set forth as part of your written response the language deemed to be ambiguous and the interpretation you used in responding to the Request.

I.      If it is your contention that a portion of any responsive document is protected from disclosure by the attorney-client privilege, work product, or for any other reason, such document must be produced with redaction of the portion claimed to be protected from production.

J.      For any document withheld on the basis of the attorney-client privilege, work product doctrine, or any other claim of privilege or confidentiality, please identify each document or piece of information withheld in writing and with sufficient specificity to permit the Court to reach a determination in the event of a motion to compel as to the applicability of the asserted privilege or claim of confidentiality. In the case of documents, such information called for by this instruction shall include (a) the nature of the document (*e.g.*, e-mail, interoffice memoranda, correspondence, report, etc.); (b) the sender or author; (c) the recipient(s) or addresses (including all person receiving the original of the document, as well as all persons receiving copies or blind copies); (d) the date; (e) the title and subject matter of the document; and (f) a summary statement of the subject matter of the document in sufficient detail to permit the Court to reach a determination in the event of a motion to compel, but not so complete as to vitiate the effectiveness of the assertion of the claimed privilege.

K.      All phrases or descriptions following the terms "including" or "such as" are intended to illustrate the kind of information responsive to each Document Request herein.  Such examples are not intended to be exhaustive of the information sought and shall not in any way be read to limit the scope of these Document Requests.

L.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Document Requests all responses that might otherwise be construed to be outside of their scope.

M.      The use of the singular form of any work includes the plural and vice versa.

N.      Except as otherwise expressly indicated, the Relevant Time Period for these Requests is January 1, 2012 through May 23, 2016.  Comcast reserves the right to seek discovery covering a broader time period, including based upon the time period of Your discovery requests and in future discovery requests.

**DOCUMENT REQUESTS**

Produce the following in accordance with the above Definitions and Instructions:

1.      All documents relating to (a) any effort by You (whether or not successful) to represent or continue to represent any MVPD as a Cable Spot Advertising Representative, or (b) any MVPDs' interest in being represented in such capacity by You. Without limiting the generality of the foregoing, this Request specifically seeks all documents relating to communications between You and any MVPD regarding such representation or prospective representation, and all documents relating to Your assessment of the likelihood that You would obtain or maintain any MVPD's representation business.

5

2.      All documents relating to Your pricing (including revenue splits, commissions, or other economic terms) of Cable Spot Advertising Representation services to MVPDs; Your costs, including ongoing operating costs and capital investments, of providing such services; or Your investment in the provision of such services.

3.      All documents relating to Your strategies for competing with any other firm to act as a Cable Spot Advertising Representative for MVPDs.

4.      All documents relating to any agreement between You and any MVPD concerning your representation of that MVPD, including all documents relating to the negotiation of any such agreement (such as requests for proposals, responses to requests for proposals, and draft agreements).  Without limiting the generality of the foregoing, this Request specifically seeks all documents relating to any condition that You imposed or sought to impose as to the terms of any such agreement, or any demand that You made as to the terms of any such agreement.

5.      Documents sufficient to show the advertising revenues earned by You and by each MVPD represented by You, and the sources of those revenues.

6.      Documents sufficient to show any other non-advertising revenues earned by You, including in the form of fees and other charges to MVPDs.

7.      All documents relating to the representation or prospective representation of any MVPD by Comcast or any other Cable Spot Advertising Representation firm other than You.

8.      All documents identifying or describing the services that You provide to MVPDs in Your capacity as the operator of any Interconnect, including all documents relating to any agreement between You and any participant in an Interconnect operated by You.

9.     All documents identifying or describing any services that You provide to MVPDs other than in Your capacity as the operator of any Interconnect, including all documents relating to any agreement between You and any MVPD relating to such services.

10.     All documents relating to any analysis of competition or alleged foreclosure of competition in the alleged market for Cable Spot Advertising Representation.

11.     All documents relating to any analysis of competition or alleged foreclosure of competition in any market for advertising, including the alleged "relevant antitrust market for selling regional advertising time for which access to the Comcast-controlled Interconnects is required."  (Dkt. No. 32 at 3.)

12.     All documents relating to Your present or future participation in NCC, including all documents relating to Your agreement with NCC that allegedly will expire in December 2017, and all documents relating to any communication with NCC or any MVPD concerning Your present or future participation in NCC.

13.     All other documents relating to any allegation of the complaint in this Action, other than allegations solely concerning the refusal-to-deal claim, including any such document collected, received, referred to, relied upon, or created by You in preparing this Action or any complaint in this Action.

14.     All documents, other than documents solely concerning the refusal-to-deal claim, relating to communications concerning the allegations in the complaint in this Action or otherwise concerning this Action with any person—including any current or former director, officer, employee or agent of an MVPD, Interconnect operator, industry association, advertiser, advertising agency—other than Your outside counsel.

15.     All regularly prepared financial statements covering the Relevant Time Period.

16.     All documents collected, received, referred to, relied upon, or created by You concerning Your responses to the Interrogatories.

Dated:  November 21, 2016

Respectfully Submitted,

COMCAST CORPORATION AND
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By:   /s/ Ross B. Bricker
Ross B. Bricker
Sally K. Sears Coder
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rbricker@jenner.com
ssearscoder@jenner.com

Arthur J. Burke (*pro hac vice*)
David B. Toscano (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Tel: (212) 450-4000
Fax: (212) 701-5800
Arthur.Burke@davispolk.com
David.Toscano@davispolk.com

*Attorneys for Defendants Comcast Corporation and*
*Comcast Cable Communications Management, LLC*

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) ) ) ) | |
| Plaintiff, | ) | No. 16 C 5486 |
| v. | ) ) ) | Honorable Amy J. St. Eve |
| COMCAST CORPORATION and COMCAST SPOTLIGHT, LP, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (successor to Comcast Spotlight, LP), through their counsel, serve on Plaintiff their First Set of Requests for Admission. Under Rule 36(a)(3), a matter is admitted unless Viamedia serves on Comcast's counsel a duly signed written answer or objection addressed to the matter, absent stipulation or court order setting a shorter or longer time for responding.

**DEFINITIONS**

A. "2003 Agreement" means the Regional-National Advertising Availability Agreement between ViaMedia, Inc. and Comcast Spotlight LP's predecessor, Comcast Advertising Sales, Inc., dated as of May 30, 2003.

B. "Action" means *Viamedia, Inc. v. Comcast Corp. & Comcast Spotlight, LP*, No. 16 C 5486 (N.D. Ill.) (St. Eve, J.).

C. "Advertisers" includes advertisers and the advertising agencies that purchase advertising on their behalf.

D.   "Digital Media" means media, including video and other content, delivered over the Internet.

E.   "DMA" means a designated market area as defined by Nielsen Market Research.

F.   "First Amended Complaint" means the amended complaint filed by Viamedia, Inc. on November 21, 2016 (Dkt. No. 40), in this Action.

G.   "Interconnect" means infrastructure, equipment, staff, and expertise used to pool the spot cable avail inventory of multiple MVPDs within a DMA, and to handle all aspects of organizing, marketing and selling that inventory to regional advertisers on behalf of those MVPDs.

H.   "Local Zone" means a geographic area smaller than a DMA in which an MVPD's systems are subdivided to deliver advertising to different areas of a DMA that the MVPD serves.

I.   "MVPD" means multichannel video programming distributor.

J.   "NCC" means National Cable Communications, LLC.

K.   "Plaintiff," "You," or "Your" means Plaintiff Viamedia, Inc., its affiliates, and any of Viamedia's or its affiliates' directors, officers and employees.

L.   "Spot Cable Advertising" means local advertising spots inserted in cable network programming distributed by one or more MVPDs.  The meaning of Spot Cable Advertising from the First Amended Complaint (Dkt. No. 40) is also incorporated by reference.

M.   "Spot Cable Advertising Representative" means a person who represents an MVPD in the sale of its Spot Cable Advertising inventory, including on a Local Zone basis or through regional Interconnects.

N.   The meaning of "Spot Cable Advertising Availabilities" or "Spot Cable Avails" from the First Amended Complaint (Dkt. No. 40) is incorporated by reference.

2

O.      The foregoing Definitions apply to the Requests for Admission set forth below without prejudice to other usages in different contexts.

**<u>INSTRUCTIONS</u>**

A.      These Requests for Admission relate to Your allegations and claims as set forth in the complaint in this Action, subject to the Court's November 4, 2016 and February 22, 2017 decisions on Defendants' motions to dismiss.

B.      All definitions, instructions and rules of construction set forth in Rule 36 of the Federal Rules of Civil Procedure are incorporated herein by reference.

C.      These Requests shall be deemed continuing in nature so as to require you to file supplementary responses if you obtain or discover new or different information up to and including the conclusion of this proceeding.

D.      Each Request shall be answered separately and fully in writing, unless an objection is made thereto, in which event the reasons for the objection shall be specifically and separately stated.

E.      Where a complete answer to a particular Request is not provided, the Request shall be answered to the extent possible and a statement made explaining why only a partial answer can be given.

F.      If your response to any Request is anything other than an unequivocal admission, set forth the full legal and factual basis for your denial.

G.      If you object to any of the Requests herein, whether in whole or in part, on the grounds that the responses sought are protected from disclosure by a claim of attorney-client privilege, work product immunity, or any other privilege or immunity, you shall respond to the extent possible, and with respect to any portion or aspect of the response for which a claim of

3

privilege or immunity is asserted, shall state the nature of the privilege or immunity asserted and the specific reason for the claim of privilege or immunity. An objection or claim of privilege or immunity directed to part of a Request does not constitute an excuse for failure to respond to the parts of a Request for which no objection or claim of privilege is made.

H.      If in responding to these Requests for Admission you claim an ambiguity in interpreting either a particular request, or a definition or instruction, that claim shall not be used as a basis for refusing to respond. Instead, you shall set forth as part of your written response the language deemed to be ambiguous and the interpretation you used in responding to the Request.

I.      All phrases or descriptions following the terms "including" or "such as" are intended to illustrate the kind of information responsive to each Request. Such examples are not intended to be exhaustive of the information sought and shall not in any way be read to limit the scope of these Requests.

J.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of their scope.

K.      The use of the singular form of any work includes the plural and vice versa.

4

## REQUESTS FOR ADMISSION

1. Admit that Viamedia operates an Interconnect in Evansville, Indiana.

2. Admit that Viamedia operates an Interconnect in Terre Haute, Indiana.

3. Admit that Viamedia operates an Interconnect in Wilkes-Barre, Pennsylvania.

4. Admit that in DMAs in which Viamedia operates an Interconnect, it "contract[s] with MVPDs to assume responsibility for their Spot Cable Advertising for the purpose of marketing and selling their Spot Cable Avail inventory" in that DMA to regional Advertisers. (Amd. Compl. ¶ 72).

5. Admit that in the parties' 2003 Agreement, Comcast Spotlight contracted with Viamedia to market and sell RCN's and WOW's regional and national Spot Cable Avail inventory in the Chicago and Detroit DMAs to Advertisers.

6. Admit that pursuant to the parties' 2003 Agreement, Comcast Spotlight sold Spot Cable Advertising Avail inventory on RCN's Chicago systems to Advertisers through the Chicago Interconnect.

7. Admit that pursuant to the parties' 2003 Agreement, Comcast Spotlight sold Spot Cable Advertising Avail inventory on WOW's Chicago and Detroit systems to Advertisers through the Chicago and Detroit Interconnects, respectively.

8. Admit that pursuant to the parties' 2003 Agreement, Comcast Spotlight invoiced and collected payment from Advertisers for RCN's and WOW's Spot Cable Avail inventory sold through the Chicago and Detroit Interconnects.

9. Admit that Viamedia acts as MVPDs' Spot Cable Advertising Representative for purposes of both Local Zone sales and Interconnect sales of Spot Cable Advertising in the Evansville, Indiana DMA.

5

10.     Admit that Viamedia acts as MVPDs' Spot Cable Advertising Representative for purposes of both Local Zone sales and Interconnect sales of Spot Cable Advertising in the Terre Haute, Indiana DMA.

11.     Admit that Viamedia acts as MVPDs' Spot Cable Advertising Representative for purposes of both Local Zone sales and Interconnect sales of Spot Cable Advertising in the Wilkes Barre, Pennsylvania DMA.

12.     Admit that a Spot Cable Advertising Representative's representation of an MVPD for the purposes of both Local Zone sales and Interconnect sales of Spot Cable Advertising, or "full turnkey" representation, yields efficiencies.

13.     Admit that full turnkey representation lowers transaction costs for MVPDs.

14.     Admit that full turnkey representation lowers transaction costs for advertisers.

15.     Admit that full turnkey representation facilities the dynamic allocation of Spot Cable Advertising Avail inventory between Local Zone sales and Interconnect sales in response to advertiser demand.

16.     Admit that a Spot Cable Advertising Representative's representation of an MVPD on an exclusive basis yields efficiencies.

17.     Admit that NCC sells Spot Cable Advertising inventory of Viamedia's MVPD clients.

18.     Admit that since no later than 2003, NCC has sold Spot Cable Advertising inventory of Viamedia's MVPD clients.

19.     Admit that NCC has never declined to sell any MVPD's Spot Cable Advertising inventory on the ground that the MVPD is represented by Viamedia.

6

20. Admit that NCC does not condition the sale of any MVPD's Spot Cable Advertising inventory on representation of that MVPD by Comcast Spotlight.

21. Admit that "[w]ithout access to the Interconnect, Viamedia cannot provide competitive market rate guarantees . . . ." (V-004306012).

22. Admit that "[t]he Spot Cable Advertising Representative Services market is defined as those services required by MVPDs to sell, bill for, and insert spot advertisements whether offered internally or by a representation firm such as Viamedia." V-004306012.

23. Admit that, except in any DMA in which Viamedia operates an Interconnect, Viamedia does not "'[p]lan[] and coordinat[e]'" the sale of any MVPD's Spot Cable Advertising through an Interconnect. (2016 WL 6568074, at *13 (quoting Amd. Compl. ¶ 70)).

24. Admit that, except in any DMA in which Viamedia operates an Interconnect, Viamedia does not "identify buyers and negotiate business terms" for the sale of any MVPD's Spot Cable Advertising inventory through an Interconnect. (2016 WL 6568074, at *13).

25. Admit that, except in any DMA in which Viamedia operates an Interconnect, Viamedia does not provide all of the following services in connection with the sale of any MVPD's Spot Cable Advertising inventory through an Interconnect: "'complete turnkey advertising sales, spot insertion, encoding, validation, IT, monitoring, traffic, billing, and collection services.'" (2016 WL 6568074, at *13 (quoting Amd. Compl. ¶ 75)).

7

Dated:  April 4, 2017

Respectfully Submitted,

COMCAST CORPORATION AND
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By:   /s/ Ross B. Bricker
Ross B. Bricker
Sally K. Sears Coder
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rbricker@jenner.com
ssearscoder@jenner.com

Arthur J. Burke (*pro hac vice*)
David B. Toscano (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 701-5800
Arthur.Burke@davispolk.com
David.Toscano@davispolk.com

*Attorneys for Defendants Comcast Corporation and
Comcast Cable Communications Management, LLC*

8

# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 16 C 5486 |
| v. | ) ) ) | Honorable Amy J. St. Eve |
| COMCAST CORPORATION and COMCAST SPOTLIGHT, LP, | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' FIFTH SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants Comcast

Corporation and Comcast Cable Communications Management, LLC (successor to Comcast

Spotlight, LP), through their counsel, serve on Plaintiff their Fifth Set of Interrogatories.

Defendants request that Plaintiff respond to this Fifth Set of Interrogatories within thirty (30)

days after service hereof, at the offices of Jenner & Block LLP, 353 N. Clark Street, Chicago, IL

60654, or at such other mutually agreeable location.

**DEFINITIONS**

A.      "Action" means Viamedia, Inc. v. Comcast Corp. and Comcast Spotlight, LP,

No. 16 C 5486 (N.D. Ill.) (St. Eve, J.).

B.      "Comcast" means Defendants and their affiliated entities, and the directors,

officers and employees of any of the foregoing entities.

C.      "Communication" means any oral, written, or other exchange or transmission of

information, regardless of whether the communication was internal or external and regardless of

the form of the communication (*e.g.*, in person, via telephone, audio recording, e-mail, voice mail, text message or other electronic form).

D.      "DMA" means a designated market area as defined by Nielsen Market Research.

E.      "Document" and "Documents" shall mean and be equal in scope to the usage of the term in Rule 34 of the Federal Rules of Civil Procedure, and includes but is not limited to the original and all copies and prior drafts of any paper, electronic, or graphic records or data compilations, such as email, text messages, electronic chats, financial statements or records, trade tickets, business records, personal records, calendars, day planners, notes, memoranda, letters, publications, circulars, articles, reports, books, diaries, agreements, receipts, graphs, charts, videotape, cassette tape, or film.

F.      "Full Turnkey" means a business relationship between an MVPD and an advertising representative whereby the advertising representative assumes the exclusive right to sell all of the MVPD's Spot Cable Advertising inventory.

G.      "Identify," "identity" and "identification," when used in reference to:

(a) an individual, means to state his or her full name, present or last known home and business address(es) and home, cellular, and business telephone number(s), the present or last known business affiliation including title and position and position/employment held during the Relevant Time Period;

(b) a firm, organization, partnership, corporation or other business entity, means to state the correct name of the organization, type of organization (e.g., corporation, partnership, firm or other entity), and present or last known address and telephone number;

(c) a document, means to set forth the type of document (e.g., letter, memorandum, notes, etc.), its date, author(s), addressee(s) (if any), title, general subject matter,

2

identifying number, if any, present location and name and address of every person who presently has custody of the original or copies thereof.  It shall be deemed a sufficient answer to furnish true and legible copies of the documents asked to be identified, together with your answers to these Interrogatories, provided that you specifically indicate the Interrogatory, or portion thereof, for which the document is meant to serve as a response; and

(d) a fact, means to set forth all facts explaining, concerning, causing or contributing to (whether positively or negatively) the information sought in the Interrogatory.

H.      "MVPD" means multichannel video programming distributor.

I.      "Plaintiff," "You," or "Your" means Plaintiff Viamedia, Inc., its affiliates, and any of Viamedia's or its affiliates' directors, officers and employees.

J.      "Spot Cable Advertising" means local advertising spots inserted in cable network programming distributed by one or more MVPDs.

K.      "Spot Cable Advertising Representation" services has the meaning ascribed to in the Amended Complaint.

## INSTRUCTIONS

A.      These Interrogatories relate to Your allegations and claims as set forth in the complaint in this Action, subject to the Court's November 4, 2016 and February 22, 2017 decisions on Defendants' motions to dismiss, and Your responses to prior Interrogatories.

B.      The use of the singular shall be deemed to include the plural, and the use of the plural shall be deemed to include the singular; the use of the conjunctive shall be deemed to include the disjunctive, and the use of the disjunctive shall be deemed to include the conjunctive.

3

C.      In responding to these Interrogatories, furnish all information, known or available to you at the time of your responses, whether the information is known by you, your representatives, agents, attorneys or their agents or representatives.

D.      If any of these Interrogatories cannot be answered in full, answer to the extent possible, specifying the reasons for your inability to answer the remainder and stating whatever knowledge or information you may have concerning the unanswered portion.

E.      If in responding to these Interrogatories you claim an ambiguity in interpreting either a particular Interrogatory, or a definition or instruction, that claim shall not be used as a basis for refusing to respond. Instead, you shall set forth as part of your written response the language deemed to be ambiguous and the interpretation you used in responding to the Interrogatory.

F.      For documents or information withheld on the basis of the attorney-client privilege, work product doctrine, or any other claim of privilege or confidentiality, please identify each document or piece of information withheld in writing and with sufficient specificity to permit the Court to reach a determination in the event of a motion to compel as to the applicability of the asserted privilege or claim of confidentiality. In the case of documents, such information called for by this instruction shall include (a) the nature of the document (e.g., e-mail, interoffice memoranda, correspondence, report, etc.); (b) the sender or author; (c) the recipient(s) or addresses (including all person receiving the original of the document, as well as all persons receiving copies or blind copies); (d) the date; (e) the title and subject matter of the document; and (f) a summary statement of the subject matter of the document in sufficient detail to permit the Court to reach a determination in the event of a motion to compel, but not so complete as to vitiate the effectiveness of the assertion of the claimed privilege.

4

G.      These Interrogatories are continuing and you must supplement your responses and/or production of documents upon discovering or learning of additional information or responsive documents in your custody, possession, or control that were not produced or included in an earlier response.

H.      The Relevant Time Period for these Interrogatories is January 1, 2011 through July 31, 2016.  Comcast reserves the right to seek discovery covering a broader time period based upon the time period of Your discovery requests.  Comcast reserves the right to seek discovery covering a broader time period, including based upon the time period of Your discovery requests and in future discovery requests.

## INTERROGATORIES

14.     Define "Interconnect services" as that term is used in Viamedia's response to Comcast's Interrogatory No. 4.

15.     Describe how "Interconnect services" as defined by your response to Interrogatory No. 14 differ, if at all, from Spot Cable Advertising Representation services.

16.     Identify all instances in which an MVPD or Spot Cable Advertising Representative purchased Interconnect services from an entity but did not purchase Spot Cable Advertising Representation services from the same entity.

17.     Identify each instance in which an MVPD has contracted to be represented by more than one Spot Cable Advertising Representation provider in a single DMA, including by identifying the DMA, MVPD, providers, and applicable time periods.

18.     Identify each instance that an MVPD communicated to Viamedia a reference to, question about, interest in, or a request for Full Turnkey representation from Viamedia, including by identifying the MVPD, the date of the communication, form of such communication (oral or in writing), the DMAs involved in the communication, and the specifics of each such communication.

19.     Identify each instance that Viamedia offered, pitched, or proposed Full Turnkey representation to an MVPD, including by identifying the DMA, MVPD, the applicable time periods, and the terms that Viamedia offered, pitched, or proposed.

20.     Identify each instance that Viamedia offered, pitched, or proposed to represent an MVPD on a non-Full Turnkey basis, including by identifying the DMA, MVPD, applicable time periods, and the terms that Viamedia offered, pitched, or proposed.

21.     State whether Viamedia contends that Comcast's allegedly anticompetitive conduct has had any effect on the price or output for Spot Cable Advertising Representation services, and if so, describe with specificity that effect and all facts upon which Viamedia will rely to demonstrate that effect.

22.     State whether Viamedia contends that Comcast's allegedly anticompetitive conduct has had any effect on the quality of Spot Cable Advertising Representation services, and if so, describe with specificity that effect and all facts upon which Viamedia will rely to demonstrate that effect.

23.     Describe how Viamedia contends that Comcast's allegedly anti-competitive conduct caused Viamedia antitrust injury, and describe with specificity all facts upon which Viamedia will rely to demonstrate that antitrust injury.

24.     Describe how Viamedia contends that Comcast's allegedly anti-competitive conduct caused harm to competition, and describe with specificity all facts upon which Viamedia will rely to demonstrate harm to competition.

25.     Identify all DMAs that have Interconnects that are operated by more than one MVPD, including by identifying the MVPDs that operate each such Interconnect and the applicable time periods.

7

Dated:  August 25, 2017

Respectfully Submitted,

COMCAST CORPORATION AND
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By:   /s/ Ross B. Bricker
Ross B. Bricker
Sally K. Sears Coder
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rbricker@jenner.com
ssearscoder@jenner.com

Arthur J. Burke (*pro hac vice*)
David B. Toscano (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 701-5800
Arthur.Burke@davispolk.com
David.Toscano@davispolk.com

*Attorneys for Defendants Comcast Corporation and
Comcast Cable Communications Management, LLC*

8

## CERTIFICATE OF SERVICE

I, Ross B. Bricker, an attorney, certify that I caused a copy of the foregoing

**DEFENDANTS' FIFTH SET OF INTERROGATORIES** to be served on counsel listed

below on August 25, 2017 via electronic means:

**James M. Webster, III** (*pro hac vice*)
**Aaron M. Panner** (*pro hac vice*)
**Kenneth M. Fetterman** (*pro hac vice*)
**Derek T. Ho** (*pro hac vice*)
Kellogg, Hansen, Todd,
Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jwebster@kellogghansen.com
apanner@kellogghansen.com
kfetterman@kellogghansen.com
dho@kellogghansen.com

**Richard J. Prendergast**
**Michael T. Layden**
**Collin M. Bruck**
Richard J. Prendergast, Ltd.
111 W. Washington Street, Suite 1100
Chicago, Illinois 60602
(312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
cbruck@rjpltd.com

    /s/ Ross B. Bricker