**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-cv-5486 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| COMCAST CORPORATION and | ) | |
| COMCAST CABLE COMMUNICATIONS | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are motions from Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast") to certify for interlocutory appeal a question of law decided in the Court's previous summary judgment order; and from Plaintiff Viamedia, Inc. ("Viamedia") seeking leave to call at trial a previously undisclosed witness. For the reasons stated below, the Court denies Comcast's motion for an interlocutory appeal [761] and grants Viamedia's motion for leave to call a witness at trial [780].

**BACKGROUND**

Viamedia and Comcast are parties to a long-running antitrust case with a trial date tentatively set for November 2, 2026, although that date may soon be changed owing to scheduling difficulties unrelated to this order. In brief, Viamedia argues that Comcast has exploited its control over Interconnect Services in Chicago, Detroit, and Hartford to illegally tie the use of such services by multichannel video programming distributors ("MVPDs") to the use of Comcast's Spot Cable Ad Rep Services. *See Viamedia, Inc. v. Comcast Corp.*, No. 16 CV 05486, 2025 WL 2972666, at *4 (N.D. Ill. Oct.

14, 2025) (Coleman, J.) [hereinafter MSJ Order].[1] The most recent round of fact discovery (following remand from the Seventh Circuit) closed over three years ago.

On October 14, 2025, the Court issued an order denying summary judgment to Comcast. MSJ Order. Comcast had argued for summary judgment in part because, it contended, Interconnect Services and Spot Cable Ad Rep Services both represented not just two-sided platforms, but two-sided *transaction* platforms, and that Viamedia had therefore failed to properly define the market for the tying product. Dkt. 686 at *23–24. In response, Viamedia first argued that neither the Interconnect Services market nor the Spot Cable Ad Rep Services market constituted a two-sided transaction platform in part because neither market consists primarily of simultaneous transactions in the sense articulated by the Supreme Court in *Ohio v. Am. Express Co.*, 585 U.S. 529 (2018) [hereinafter *Amex.*]; dkt. 706 at *19–20. Additionally, Viamedia argued that it is irrelevant whether the Interconnect Services market is a two-sided transaction platform because "Viamedia's claim does not depend on showing that MVPDs suffered anticompetitive effects in the market for Interconnect Services, and it is therefore unnecessary to consider whether there are offsetting benefits for anyone else." Dkt. 706 at *21. In denying summary judgment, the Court agreed with Viamedia that neither market constituted a two-sided transaction platform; as such, the Court did not reach the question of whether the Interconnect Services market being a two-sided transaction platform would have any effect on Viamedia's claim. MSJ Order *10–11. Shortly after the Court issued its MSJ Order, Comcast requested that the Court modify its MSJ Order to permit an interlocutory appeal of the following question: "Is the alleged Interconnect Services market a two-sided transaction platform?" Dkt. 761-1 at *4 [hereinafter Appeal Cert. Br.].

---

[1] The Court will assume familiarity with the background of this case, including familiarity with the technical vocabulary. For significantly more detail, please see the MSJ Order.

Then, on November 13, 2025—while the motion for an interlocutory appeal was still being briefed—Viamedia updated its Rule 26(a) disclosures to reflect the fact that it wished to call at trial Ken Little, a previously undisclosed witness. Mr. Little had become a member of Viamedia's board of directors in late 2024; however, during the period relevant to this case, he was the Chief Operating Officer of National Cable Communications Inc. ("NCC"), a company that provides Spot Cable Ad Rep Services and which is 60% owned by Comcast. Viamedia claims that "during his tenure at NCC, [Mr. Little] had had numerous conversations with Comcast executives about Comcast's decision to exclude Viamedia from its Interconnects," and it wishes for Mr. Little to testify about this at trial. Dkt. 780 at *4 [hereinafter Witness Mot. Br.]. The record indicates that Viamedia has had some form of relationship with Mr. Little going back at least as far as 2016, and Viamedia engaged Little as an advisor in 2020. Dkt. 787 at *10 [hereinafter Witness Mot. Resp.]. However, Mr. Little claims that he did not inform Viamedia of the conversations at issue until after he joined the Viamedia board in late 2024. Witness Mot. Br *4; *see* dkt. 668. At that time, fact discovery had been closed for about two years, and Comcast's motion for summary judgment was still pending.

On December 9, 2025, Comcast objected to Mr. Little's testimony because he was not disclosed as a witness until long after the close of fact discovery. Magistrate Judge McNally set a deadline of January 9, 2026, for Viamedia to file any motions to reopen fact or expert discovery. Dkt. 775. Viamedia did not file any such motion. Instead, on January 9, 2026, it filed a motion before this Court seeking leave to call Mr. Little at trial. By this point, Comcast's motion for an interlocutory appeal had already been fully briefed and taken under consideration. The parties timely submitted their response and reply briefs for the motion seeking leave to call Mr. Little at trial, at which point the Court took that motion under advisement as well.

## DISCUSSION

### I.      Motion for Interlocutory Appeal

#### A.      Legal Standard

Under 28 U.S.C. § 1292(b), a district court may grant a party leave to file an interlocutory appeal of an order when the question for certification is (1) a question of law, (2) which is controlling, (3) which is contestable, and (4) the resolution of which "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292; *see Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675–76 (7th Cir. 2000). Each condition is necessary. *Ahrenholz*, 219 F.3d at 676. Additionally, the motion for leave to appeal must be filed with the district court within a reasonable time after the order at issue is entered. *Id.* at 675. The decision of whether to permit an interlocutory appeal is within this Court's discretion. *See Janusz v. City of Chicago*, No. 03 C 4402, 2013 WL 12331279, at *1 (N.D. Ill. June 21, 2013) (Gottschall, J.). Because these appeals are a drain on judicial resources and tend to cause delay in the lower court's proceedings, they should be granted sparingly. *See S.E.C. v. Buntrock*, No. 02 C 2180, 2003 WL 260711, at *1 (N.D. Ill. Feb. 3, 2003) (Andersen, J.).

#### B.      Analysis

As noted above, all four statutory criteria under 28 U.S.C. § 1292(b) must be satisfied before a question can be certified for interlocutory appeal. *Ahrenholz*, 219 F.3d at 676. Viamedia does not appear to contest that the question presented by Comcast is "controlling," in the sense that "its resolution is quite likely to affect the further course of the litigation[.]" *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Nor is there any argument about the timeliness of Comcast's motion. *See Ahrenholz*, 219 F.3d at 675. However, Viamedia raises reasonable arguments that Comcast's proposed question cannot satisfy any of the remaining criteria. The Court is inclined to agree. Because the Court's largest concern rests with whether the question presented by Comcast would hasten the termination of the litigation, it will begin the analysis there.

The Supreme Court has held that two-sided transaction platforms are characterized by what is effectively a single market on both sides of the platform. *Amex* at 546. Comcast argues that Viamedia "has defined only a one-sided market as the alleged tying market (Interconnect Services)," and that, as such, Viamedia's claim must fail "for lack of a properly defined tying market" if it turns out that Interconnect Services, as a matter of law, constitutes a two-sided transaction platform. Appeal Cert. Br. *6. As such, Comcast contends that allowing an interlocutory appeal will materially advance the case's termination because "if the Seventh Circuit were to decide" the matter "differently, 'then the case would end.'" *Id.* at *11 (quoting *Demkovich v. St. Andrew the Apostle Par.*, 2019 WL 8356760, at *2 (Chang, J.) (N.D. Ill. May 5, 2019)). In advancing this argument, Comcast makes much of the Court's comment in its MSJ Order that "it is doubtful that Viamedia could effectively prove tying if the relevant product markets are two-sided transaction platforms." MSJ Order at *8; *see* Appeal Cert. Br. *6, 11.

The Court disagrees that a contrary ruling from the Seventh Circuit would "end the case," or even hasten its demise in any way. As an initial matter, Viamedia is correct to point out that although the Court expressed doubt as to whether Viamedia could overcome a determination that the relevant product markets are two-sided transaction platforms, it did not decide the issue. Dkt. 766. This is a matter that would require additional briefing and proceedings to determine. Second, although Viamedia may have difficulty prevailing "if the *relevant* product markets are two-sided transaction platforms," a Seventh Circuit ruling to that effect would do nothing to determine which product markets are *relevant* for these specific purposes. MSJ Order at *8 (emphasis added). Rather, it would only obligate this Court to advance to the next step of the analysis: whether it even matters if the market for Interconnect Services is a two-sided platform or a two-sided transaction platform.

As noted above, Viamedia raised this issue in its response to Comcast's motion for summary judgment, dkt. 706 at *21, but the Court did not reach the question in its MSJ Order. Proving an

antitrust claim on a tying theory requires the plaintiff to "prove that the defendant has market power in the tying product," *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006), and also that the defendant harmed competition in the tied product market, *Reifert v. S. Cent*, 450 F.3d 312, 321 (7th Cir. 2006). Here, as recognized by the Seventh Circuit, there is no question that that Comcast enjoyed monopoly power over Interconnect Services in the Chicago, Detroit, and Hartford Designated Market Areas during the time in question. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 469 (7th Cir. 2020) ("Comcast's monopoly power in the tying market of Interconnect services in the three metropolitan areas… [is] undisputed.") As such, the first half of the tying equation—whether Comcast had market power over the tying product (i.e., Interconnect Services)—has likely been established, or at least is not foreclosed as a matter of law. *See also* MSJ Order at *11. This Court is not aware of any precedent, binding or otherwise, holding that a plaintiff's definition of a tying product market where a defendant unquestionably possesses monopoly power could fail as a matter of law for lack of specification as to whether the tying product market is a two-sided platform or a two-sided transaction platform.

*Amex* does not resolve this issue. That case involved a "steering" theory of anticompetitive behavior, not a tying theory. *Amex* at 539. As such, *Amex*'s relevance to a tying case such as this one is not firmly established, particularly with respect to the tying product market. The *Amex* Court ruled that the plaintiffs had failed "to prove anticompetitive effects in the relevant market" because they had not shown anticompetitive effects on both sides of the two-sided transaction platform. *Id.* at 547. Here, Viamedia has the burden of proving anticompetitive effects in the *tied* market for Spot Cable Ad Rep Services, but it need only prove sufficient "market power" in the *tying* market for Interconnect Services. *See Illinois Tool Works*, 547 U.S. at 34 (a tying case requires establishing that "the defendant's position of power in the market for the tying product was being used to restrain competition in the market for the tied product"). As such, the Court regards it as an open question whether there is any significance for this case whether Interconnect Services constitute a two-sided transaction platform.

– 6 –

To be sure, it *is* a significant question whether the tied market for Spot Cable Ad Rep Services constitutes a two-sided transaction platform; but that is not the question that Comcast has asked the Court to certify.

As the Seventh Circuit has observed, "interlocutory appeals are disfavored… as they all too frequently cause unnecessary delays in lower court proceedings and waste the resources of an already overburdened judicial system. … For these reasons, the preferred practice is to defer appellate review until the entry of a final judgment in order that we might rule on *all* issues at one time." *Herdrich v. Pegram*, 154 F.3d 362, 368 (7th Cir. 1998). A ruling by the Seventh Circuit contrary to this Court's MSJ Order would not resolve this case, or even bring it close to resolution, but would rather require this Court to consider a second question on which the federal courts of this country have written little, if anything at all. And this Court's resolution of *that* question may well end up back in front of the Seventh Circuit. As such, the Court finds that certifying the question presented by Comcast would not in any way materially advance the litigation or hasten its termination. The question therefore does not meet the statutory criteria for an interlocutory appeal, and the Court denies the motion.[2]

## II.  Motion Seeking Leave to Call Ken Little as a Witness at Trial

### A.  *Legal Standard: Rule 16 versus Rule 37*

As an initial matter, the parties disagree on whether Federal Rule of Civil Procedure 16 or 37 should govern Viamedia's motion. Viamedia argues for Rule 37(c), which states that a party that fails to disclose a witness is precluded from calling that witness at trial "unless the failure was substantially justified or is harmless." Comcast argues that Viamedia is actually seeking to reopen discovery, which requires a modification to the scheduling order that, under Rule 16(b)(4), may be permitted only under the higher standard of good cause.

---

[2] Because the Court has found that permitting an interlocutory appeal will not hasten the termination of the litigation, it need not examine whether Comcast has met the other statutory criteria.

The Court rules that Rule 37 provides the applicable discovery rule in this instance. Viamedia argues convincingly that, although it is happy to produce Mr. Little for a deposition (and whatever additional discovery is appropriate), its motion seeking leave to call Mr. Little at trial does not itself require discovery to be reopened. Dkt. 793 at *3 [hereinafter Witness Mot. Reply] (citing *McCann v. Cullinan*, 2015 WL 4254226, at *12 (N.D. Ill. July 14, 2015), *report and recommendation adopted in relevant part*, Order at 3, *McCann v. Ogle Cnty.*, No. 11-cv-50125, Dkt. No. 273 (N.D. Ill. Aug. 24, 2015)). Accordingly, the standard by which the Court will judge Viamedia's motion is whether Viamedia's failure to disclose Mr. Little earlier "was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

### B. *Substantial Justification and Harmlessness*

Viamedia disclosed its desire to call Mr. Little as a witness well after the close of fact discovery, which makes the disclosure "by definition untimely." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 960 (N.D. Ill. 2021) (Johnston, J.). Nevertheless, untimeliness may be excused by substantial justification or harmlessness. Fed. R. Civ. P. 37(c). When determining whether a failure to disclose a witness was substantially justified or harmless, courts in this district assess four factors set out by the Seventh Circuit: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

As the Seventh Circuit has made clear, the sort of prejudice at issue when determining whether to exclude late-disclosed evidence relates primarily to the "timing of the disclosure." *Hicks v. Avery Drei, LLC*, 654 F.3d 739, 744 (7th Cir. 2011). Here, the Court can well imagine that Comcast was surprised by Viamedia's announcement that it intended to call Mr. Little as a witness. However, that announcement also occurred almost a year prior to trial; and even today, we are still more than half a

year from trial.[3] That is a long enough period of time that Comcast cannot credibly claim to be prejudiced to any significant degree. Although "Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery," *Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010) (Cole, J.), the existence of a substantial period of time between the disclosure and the upcoming trial can significantly mitigate such harm, *see Allen v. Int'l Truck & Engine Corp.*, No. 1:02-CV-902-RLY-TAB, 2012 WL 1899383, at *1 (S.D. Ind. May 24, 2012) (little harm when untimely disclosure occurred more than six months prior to trial). Here, the cases Comcast cites in support of its position involve a much shorter timeframe than is at issue in this case or involve additional factors not present in this case. *See, e.g., Ewing v. 1645 W. Farragut, LLC*, No. 16-cv-9930 (N.D. Ill. Sept. 7, 2021) (Dkt. 188) (Coleman, J.) (disclosure of expert 2.5 months pre-trial was highly prejudicial); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 215 (N.D. Ill. 2013) (Castillo, J.) (failure to disclose witness was highly prejudicial because other party conducted discovery under belief that no accountant had discoverable information about the loans at issue). Additionally, any potential prejudice is further limited by the fact that Mr. Little plans to testify about the conduct of Comcast employees, whose conduct Comcast can quite easily investigate on its own (or is perhaps already aware of). *See Caterpillar*, 324 F.3d at 858.

The extended timeline also plays into the second factor, Viamedia's opportunity to cure any prejudice that occurs. The Court finds that, owing to the significant amount of time between the disclosure and trial, there is ample opportunity to cure any resulting prejudice through a limited reopening of discovery. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 418 (7th Cir. 2019) (prejudice from a late disclosure can potentially be cured by allowing a late deposition); *see also infra* section II.C.

---

[3] On November 13, 2025, when Viamedia amended its Rule 26(a) disclosures to include Mr. Little, the trial was scheduled for October 5, 2026. As noted above, the Court has recently, and for scheduling reasons unrelated to this order, rescheduled the trial for a tentative start date of November 2, 2026, which may be further moved following consultation with the parties. Dkt. 798.

And, again for the same reason, the likelihood of disruption to the trial is low, and can be further reduced through careful management of the ensuing discovery.

The most contested factor is the fourth: whether Viamedia's late disclosure of Mr. Little as a witness represents willfulness or bad faith. Viamedia argues that it disclosed Mr. Little as early as possible. It claims that it could not reasonably have disclosed Mr. Little earlier because it was not aware of the conversations at issue until late 2024, and that it would not have been appropriate to supplement its Rule 26(a) disclosures while Comcast's motion for summary judgment remained pending. Witness Mot. Br. *8–9. Although Viamedia concedes that it had some relationship with Mr. Little going back many years, it asserts that it was unaware of his conversations with Comcast executives prior to 2024. Witness Mot. Reply *9–10. Viamedia argues that its ignorance was also supported by misleading (or at least innocently mistaken) answers given by deposed NCC executives, who told Viamedia's counsel that NCC executives had no "insight into [Comcast's] decision[s]." Witness Mot. Br. *9 (citing dkt. 780-2 at 168:23–169:3.)

Comcast reads the record rather differently. It casts doubt on whether Viamedia truly learned of Mr. Little's conversations only in 2024. Witness Mot. Resp. *10–11. Comcast suggests that it is not plausible that Mr. Little did not disclose these conversations at any point during the period when Viamedia retained him as an advisor (2020–2024), or during his prior, more limited association with Viamedia. *Id.* Comcast also faults Viamedia for waiting roughly a year from the point when Viamedia claims that it learned of Mr. Little's conversations until it made its first disclosure of its desire to call him as a witness. *Id.* at *3. However, as noted above, Viamedia argues that it would have been inappropriate to supplement its Rule 26(a) disclosures while a fully-briefed motion for summary judgment was pending before this Court, and Comcast has not offered any argument to the contrary. It is not fair to fault Viamedia for the unusually long pendency of the motion for summary judgment. With respect to whether Viamedia should have learned earlier about the conversations in question,

– 10 –

the Court agrees that Viamedia's assertion stretches credulity—but not past the breaking point. Nothing in the record suggests a lack of diligence by counsel for either side in this well-litigated dispute, and if it is difficult to believe that Viamedia did not learn about the testimony at issue until 2024, it is equally difficult to believe that there would have been any benefit to Viamedia in refraining from disclosing testimony that might have been helpful to it in rebutting Comcast's motion for summary judgment. It is also hard to believe that, having chosen to sandbag Comcast, Viamedia would choose todo so almost a year before trial, permitting ample opportunity to cure any resulting prejudice.

The Court concludes that permitting Mr. Little to testify will not significantly prejudice Comcast given the length of time until trial, which also provides significant opportunity to cure whatever prejudice is created and minimizes any impact on the upcoming trial. It also concludes that Viamedia's late disclosure did not result from willfulness or bad faith; to the contrary, the record suggests that Viamedia disclosed Mr. Little as soon as reasonably possible. The Court therefore finds that Viamedia was substantially justified in not disclosing Mr. Little earlier, and that the disclosure at this point is reasonably harmless. Additionally, considerations of justice encourage the admission of all relevant evidence that is not unduly prejudicial to one party or another (or otherwise forbidden). *Cf.* Fed. R. Evid. 402, 403. In light of these considerations, the Court grants Viamedia's motion seeking leave to call Mr. Little at trial.

### C. *Good Cause to Reopen Discovery*

Comcast has argued that, if the Court permits Viamedia to call Mr. Little at trial, then Comcast should be permitted to depose Mr. Little and to conduct additional discovery. The Court agrees. The decision here to permit Mr. Little's testimony certainly constitutes good cause for a limited reopening of discovery under Rule 16(b)(4). The Court therefore directs Viamedia to make Mr. Little available for a deposition at Comcast's earliest convenience. The Court refers to Magistrate Judge McNally the question of what additional discovery (if any) is appropriate under the circumstances, particularly

taking into account the length of time elapsed since the conversations at issue, but also taking into account the need to keep the trial on schedule.

## CONCLUSION

The Court denies Comcast's motion to certify a question for interlocutory appeal [761] and grants Viamedia's motion for leave to call Mr. Little as a witness at trial [780]. The Court also grants Comcast's request for a limited reopening of discovery related to Mr. Little. Viamedia is directed to make Mr. Little available for a deposition at Comcast's earliest convenience. The Court refers to Magistrate Judge McNally the question of what additional discovery is appropriate under the circumstances.

**IT IS SO ORDERED.**

Date: 4/13/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge