**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VIAMEDIA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>Defendants. | ) | Case No. 16-cv-05486<br><br>Judge Sharon Johnson Coleman |

**ORDER**

Before the Court today are Defendant Comcast's motions in limine ("MILs") 1A, 1B, 1C, and 5. Although the bulk of the motions in limine filed by both parties will be resolved following the final pre-trial conference on October 21, 2026, Comcast has requested that the Court give expedited consideration to these motions so as to streamline the parties' preparation for trial. Following oral argument on August 26, 2026, the Court requested that Comcast resubmit its initial MIL 1 as three separate motions (i.e., MILs 1A, 1B, and 1C). It did so, and Plaintiff Viamedia timely responded, at which point the Court took the four expedited motions in limine under consideration.[1] Comcast's original MIL 1, dkt. 882 at *6–16, is therefore denied as moot. With respect to the motions under consideration today, the Court denies MIL 1B and grants MIL 1A, 1C, and 5, subject in each case to the limitations identified below.

---

[1] Shortly before the Court issued this opinion, Comcast moved for leave to file a combined reply to Viamedia's response to MILs 1A, 1B, and 1C. Dkt. 930. The Court denied the motion as unnecessary and untimely. Dkt. 931. The Court did not review Comcast's proposed reply, and nothing in the motion brief (dkt. 930) has affected this order.

## I. Ripeness & Propriety

As an initial matter, Viamedia argues throughout its opposition briefs that these four motions are premature and improper, because they do not clearly identify evidence that Comcast argues should be excluded. Instead, they focus primarily on arguments that Comcast thinks should be prohibited. Although Viamedia is correct that these motions can be described as premature and do not generally concern specific evidence, Viamedia is incorrect to suggest that evidence is the only proper subject of a motion in limine. It is standard practice for parties to file motions in limine related to lines of argument that they think should be forbidden. As the Supreme Court has noted, a district court's authority to resolve motions in limine derives not from the Federal Rules of Evidence, but rather from a court's "inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41, n.4 (1984). Because the Court agrees that adjudicating the issues addressed in these motions at an early stage will aid efficient preparations for what is expected to be a very complex trial, the Court finds, as a general matter, that these motions in limine do not address improper subjects.

## II. Comcast's Motion in Limine 1A (dkt. 918)

Comcast's MIL 1A seeks to preclude argument or evidence regarding a "freestanding" theory of § 2 liability. The Court grants the motion, subject to the limitations identified below.

The Court requested that Comcast resubmit its original MIL 1 as three new motions because the original motion was expansive and vague as to the actual relief requested. The Court is therefore dismayed to see that, although it is significantly improved compared to the original motion, MIL 1A retains some of the flaws of its predecessor. In particular, the relief that MIL 1A requests is broader than the title of the motion would indicate. Comcast does not merely wish to preclude evidence and argumentation related to a "freestanding" theory of liability; it also wishes to confine Viamedia to a tying theory of liability.

Unfortunately, it is fundamentally unclear, across all briefs, what advancing a "freestanding" theory of § 2 liability would look like. Because § 2 liability requires a plaintiff to prove that the defendant engaged in exclusionary acts, *see, e.g., United Wisconsin Grain Producers LLC v. Archer Daniels Midland Co.*, 144 F.4th 976, 980 (7th Cir. 2025), the Court does not take the term to mean liability without showing *any* exclusionary conduct. Instead, based on the parties' representations in writing and at oral argument, the Court takes "freestanding liability" to mean liability premised on some form of exclusionary conduct other than those that Viamedia has specifically identified (i.e., besides tying, exclusive dealing, or refusal to deal).

Comcast argues that, over the long course of this litigation, Viamedia has waived all theories of liability other than tying. Viamedia did so explicitly with respect to its exclusive-dealing and refusing-to-deal theories. It formally abandoned the exclusive-dealing theory during its appeal to the Seventh Circuit, and it deserted the refusal-to-deal theory following remand. Both waivers were made in an effort to simplify the issues presented by this case. All parties agree that the exclusive-dealing and refusal-to-deal theories of liability have been waived and may not be pursued at trial. *See* dkt. 882 at *1; dkt. 902 at *6. With respect to a so-called "freestanding" theory, Comcast claims that, in presentations to Judge St. Eve in the early stages of this litigation, Viamedia denied that it had any intention of bringing a "freestanding" monopolization case. And, since remand, Viamedia has consistently framed this antitrust matter as a case about tying. As such, Comcast argues that Viamedia has also waived any possible "freestanding" theory of liability.

Viamedia opposes the motion in limine for two primary reasons. First, it argues that Viamedia has never disavowed all "freestanding" theories of liability and that Judge St. Eve misunderstood Viamedia's representation. Second, it argues that the Seventh Circuit has already held that Viamedia could succeed at trial based only on arguments about "general section 2 standards," which it takes to mean that Viamedia should not be *required* to prove tying to the jury. Dkt. 922 at *1.

The Court's ruling primarily rests on the issue of unfair surprise based on Viamedia's representations and litigation strategy post-remand. In the years since the Seventh Circuit sent this case back to this Court, Viamedia has continually represented that it accuses Comcast of engaging in illegal monopolization by means of tying Comcast's services in the ad rep service market to its acknowledged monopoly power in the interconnect services market. For example, in its brief opposing Comcast's second motion for summary judgment, Viamedia stated that, after remand, it "elected… to proceed to trial on the theory the Seventh Circuit held was ready for trial: tying in the Chicago, Detroit, and Hartford DMAs." Dkt. 706 at *13–14. Numerous other examples could fill these pages. Viamedia argues that none of the examples given by Comcast can be fairly interpreted as explicit waivers of all theories other than tying, but that misses the point that Viamedia is effectively introducing (or re-introducing) a new theory of liability on the eve of trial. Even now, when given two opportunities to oppose this request from Comcast, Viamedia has not identified *any* statement since remand, more than six years ago, in which it affirmatively endorsed a "freestanding" theory of § 2 liability—or, for that matter, any non-tying theory of liability. *See* dkt. 922 at *4–5.

It is well-settled that district courts "enjoy wide discretion to refuse attempts to raise new theories of liability at late stages of the case if such changes will prejudice the opposing party or unduly delay the proceedings." *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 163 F.4th 1091, 1100 (7th Cir. 2026). Regardless of whether Viamedia ever expressly waived reliance on a "freestanding" theory of liability, its continual representations that this is a tying case—and the dearth of representations concerning a "freestanding" theory—firmly established in the minds of all involved that tying was the only live theory of liability remaining. Certainly this Court believed that to be the case. *See Viamedia, Inc. v. Comcast Corp.*, 2025 WL 2972666, at *4 (N.D. Ill. Oct. 14, 2025) ("[T]he sole remaining theory of liability underlying Viamedia's allegations is tying."). To let Viamedia introduce or re-introduce a "freestanding" theory of liability at this point would produce significant surprise and

prejudice to Comcast. And, as a secondary consideration, permitting Viamedia to bring a "freestanding" theory would open the door to significantly expanded theories of liability, which could push an already long and complicated trial over the brink. The Court therefore rules that Viamedia may not advance any theory of liability other than tying.

*However*—the Court must also apply the Seventh Circuit's analysis of the elements of tying in its opinion adjudicating Viamedia's appeal. There, the Seventh Circuit stated that, in a § 2 case such as this, one that involves a "dominant firm" with acknowledged monopoly power in the tying product marketplace, "the 'special screening function' of the tying factors is 'largely unnecessary, and the more general standards of § 2 become relevant' because 'the technical requirements ... attach only to per se ties.'" *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 468 (7th Cir. 2020) (quoting Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 777, at 324 (4th ed. 2015)). Rather than focusing on whether a case such as this presents a "platonic ideal of tying conduct," the court of appeals encouraged focus on "'whether, viewing the monopolist's conduct as a whole, it has unreasonably maintained or enhanced its monopoly position.'" *Id.* at 469 (quoting Areeda & Hovenkamp ¶ 777, at 325). To this Court's knowledge, the Seventh Circuit has not disavowed this position in the years since, and it has on multiple occasions endorsed *Viamedia*'s analysis of tying, including in an opinion authored by Judge St. Eve. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 349 (7th Cir. 2022) (St. Eve, J.); *see also Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022); *Lazarou v. Am. Bd. of Psychiatry & Neurology*, 158 F.4th 854, 861 (7th Cir. 2025).

Viamedia argues that applying this analysis from the Seventh Circuit means that "that Viamedia may prove its case by using 'the more general standards of § 2' and not just the more specific standards of the 'tying factors.'" Dkt. 922 at *3 (quoting *Viamedia*, 951 F.3d at 468). It believes that the Seventh Circuit has therefore already ruled that Viamedia should not be limited to a tying theory

of liability. But even if that is what the Seventh Circuit meant at the time, as the Court ruled above, Viamedia has constructively waived its right in the ensuing six years to introduce any theory of liability other than tying. Still, the Court takes seriously the Seventh Circuit's analysis that, in a § 2 case such as this, it is a mistake to focus on the *technical elements* of tying that govern liability under § 1 of the Sherman Act. The Court reads the Seventh Circuit opinion to say that courts in these circumstances should instead focus on adherence to a *general definition* of tying. And so that is what the Court will require. Viamedia must prove that Comcast engaged in illegal tying; but it may do so by showing that Comcast's behavior meets a general definition of tying, rather than the technical § 1 elements.

The parties may propose their own general definition of tying to be presented to the jury. However, in the interests of providing some preliminary guidance, the Court believes that the most helpful definition for this trial should resemble the following, which is adapted from the definition given by the Seventh Circuit in *Viamedia*:

> Tying is conduct in which a firm will sell one product (the tying product) but only on the condition that the buyer also purchases a different (or tied) product. In this arrangement, the buyer purchases the tied product not because the seller has a better product or a lower price but because the seller has power or leverage in the market for the tying product. In order for a tying arrangement to exist, the two products sold must be different products.

*Adapted from Viamedia*, 951 F.3d at 468 (quoting *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 5–6 (1958)). Additionally, because of the importance of the tying theory of liability to this case, the Court will issue an initial instruction to the jurors, before opening statements, giving them the definition of tying to be used in this trial. The parties may propose their own versions of that initial instruction and definition, along with their proposed versions of final jury instructions that comply with this order.

This is an unusually expansive motion in limine, with unusually large consequences for both parties' presentations to the jury. The Court believes its ruling represents the best balancing of, on the one hand, the Seventh Circuit's analysis of tying in a § 2 case with, on the other hand, trial

manageability and fairness to Comcast given Viamedia's post-remand representations concerning tying. In conclusion, the Court grants MIL 1A and rules that Viamedia may not advance any theory of § 2 liability that does not involve tying. However, in proving tying, Viamedia need only convince the jury that Comcast's behavior fits a general definition of tying, rather than the technical elements required in a § 1 case.

## III. Comcast's Motion in Limine 1B (dkt. 919)

Comcast's MIL 1B seeks to preclude argument or evidence relevant only to a claim of attempted monopolization. The Court denies the motion.

Both Comcast's initial complaint and its first amended complaint (which has been the operative complaint since November 2016) have included claims for completed monopolization and for attempted monopolization. Dkt. 1, ¶¶ 174–82; dkt. 40, ¶¶ 189–97. However, Comcast argues that Viamedia waived its attempted monopolization claim by failing to appeal Judge St. Eve's dismissal of the claim. Viamedia did not specifically invoke its attempted monopolization claim, and a claim "not raised by the appellant in its opening brief on appeal is necessarily waived." *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 492 (7th Cir. 2024). Comcast points in particular to a recent and highly analogous Seventh Circuit case, *United Wisconsin Grain Producers*. 144 F.4th at 983. There, the court of appeals found that an antitrust plaintiff had waived its attempted monopolization claim because it failed to raise that claim in its opening appellate brief; and because the plaintiff's description of the defendant's allegedly illegal behavior was framed in terms of completed rather than attempted monopolization. *Id.* Comcast argues that the same analysis applies here, and that the Court should therefore rule that Viamedia has waived its attempted monopolization claim.

Viamedia responds that, although it did not *specifically* invoke its attempted monopolization claim, it did so implicitly through references to its "section 2 claims."[2] Because Viamedia's completed and attempted monopolization claims both arise under § 2 of the Sherman Act, Viamedia argues that most references to "section 2" in its opening brief should be read as a shorthand for "monopolization and attempted monopolization." Dkt. 923 at *2–3. Moreover, Viamedia contends that it did not specifically invoke its attempted monopolization claim because Judge St. Eve dismissed that claim on the basis of a perceived failure to establish anticompetitive behavior and antitrust injury—elements that both attempted and completed monopolization claims share.

After reviewing the record, the Court believes that this case is distinguishable from *United Wisconsin Grain*. In that case, the Seventh Circuit showed that any determination that a party waived a claim on appeal should derive at least in part from a contextual or syntactical analysis of the party's arguments. The Seventh Circuit noted, as an illustrative example, that in United Wisconsin Grain's opening brief, "Every mention of 'recoupment' as applied to this case concerns historical, completed 'recoupment'… [which is] a monopolization claim requirement. None of the mentions concern future, incomplete recoupment… [which is] an attempted monopolization claim requirement." 144 F.4th at 983. In comparison, Viamedia's references to recoupment in its opening brief are often cast in terms of future effects. *See, e.g.,* dkt. 13, No. 18-2852 (7th Cir. 2018) at *4 ("Comcast sacrificed profits that it can recoup by virtue of having eliminated its sole competitor."); *id.* at *5 ("Viamedia alleged that Comcast … sacrificed profits for the promise of later monopoly recoupment[.]"); *id.* at *29 ("Comcast

---

[2] In its opposition to Comcast's initial (now stricken) MIL 1, Viamedia claimed (with a citation) that it did specifically invoke attempted monopolization in its opening appellate brief. Dkt. 902 at *5–6. In the revised MIL 1B, Comcast points out that this claim was false, and that Viamedia's citation pointed only to the copy of Judge St. Eve's summary judgment order attached as an exhibit to the opening brief. Viamedia now acknowledges that it did not specifically invoke attempted monopolization in the opening brief, *see* dkt. 923 at *3, but it has not apologized for a significant citation error. The Court will presume that this was a grievous mistake rather than an attempt to pull the wool over the Court's eyes, but if any future such errors emerge, that presumption may be punctured.

believed that it would recoup those lost profits once it forced its sole competitor from the market."). Thus, upon contextual and syntactical examination of Viamedia's opening brief, the Court finds that, unlike the plaintiff in *United Wisconis Grain*, Viamedia implicitly invoked, and therefore did not waive, its attempted monopolization claim.[3]

Comcast also attempts to argue that the Seventh Circuit "expressly noted that Viamedia did not seek to revive its attempted monopolization claim on appeal." Dkt. 919 at *3. It cites a single footnote from the Seventh Circuit's 141-page opinion, which reads as follows: "This appeal does not present any issues under the Section 2 language barring attempts and conspiracies to monopolize." *Viamedia*, 951 F.3d at 451 n.9. The Court agrees that this language *could* support Comcast's preferred interpretation, but it is a far cry from an "express[]" acknowledgment of waiver. Viamedia argues that this footnote instead represents the Seventh Circuit's observation that the same analysis of the appealed issues for completed monopolization (i.e., anticompetitive behavior and antitrust injury) would be equally applicable to Viamedia's claims of attempted monopolization. Given that the Court has found that Viamedia contextually raised its attempted monopolization claim in its opening brief, the Court declines to read a single footnote in a 141-page appellate opinion, one which is capable of multiple plausible interpretations, as constituting a ruling that Viamedia waived its attempted monopolization claim. As the Supreme Court has noted in other contexts, when interpreting a legal text, one should assume that the author has not hidden an elephant in a mousehole. *Whitman v. American Trucking Assns., Inc.,* 531 U.S. 457, 468 (2001).

Additionally, this motion in limine does not present the same issues with unfair surprise and trial management that were decisive above for MIL 1A. Notably, the parties have made references to Viamedia's attempted monopolization claim in the years since remand—including references by

---

[3] The recoupment language examined here is relevant to Viamedia's refusal-to-deal theory of liability, which it abandoned after remand. *See infra* section I. However, Viamedia's later abandonment of the refusal-to-deal theory is irrelevant to the question of whether it properly appealed an attempted monopolization claim.

Comcast. For example, in a joint status update filed before Magistrate Judge Finnegan, Comcast presented its position with respect to Viamedia's abandonment of the refusal-to-deal theory as follows: "Viamedia should unambiguously agree to dismiss with prejudice its monopolization *and attempted monopolization claims* (Counts I-V of Viamedia's operative complaint) to the extent that they are based on an allegedly unlawful refusal to deal." Dkt. 486 at *20. Clearly Comcast believed at this point that Viamedia's attempted monopolization claim was live; and the transcript from the next hearing before Judge Finnegan implies that she also believed the attempted monopolization claim to be live. *See* dkt. 491 at 7:25–8:5; *see also id.* at 16:16–19. Moreover, because Viamedia's attempted monopolization claim involves the same underlying behavior as its completed monopolization claim, permitting Viamedia to advance its attempted monopolization claim does not threaten to significantly expand the limits of the upcoming trial.

The Court finds that Viamedia has not waived its attempted monopolization claim and that it may properly present to the jury evidence and arguments pertaining to that claim. Comcast's MIL 1B is therefore denied.

## IV. Comcast's Motion in Limine 1C (dkt. 920)

Comcast MIL 1C seeks to preclude argument or evidence relevant only to allegations involving National Cable Communications LLC ("NCC"). As Comcast itself acknowledges, there "may no longer be a live dispute requiring the Court to rule on Comcast's Revised Motion in Limine No. 1C." Dkt. 920 at *1. Comcast previously suspected that Viamedia intended to advance a theory of liability regarding Comcast's alleged attempts to freeze Viamedia out of the NCC; however, at oral argument, Viamedia disclaimed any reliance on such a theory. The Court's ruling with respect to MIL 1A above also now precludes any attempt by Viamedia to advance a theory of NCC liability. Additionally, to the extent that MIL 1C asks the Court to rule on the admissibility of evidence concerning the NCC, the Court finds that such a request is duplicative of Comcast MIL 3, *see* dkt. 882 at *25–32. The Court will

issue a ruling as to Comcast MIL 3 following the final pre-conference trial. For now, to avoid all doubt, the Court grants Comcast MIL 1C to the extent that it precludes any argument concerning a theory of NCC liability. The Court will wait until it rules on Comcast MIL 3 to make a determination as to the admissibility of evidence concerning the NCC.

## V. Comcast's Motion in Limine 5 (dkt. 882 at *37–47)

Finally, Comcast MIL 5 seeks to preclude Viamedia from seeking damages higher than $357.8 million and from presenting evidence regarding so-called "illustrative scenarios" introduced by Viamedia's damages expert Dr. Cragg. The Court grants the motion, subject to the limitations discussed below.

The first request of the motion is not contested. Viamedia has repeatedly denied, both in writing and orally, any plan to seek damages higher than $357.8 million. *See, e.g.,* dkt. 597 at 3–5. Viamedia is therefore estopped from proposing to the jury that its damages should be higher than that number. *See, e.g., DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001) ("The doctrine of estoppel prevents a litigant from repudiating a representation that has reasonably, foreseeably induced reliance by the person to whom he made it."). Viamedia does not appear to contest this point. *See, e.g.,* dkt. 902 at *32–33.

However, Viamedia vehemently opposes the motion's second request, to prohibit Viamedia from introducing evidence concerning any of the "illustrative scenarios" that Dr. Cragg included in his rebuttal report. *See* dkt. 884-3 ¶¶ 71–73. In his description, these scenarios result from "adjust[ing] the damages calculation submitted in my affirmative report to demonstrate how varying certain inputs contested by [Comcast's damages expert] Dr. Israel may alter the overall damages amount." *Id.* ¶ 71. Dr. Cragg does not endorse the numbers that result from the "illustrative scenarios" as appropriate estimates of Viamedia's damages; he instead uses them to rebut Dr. Israel's criticism of his methodology and results. Dkt. 902 at *33; *see also* dkt. 597 at 5; *see generally* dkt. 884-3. However, many

of the numbers presented in the "illustrative scenarios" are significantly higher than the damages that Dr. Cragg endorses. The highest, $706.4 million, is nearly twice as much as the upper limit of the damages that Viamedia may affirmatively seek.

Comcast believes that any presentation of such evidence will have the effect of "unfairly skew[ing] the jury's damages horizon." Dkt. 882 at *43 (quoting *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1385 (Fed. Cir. 2025)). In other words, by showing these larger numbers to the jury, even without an explicit endorsement from Viamedia or Dr. Cragg, the jury may incorrectly regard the requested $357.8 million as a down-the-middle compromise. Comcast argues that such a presentation would be highly prejudicial and is barred by Federal Rule of Evidence 403. In support, it cites a number of cases (mostly from the Federal Circuit) in which judges have found that a plaintiff's damages expert should not be permitted to mention a non-endorsed higher damages number to the jury because doing so would be prejudicial. *See, e.g., Optis Cellular Tech.*, 139 F.4th at 1385; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320–21 (Fed. Cir. 2011); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1302 (Fed. Cir. 2019).

Viamedia first responds that Comcast's motion is premature. It avows, both in writing and orally, that it will not seek to discuss the "illustrative scenarios" except as a response to criticism that Dr. Israel might make of Dr. Cragg's damages methodology and result. As such, it argues that any such discussion will depend greatly on what Comcast does at trial, so the Court should defer any decision until more information is available. The Court disagrees. The general question of whether evidence from these scenarios would violate Rule 403 is already ripe for adjudication, and deciding the issue now will help the parties better prepare for trial.

Second, Viamedia argues that the motion is overbroad, in that it could be read to prohibit Dr. Cragg from expressing any opinion as to whether his damages estimate resulted from a conservative approach. To avoid all doubt, the Court affirmatively states that it does not read the motion in this

manner. Nothing in this order should be understood to restrict Dr. Cragg from expressing a view as to whether and why his estimate is conservative, so long as such an opinion is consistent with the guidelines established in this order and would otherwise be permitted under the Federal Rules of Evidence.

Third, and most significantly, Viamedia claims that Comcast's argument about prejudice and jury confusion is inapplicable here, and it distinguishes this case from those cited by Comcast. Those cases involved experts opining about alternate methodologies that might have produced much higher damages estimates than those the expert actually endorsed. In contrast, Viamedia claims that its "illustrative scenarios" only show that incorporating Dr. Israel's criticisms of Dr. Cragg's methodology would actually lead to larger numbers. As such, mentioning those larger numbers could provide a useful rebuttal to the specific criticisms that Dr. Israel may make at trial of Dr. Cragg's methodology.

The Court agrees that re-running Cr. Cragg's numbers in a manner that directly and simply incorporates criticism from Dr. Israel would present a different, and potentially more permissible, situation compared to the totally different methodologies at issue in Comcast's cited cases. But that is not what Dr. Cragg's scenarios actually represent. At oral argument, counsel for Viamedia described the origin of Dr. Cragg's illustrative scenarios as follows:

> [W]hen Dr. Israel made his critiques of various inputs of the methodology, Dr. Cragg said, well, if he's going to do this, then the most appropriate thing to do would be to use the actual growth rate of Viamedia [rather than the industry average growth rate, which Dr. Cragg used for his endorsed estimate]. And that's what led to the $700 million figure.

Aug. 26, 2026 Hr'g Tr. at 53:21–25.[4] Here, counsel described something significantly different from Viamedia's written representation that the illustrative scenarios merely "provide[] updated damages figures *incorporating* Comcast's expert's criticisms." Dkt. 902 at *33. As far as the Court is aware, Dr.

[4] The Court has reviewed Dr. Cragg's rebuttal report and finds counsel's oral representation to be an accurate description of Dr. Cragg's process in producing the "illustrative scenarios." *See, e.g.,* dkt. 884-3 at ¶¶ 35, 73, fig. 12 n.1.

Israel has never suggested that Dr. Cragg's methodology should have incorporated a growth rate based on Viamedia's actual pre-2012 growth rate, as calculated in the precise way that Dr. Cragg calculates it in his rebuttal report. *See* dkt. 884-3 ¶¶ 19–23. Perhaps Viamedia and Dr. Cragg are correct that modifying the growth rate used to estimate damages is an appropriate *response* to Dr. Israel's criticisms, but doing so goes far beyond mere *incorporation* of those criticisms. The Court finds that the numbers produced by Dr. Cragg's illustrative scenarios are in fact similar in provenance to those barred by the Federal Circuit in Comcast's cited cases. As such, permitting Viamedia to present the illustrative scenario damages numbers to the jury—even with a disclaimer that Dr. Cragg does not endorse them—would be unfairly prejudicial to Comcast and potentially confusing to the jury.

*However*, the Court stresses that its ruling here only prohibits Viamedia from presenting to the jury specific damages *numbers* that are higher than Dr. Cragg's endorsed damages estimate. Assuming that he has a proper foundation and is consistent with his published expert opinions, Dr. Cragg is free to respond to any criticism that Dr. Israel might make by challenging the assumptions underlying those criticisms. He may discuss any mathematical errors that he believes Dr. Israel may have made. He can advance an opinion that, if certain criticisms from Dr. Israel are incorporated, then the most appropriate thing to do would be to modify the growth rate used to calculate damages in this or that way. He may even state that modifying the calculations would produce a damages number "significantly higher" than the one he endorses.[5] But he may not present the $706.4 million number to the jury, or any other number higher than $357.8 million.

In summary: the Court grants Comcast MIL 5, subject to the limitations identified above. Viamedia may not affirmatively seek damages higher than $357.8 million, nor may it present to the jury any damages number higher than $357.8 million. But Dr. Cragg may discuss his opinion that his

[5] For clarity, general but numerical estimates deriving from the illustrative scenarios (such as "somewhere in the $700 million range" or "hundreds of millions higher") are prohibited under this order. But *non-numerical* estimates, such as in the given example ("significantly higher") are permissible.

damages estimate is conservative, and he may attempt to rebut criticisms of his methodology by discussing how such criticisms may actually imply higher damages, so long as no specific number is given.

## VI. Conclusion

The Court denies Comcast's motion in limine 1B [919]. The Court grants Comcast's motions in limine 1A [918], 1C [920], and 5 ([882] at *37–47), subject in each case to the limitations identified in this order.

**IT IS SO ORDERED.**

Date: 9/17/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge